JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona  85007
Telephone: 602-382-2700

MARIA TERESA WEIDNER; #027912
Asst. Federal Public Defender
Attorney for Defendant
maria_weidner@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | No. CR-17-0585-01-PHX-JJT |
|---|---|
| Plaintiff, | **MOTION TO DISMISS COUNTS 1 & 2 OF THE INDICTMENT** |
| vs. | |
| Thomas Mario Costanzo, et al., | **(Oral Argument Requested)** |
| Defendant | |

Defendant Thomas Mario Costanzo submits the attached memorandum of law in support of his First Motion to Dismiss Counts 1 & 2 of the Indictment, which charge him with operating an unlicensed money transmitting business in violation 18 U.S.C. § 1960 and Conspiracy to do the same in violation of 18 U.S.C. § 371. Counts 1 & 2 of the Indictment should be dismissed because the alleged substantive conduct does not constitute "money transmitting" as contemplated by 18 U.S.C. § 1960.

First, Congress has not defined Bitcoin as money or currency. The Government's attempt to use a dated statute to create a crime that Congress has not defined violates Due Process and Fundamental Fairness.  Second, Counts 1 & 2 of the Indictment fail to state a claim because person-to-person exchanges of Bitcoin that do not involve a third party cannot constitute "transmitting" under § 1960.

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Excludable delay under 18 U.S.C. § 3161(h)(1)(D) may result from this motion or from an order based thereon.

Respectfully submitted:  October 30, 2017.

JON M. SANDS
Federal Public Defender

*s/Maria Teresa Weidner*
MARIA TERESA WEIDNER
Asst. Federal Public Defender

**M E M O R A N D U M**

## I. BACKGROUND

As to the facts set forth in the Indictment in support of Counts 1 & 2, it is simply alleged that Mr. Costanzo and co-defendant Dr. Steinmetz operated a money transmitting business, that said business was not licensed or registered in the State of Arizona, and that the business model for said business was no more than to enable "customers to exchange cash for 'virtual currencies,' charging a fee for the[ ] service." *See* Doc. 18, First Superseding Indictment, at ¶¶ 1-3.

## II. STANDARD OF REVIEW

Rule 12 of the Federal Rules of Criminal Procedure provides that a defendant make seek dismissal of an indictment that fails to state an offense. Fed. R. Crim. P. (12)(b)(2) ("Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion") and 12(b)(3)(B) ("[A]t any time while the case is pending, the court may hear a claim that the indictment or information fails to…state an offense."). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir.2002).

## III. DISCUSSION

The Indictment in this matter is defective because it fails in two ways to allege conduct that meets the definition of "money transmitting" set forth in 18 U.S.C. § 1960: 1) Bitcoin is not "money" under the statute; and 2) operating a Bitcoin exchange is not "transmitting" under the statute. The Indictment's assertion that Mr. Costanzo "operated a money transmitting business" by "enabling…customers to exchange cash for 'virtual currencies,' charging a fee for the[ ] service" is conclusory and does not survive analysis. *See* Doc. 18, at ¶¶ 1 & 3. A person-to-person exchange of cash for a privately created commodity that is not money is simply outside the regulatory sphere of "money transmitting businesses."

**Bitcoin Is Not "Money."**

Under 18 U.S.C. § 1960, a defendant is guilty of an offense when he "knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business." The statute defines "money transmitting" to include "transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier." 18 U.S.C. § 1960(b)(2). Accordingly, a defendant can be guilty of an offense under the statute only where the object he transmits is "money" or "funds." The statute, however does not define the critical terms "money" or "funds." *See* 18 U.S.C. § 1960. For its part, the State of Arizona defines the term "money" as "a medium of exchange that is *authorized and adopted by a domestic or foreign government* as a part of its currency and that is *customarily used and accepted as a medium of exchange in the country of issuance*." A.R.S. § 6-1201(9) (emphasis added). A definition of the term "funds" was not identified by undersigned counsel in the Arizona Revised Statutes.

In this matter, the object at issue—Bitcoin—is neither "money" nor "funds" under the federal statute. A logical, textual reading of the statute limits its application to "currency," which does not include Bitcoin. To expand interpretation of the undefined terms "money" or "funds" beyond currency so as to shoehorn in recent developments such as Bitcoin would cause the statute to lose all rational limitations. Where Congress has not established legislative parameters to address recent developments such as Bitcoin and so-called "virtual currencies," it is agency overreach for the Department of Justice to pursue prosecution under statutes that simply do not apply. It is the place of the judiciary to halt such trespasses upon the separation of powers whenever such may appear before it.

1. <u>"Money" and "Funds" Under the Statute Mean Currency.</u>

According to Black's Law Dictionary, the terms "money" and "funds" are nearly coextensive. Indeed, Black's defines "funds" to mean"[a] sum of money or other

4

liquid assets established for a specific purpose." Black's Law Dictionary (9th ed. 2009). Money is a somewhat less elusive term. Black's Law Dictionary defines it in two primary ways: broadly, as "[a]ssets that can be easily converted to cash," and narrowly, as "[t]he medium of exchange authorized or adopted by a government as part of its currency; esp. domestic currency." *Id.*

The broad definition of money—convertible assets—cannot be applied to § 1960 without rendering the statute utterly meaningless. Indeed, if § 1960 were applicable to any asset with liquidity, it could encompass the business of moving almost any item (e.g., houses, cars, boats, stamp collections) and could make the transfer of such items a felony offense in certain circumstances. It is a well-established canon of construction that statutes are to be interpreted to avoid illogical or absurd results. Interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available. *See, e.g., Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) (citing *United States v. American Trucking Assns., Inc.*, 310 U.S. 534, 542-543 (1940); *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940)); *see also id.,* (citing *Crooks v. Harrelson*, 282 U.S. 55, 60, (1930) ("[l]aws enacted with good intention, when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd or otherwise objectionable. But in such case the remedy lies with the law making authority, and not with the courts.")). Accordingly, the broad definition of money advocated by the government by virtue of Counts 1 & 2 of the Indictment simply cannot apply to § 1960.

The narrow definition of money—currency—applies a more natural and appropriate limitation on the application of § 1960. Although the legislative history of § 1960 is not instructive, it is obvious that in 1992, when the statute was first enacted, Congress could not have contemplated its application to so-called "virtual currencies," and the term "money" as used in the statute would likely have been synonymous with

5

the term "currency." Indeed, the purpose of the statute—to ensure that those who transmit money for a business register with the federal government, obtain state licenses, and submit to applicable regulations—seems much more appropriately directed to those in the actual business of transmitting currency. *See* 18 U.S.C. § 1960(b)(1). The federal government has an obvious and substantial interest in currency: currency is issued by the federal government; it is printed by the federal government; and its value is regulated by federal monetary policy. *See, generally* U.S. CONST. art. 1, § 8, cl. 5 (bestowing on the legislature the power "[t]o coin Money, [and] regulate the Value thereof"). The logical and textual interpretation of § 1960 as a statute that seeks to punish those who transmit currency for others for profit but fail to properly register or obtain applicable licenses is appropriate and makes sense. On the other hand, the government's attempt to contort § 1960 so as to punish those who do not register or obtain licenses to transmit a virtual, internet-based commodity that is a completely de-centralized, private creation is far from apparent.

Bitcoin is not directly regulated by the federal government or any foreign government; it is not subject to domestic or international monetary policy. While Congress has not addressed Bitcoin or other virtual internet-based commodities as of yet, the executive branch, specifically, the Department of Treasury's Financial Crimes Enforcement Network ("FinCEN") issued interpretative guidance in March of 2013. *See* Exhibit A, FIN-2013-6001, *Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies*, Mar. 18, 2013. Notably, interpretative guidance is exempt from notice and comment requirements of the Administrative Procedure Act ("APA"). *Id.; see also* Exhibit B, Internal Revenue Manual, Part 32.1.1.2.6 (noting that interpretative rules are exempt from the APA's notice and comment requirements). The Internal Revenue Manual explains that interpretative guidance does not require notice to or comment from the public as would otherwise be required by law for a substantive rulemaking because "the underlying

statute implemented by the regulation contains the necessary legal authority for the action taken and any effect of the regulation flows directly from that statute." *Id.* For the reasons set forth above, such is not the case with the Treasury Department's attempt at extra-legislative guidance regarding virtual internet-based commodities. *See, e.g., F.C.C. v. Fox Television Stations, Inc.,* 556 U.S. 502, 536-37(2009) (citing *Mistretta v. United States,* 488 U.S. 361, 372-374 (1989) ("If agencies were permitted unbridled discretion, their actions might violate important constitutional principles of separation of powers and checks and balances. To that end the Constitution requires that Congress' delegation of lawmaking power to an agency must be 'specific and detailed…' Congress must 'clearly delineat[e] the general policy' an agency is to achieve and must specify the 'boundaries of [the] delegated authority….' Congress must 'lay down by legislative act an intelligible principle,' and the agency must follow it.")(internal quotations omitted).

Finally, had Congress intended the term "money" to be defined so expansively it would have explicitly and expressly done so; as much is abundantly clear via comparison to the federal money laundering statute, 18 U.S.C. § 1956. Section 1956 does not rely on an expansive definition of "money" but instead expressly and broadly applies to, among other things, certain "financial transactions involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity." 18 U.S.C. § 1956(c)(2).

2. Bitcoin Is Not Currency.

The U.S. Government recognizes significant differences between "currency" and Bitcoin. FinCEN defines "currency as:

> [t]he coin and paper money of the United States or of any other country that is designated as legal tender and that circulates and is customarily used and accepted as a medium of exchange in the country of issuance. Currency includes U.S. silver certificates, U.S. notes, and Federal Reserve

notes. Currency also includes official foreign bank notes that are customarily used and accepted as a medium of exchange in a foreign country.

31 C.F.R. § 1010.100(m) (2014). Bitcoin clearly does not meet this definition and therefore is not "currency."

FinCEN further distinguishes "currency (also referred to as 'real currency')" from so-called "virtual currency" which includes Bitcoin and is defined as "a medium of exchange that operates like a currency in some environments, but does not have all the attributes of real currency." Exhibit A. FinCEN notes in particular that "virtual currency does not have legal tender status in any jurisdiction. *Id.* The significant differences between "currency" and "virtual currency" are further recognized by the Internal Revenue Service ("IRS"), which does not treat "virtual currency" as "currency" for purposes of determining whether a transaction results in foreign currency gain or loss under U.S. federal tax laws. *See* Exhibit C, Internal Revenue Service, Notice 2014-21.

3.  Defining Bitcoin as "Money" Under § 1960 Raises Constitutional Problems.

In addition to the separation of powers issues referenced above, interpreting the terms "money" or "funds" under the statute to include a commodity such as Bitcoin raises concerns that § 1960 fails to "provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). "[T]he legislative purpose is expressed by the ordinary meaning of words used." *Richards v. United States*, 369 U.S. 1, 9 (1962). The ordinary understanding of "money" and "funds" is consistent with the definition offered above: currency, whether reflected in cash, coin, check, bank wire, or account balance. It does not include cars, real estate, baseball cards, Beanie Babies, Bitcoin, or other assets that, although valuable and potentially even a medium of exchange under certain circumstances, do not fall within the ordinary understanding of "money" or "funds."

The Supreme Court has instructed courts, when confronted with a statute of ambiguous and potentially infinite reach, to interpret it in a manner consistent with the rule of lenity. That is, courts should "exercise[ ] restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress, and out of concern that a fair warning should be given to the world in language that the common world will understand, or what the law intends to do if a certain line is passed." *Arthur Andersen, LLP v. United States*, 544 U.S. 696, 703 (2005) (citations omitted). Here, the statutory terms "money" and "funds" can either be given the ordinary meaning of "currency" or they can be given a meaning so broad as to have no meaning at all. The District Court should show the concern for plain meaning and fair warning that the Supreme Court has instructed, and find that the Indictment fails to allege a transaction in "money" or "funds" and therefore fails to state an offense under either § 1960 or an alleged conspiracy to violate § 1960.

**A. The Indictment Fails to Allege that Costanzo Operated a "Money Transmitting Business" or Engaged in "Money Transmitting."**

Counts One and Two of the Indictment should also be dismissed because the Indictment fails to allege that Costanzo operated a "money transmitting business" or engaged in "money transmitting" as contemplated by the statute.

1. Costanzo Did Not Operate a Money Transmitting Business.

Section 1960 prohibits the unlicensed operation of a "money transmitting business." The use of the term "business" in the statute clearly requires that a defendant sell money transmitting services to others for a profit. Here, the Indictment fails to allege that Costanzo sold such services. Rather, he is alleged to have sold Bitcoin to customers who engaged him as a source of Bitcoin. To the extent Costanzo is alleged to have participated in other activities to secure Bitcoin to sell, such activities were purely incidental to the sale of Bitcoin and do not convert his small business into a money transmitting business. There is no allegation in the Indictment that customers asked for Costanzo to transmit Bitcoin to other locations or persons on their behalf. Rather it is simply alleged that customers paid Costanzo to provide them with Bitcoin.

<u>A Seller of Bitcoin Does Not Meet the Definition of Money Transmitter Under the Applicable Regulations.</u>

The Indictment alleges Costanzo acted as a money transmitter by operating a Bitcoin exchange. A seller of Bitcoin, however, is not included in FinCEN's definition of "money transmitter" and indeed such conduct is expressly excluded from the definition. The regulations provide, in pertinent part:

(5) *Money transmitter—(i) In general.* (A) A person that provides money transmission services. The term 'money transmission services' means the acceptance of currency, funds, or other value that substitutes for currency from one person and the transmission of currency , funds, or other value that substitutes for currency *to another location or person* by any means. . . .

(ii) Facts and circumstances; Limitations. Whether a person is a money transmitter as described in this section is a matter of facts and circumstances. The term "money transmitter" shall not include a person that only: . . . .

(F) Accepts and transmits funds *only integral to the sale of goods or the provision of services*, other than money transmission services, by the person who is accepting and transmitting the funds.

31 C.F.R. § 1010.100(ff)(5)(ii)(F) (2014) (emphasis added). Here, the Indictment alleges only that Costanzo sold Bitcoin to his customers. There is no allegation that Costanzo transmitted Bitcoin to another location or person for his customers. Moreover, since Bitcoins are "goods," Costanzo's alleged conduct is excluded from the definition of the term "money transmitter."

**B. Operation of a Money Transmitting Business Requires the Transmission of Money to a Third Party or Location.**

Mr. Costanzo did not operate a money transmitting business because he did not, nor was he instructed by his customers to, transfer money to a third party or

10

location. This is an issue of first impression in the Ninth Circuit. However, there is persuasive authority in the Second Circuit—where the majority of litigation involving 18 U.S.C. § 1960 has occurred since at least 1999—for the proposition that transmission of monies or funds to third parties or locations on the customer's behalf for a fee is an essential element of operating a money transmitting business. *See e.g., United States v. Banki*, 685 F.3d 88, 113 n.9 (2d Cir. 2012), as amended (Feb. 22, 2012) ("the business must transmit money to a recipient in a place the customer designates, for a fee paid by the customer" and holding that said description is "legally correct"); *United States v. Mazza-Alaluf*, 621 F.3d 205, 208 (2d Cir. 2010) (citing *United States v. Mazza-Alaluf*, 607 F. Supp.2d 484, 489-90 (S.D.N.Y. 2009), which cites to a 1999 Second Circuit holding: "[a] money transmitting business receives money from a customer and then, for a fee paid by the customer, transmits that money to a recipient in a place that the customer designates..."); *United States v. Bah*, 574 F.3d 106, 110 (2d Cir. 2009) (describing government's evidence that "certain customers came to Bah's restaurant in the Bronx, delivered U.S. currency, and instructed Bah to deliver the equivalent value of local currency to recipients in West Africa"); *United States v. Elfgeeh*, 515 F.3d 100,108 (2d Cir. 2008) (quoting testimony of an FBI agent who testified that a traditional money transmitting business "operates in a similar fashion to Western Union"); *United States v. Velastegui*, 199 F.3d 590, 592 (2d Cir. 1999),  ("[a] money transmitting business receives money from a customer and then, for a fee paid by the customer, transmits that money to a recipient in a place that the customer designates...")

The Fourth Circuit has expressed agreement with the Second Circuit's analysis. *See United States v. Talebnejad*, 460 F.3d 563, 565 (4th Cir. 2006) (citing *Velastegui*, 199 F.3d at 592.).

The Seventh and Eighth Circuits, while not directly addressing the definition of a money transmitting business or the essential elements of a violation of  § 1960, strongly suggest agreement with the Second Circuit in this regard. *See United*

*States v. Dimitrov*, 460 F.3d 409, 411 (7th Cir. 2008)(noting evidence that defendant operated a money transmitting business through an institution known as the Bulgarian Cultural Center, which offered a number of services to include the transmission of monies from the United States to Bulgaria on behalf of customers who paid a fee); *United States v. Abdullahi*, 520 F.3d 890, 892 (8th Cir. 2008) (recounting that defendant accepted monies from Somalis living in the United States and sent the funds on their behalf to Somalia and other African countries).

In a forfeiture matter, the District of Oregon observed that a defendant "was operating an unlicensed money transmitting business by buying and selling metals to and from customers, storing the customer's metals on site, keeping the customer's cash on deposit and writing checks or wiring money on behalf of his customers directly to third parties." *United States v. $166,450.48 In United States Currency, et al.*, 2014 WL 3891748 at *1.

By contrast with the cases referenced above, Mr. Costanzo is only alleged to have sold his customers a valuable item—Bitcoin. His customers did not direct him to store their money for them or send it to third parties and he is not alleged to have offered such services. Mr. Costanzo was merely a retailer of Bitcoin who acquired it wholesale and then sold it to the public for a fee, much in the manner of sales of goods such as clothing, vehicles, and so forth.

On this point, it is useful to contrast the operation of Mr. Costanzo's alleged Bitcoin exchange with the businesses at issue in both *United States v. Faiella et al,* 39 F. Supp.3d 544 (S.D.N.Y. 2014) and *United States v. E-Gold, Ltd.*, 550 F. Supp. 2d 82 (D.D.C. 2008).

1.  The instant case as distinguished from *Faiella.*

In denying defendant's motion to dismiss the § 1960 charge set forth in the indictment filed against him, the court in *Faiella* disagreed with defendant's claim that he had "merely sold Bitcoin as a product in and of itself." 39 F. Supp.3d at 546. The

court elaborated that the Indictment in fact alleged that "Faiella received cash deposits from his customers and then, after exchanging them for Bitcoins, transferred those funds [sic] to the customers' accounts on Silk Road[1]," *Id.* The court concluded that "…[t]hese were, in essence, transfer[s] to a third-party agent[, Silk Road.]" *Id.* In so finding, the court further noted that the charging document further alleged the "Silk Road users did not have full control over the Bitcoins transferred to their accounts…Silk Road administrators could block or seize user funds [sic]." *Id.* The indictment here does not allege any such third party transfer—this is a circumstance where the conduct at issue is simply a person-to-person exchange of cash for Bitcoin.

    2.  The instant case as distinguished from *E-Gold Ltd.*

       *E-Gold Ltd.* involves another case where the trial court, here the District Court for the District of Columbia, denied a motion to dismiss § 1960 charges filed against an issuer of online virtual currency known as "e-gold." Unlike the decentralized system responsible for Bitcoin, e-gold was created and operated by a single company. 550 F. Supp. 2d at 85. The company's business model was that "[f]or every transfer of e-gold from one e-gold account to another, e-gold collects a transaction fee." Id. Critically, these transfers were conducted by the defendant, E-Gold, Ltd., at the direction of "the account holder [, who] can then use the e-gold to buy a good or pay for a service, or to transfer funds to someone else." *Id.* The conduct Mr. Costanzo is alleged to have engaged in, by contrast, does not include the transmittal of funds from one party to another at the direction of a client. Mr. Costanzo is simply alleged to have bought and sold Bitcoin. To the extent he made any "transfer," it was only the sort of transfer inherent and incidental to any purchase or sale, not the directed transmittal required by § 1960 's definition of "money transmitting."

---

[1] For a brief explanation of the online criminal marketplace Silk Road, *see* Exhibit D, USAO, Southern District of New York, Press Release (May 29, 2015).

**CONCLUSION**

Based on all of the arguments above, this Court should conclude that the Indictment fails to allege an offense under § 1960. Specifically, the facts and the law militate for this Court to conclude that: 1) Bitcoin is not money or currency, and 2) that a simple person-to-person Bitcoin exchange does not qualify as "money transmitting." Should this Court so find for the defense on either or both of these two grounds, Counts 1 & 2 must be dismissed.

Excludable delay under 18 U.S.C. § 3161(h)(1)(D) may result from this motion or from an order based thereon.

Respectfully submitted:  October 30, 2017.

JON M. SANDS
Federal Public Defender

 s/Maria Teresa Weidner
MARIA TERESA WEIDNER
Asst. Federal Public Defender

Copy of the foregoing transmitted by ECF for filing October 30, 2017, to:

CLERK'S OFFICE
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington
Phoenix, Arizona 85003

FERNANDA CAROLINA ESCALANTE KONTI
MATTHEW H. BINFORD
Assistant U.S. Attorneys
United States Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408

LEE DAVID STEIN
Counsel for Co-Defendant
Peter Nathan Steinmetz
One Renaissance Sq.
2 N Central Ave., Ste. 1900
Phoenix, AZ 85004

Copy mailed to:

THOMAS MARIO COSTANZO
Defendant

  *s/yc*