JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

MARIA WEIDNER, #027912
Asst. Federal Public Defender
maria_weidner@fd.org
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | No. CR-17-0585-01-PHX-GMS |
|---|---|
| Plaintiff, | |
| vs. | **MOTION TO SUPPRESS EVIDENCE OBTAINED FROM THE APRIL 20, 2017 SEARCH OF MR. COSTANZO'S RESIDENCE** |
| Thomas Mario Costanzo, | |
| Defendant. | **(Evidentiary Hearing Requested)** |

Thomas Mario Costanzo, by and through undersigned counsel, respectfully moves this Court to suppress all evidence obtained as a result of the search of his residence on April 20, 2017. This relief is appropriate because 1) the affidavit filed in support of the warrant is replete with omissions and false or misleading statements that work to undermine the finding of probable cause, and 2) the search warrant application is impermissibly overbroad and thus invalid.

This motion is filed pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure and the Fourth Amendment of the United States Constitution and is supported by the attached memorandum incorporated herein.

Respectfully submitted: November 6, 2017.

JON M. SANDS
Federal Public Defender

*s/Maria Weidner*
MARIA WEIDNER
Asst. Federal Public Defender

# MEMORANDUM OF POINTS AND AUTHORITIES

I. **Introduction and Statement of Facts**

   A. **Charges and Investigation of the Instant Case**

   *a. Charges filed against Mr. Costanzo in the First Superseding Indictment.*

The first superseding indictment (Dkt. #18) charges Mr. Costanzo with Unlicensed Operation of a Money Transmitting Business, in violation of 18 U.S.C. § 1960; Conspiracy to do the same, in violation of 18 U.S.C. §§ 371 and 1960; Money Laundering, in violation of the "sting" provision of the statute, 18 U.S.C. § 1956(a)(3); and Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1).

   *b. Mr. Costanzo is **not** accused of drug trafficking violations in violation of Title 21 of the United States Code.*

The First Superseding Indictment does **not** charge Mr. Costanzo or his co-defendant with any violation of Title 21 of the United States Code, which encompasses federal crimes involving the manufacture, distribution, importation, etc. of controlled substances. Moreover, government disclosures contain **no evidence** that indicate defendants in the instant case were involved drug trafficking.

   *c. Undercover Agents represented and/or insinuated they were involved in drug trafficking when they sought to buy bitcoin from Mr. Costanzo.*

The only evidence of drug trafficking in the instant case came courtesy of the government's undercover agents (UCAs), who injected this particular fiction into their undercover interactions with Mr. Costanzo. But even these were limited to brief verbal statements by the UCAs, furtive confidences awkwardly but insistently inserted into their meetings with Mr. Costanzo, often only when the UCA was able to get a word in edge-wise during Mr. Costanzo's monologues on the virtues of Bitcoin and the evils of our domestic banking system and regulatory state.

//
//
//
//

**B. The Affidavit in Support of an Application for Search Warrant for purposes of searching Mr. Costanzo's residence.**

*a. The Affidavit in Support of an Application for Search Warrant did <u>not</u> conclude probable cause was established for any violation of Title 21.*

The Affidavit in Support of an Application for Search Warrant, authored by TFO Chad Martin, a/k/a UCA "Jake," submitted April 19, 2017, provides a lengthy and non-relevant recitation detailing TFO Martin's extensive training and experience in narcotics investigation. *See* Exhibit A, Affidavit, at ¶¶ 3-12. The 32-page affidavit finally concludes that based on the investigation conducted, there is "probable cause to believe there have been violations…of Title 18 §§ 371 and 1960(a)…18 U.S.C. § 1960(a) and (b)(1)(B)…18 U.S.C. § 1956(a)(3)(B)… and 18 U.S.C. § 1956(a)(3)(C)..." *Id.* at ¶ 90; *see also* ¶ 17.

As to the allegations regarding § 1956, parenthetical notes indicate that the proceeds at issue had been "represented by a law enforcement officer to be proceeds of drug trafficking in violation of 21 U.S.C. §§ 841 and 846." *Id.* However, given that the only "drug traffickers" revealed in government disclosures over the course of the two-year investigation were UCAs "Sergei," "Tom," and "Jake," there was never any actual or suspected Title 21 violation. It was all part of the UCAs' ruse. There is thus no support in the Affidavit or assertion made in TFO Martin's stated conclusion of probable cause for violations by either defendant in this case of Title 21 offenses. *Id.*

*b. The Affidavit is replete with intentional and/or reckless omissions and/or false and/ or misleading statements.*

The Affidavit details numerous undercover conversations between UCAs and targets Mr. Costanzo and Dr. Steinmetz. Exhibit A at ¶¶ 31, 49, 50, 51, 53, 54, 62-64. Descriptions of the interactions in the Affidavit often omit pertinent details that work to mislead the reader as to the true content of the interactions. *Id.*; *see infra* Part II(A). The Affidavit also contains conclusory statements that are not supported in the document itself or government disclosures that further mislead or misdirect the reader. *Id.* at ¶¶ 23, 25, 42, 81, 83. This, together with the irrelevant and copious information regarding the

Affiant's narcotics investigations experience and training, *id.* at ¶¶ 3-12, was material to the finding of probable cause and worked to mislead and misdirect the magistrate.

### C. The Search Warrant Application submitted to authorize the search of Mr. Costanzo's residence.

Elements of the Affidavit that worked to mislead and misdirect the magistrate were enlarged upon and exacerbated by the language of the Search Warrant Application itself.

> ***a. The Search Warrant Application sought and received authorization to search for and seize evidence of violations of 21 U.S.C. § 846, a crime for which probable cause was <u>not</u> established.***

Given the conclusions of the Affidavit, Exhibit A at ¶¶ 17, 90, the Search Warrant Application submitted is quite troubling. Exhibit B. The signature page of this document provides a list of statutes for which the government's investigation concluded probable cause had been found: 1) Conspiracy to Operate Unlicensed Money Transmitting Business; 2) Operation of Unlicensed Money Transmitting Business; 3) Money Laundering to Conceal or Disguise; 4) Money Laundering to Avoid Reporting Requirement. *Id.* at 1. This list conforms to the conclusions set forth in the Affidavit. Exhibit A at ¶¶ 17, 90. This representation is undercut, however, by Attachment B to the Application, which lists the "things to be searched for and seized." Exhibit C.

The introductory paragraph to Attachment B states that "[a]gents are authorized to search for and seize evidence of violations" of three statutes: the first two refer to money laundering and operation of an unlicensed money transmitting business. *Id.* at 1. The third inexplicably references Title 21 § 846 (Conspiracy to Distribute a Controlled Substance). *Id.*

Given that TFO Martin is federally deputized with the DEA, the possibility that this was an inadvertent "cut and paste" mistake was considered; but that is not the only such mention or reference to Title 21 violations in the Search Warrant Application—Attachment B contains numerous paragraphs relating to evidence "to search for and seize" from Mr. Costanzo's residence that directly references Title 21 violations for which no probable cause had been established. *Id.* at ¶1 ("[h]eroin, [c]ocaine, [m]ethamphetamine, or any other illicit drug"), ¶ 4 ("…papers relating to transportation,

ordering, purchase, and distribution of controlled substances…"), ¶ 5 ("…records of…drug supplied or received…"), ¶ 11 ("[i]tems and/or documents evidencing…drug distribution…"), ¶ 17 ("[p]ackaging material, [etc.,]…related to the use and/or distribution of controlled substances"), ¶ 18 ("[d]rug paraphernalia or other items used for possessing[, etc.] illegal controlled substances"), ¶ 20(m) ("[r]ecords and things evidencing the use of the [i]nternet to facilitate the distribution of illicit drugs…").

### b. The Search Warrant Application's inclusion of Title 21 offenses improperly expanded the scope of the warrant.

Assuming *arguendo* that probable cause to search for evidence of the listed Title 18 offenses was properly established in the Affidavit, *see* Exhibit A at ¶¶ 17 & 90, inclusion of 21 U.S.C. § 846 in Attachment B to the Search Warrant Application, together with the numerous items listed that relate to drug trafficking, *see* Exhibit B at ¶¶ 1, 4, 5, 11, 17, 18, and 20(m), significantly expanded the scope of this search without the required probable cause. For instance, had agents not been turning Mr. Costanzo's residence upside down looking for evidence of a Title 21 offense, the unassuming box of ammunition that led to the charge in Count 8 of the present indictment would not have been recovered.

## II.     Law and Argument

### A. The Search Warrant is facially invalid due to Affiant's intentional or reckless false and/or misleading statements and/or omissions that misled the magistrate.

The Warrant Clause of the Fourth Amendment provides that "[N]o Warrants shall issue, but upon probable cause, supported by oath or affirmation." While there is a general "presumption of validity with respect to the affidavit supporting the search warrant," the Warrant Clause of the Fourth Amendment "would be reduced to a nullity if a police officer was able to use deliberately false allegations to demonstrate probable cause." *Franks v. Delaware*, 438 U.S. 154, 171 (1968); *see also United States v. Leon*, 468 U.S. 897, 923 (1984) (explaining that the application of the good faith exception is precluded "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth" (citing *Franks, supra*)). In *Franks*,

the Supreme Court held that a defendant can challenge the facial validity of the warrant affidavit by "making a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *United States v. Lefkowitz,* 618 F.2d 1313, 1317 (9th Cir. 1980); *accord United States v. Craighead,* 539 F.3d 1073, 1080 (9th Cir. 2008); *United States v. Stanert*, 762 F.2d 775, 780 (9th Cir. 1985). Once the defendant makes this substantial preliminary showing, the Fourth Amendment requires the Court to hold an evidentiary hearing. *Franks*, 438 U.S. at 156. If at the evidentiary hearing, the defendant demonstrates by a preponderance of the evidence that the warrant affiant intentionally or recklessly made false statements and/or omissions that misled the magistrate, suppression is warranted. *Id.*; *see also Stanert*, 762 F.2d at 780.

To meet the first prong of the *Franks* test, the defendant must make a substantial preliminary showing that the affiant "knowingly and intentionally, or with reckless disregard for the truth" made a false statement in the warrant affidavit. *Craighead*, 539 F.3d at 1080 (quoting *Franks*, 438 U.S. at 155). "[D]eliberate or reckless omissions of facts that tend to mislead" are also sufficient to meet this burden. *Stanert*, 762 F.2d at 782; *accord United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995) ("*Franks* applies to omissions as well as false statements."); *see also United States v. Martinez-Garcia*, 397 F.3d 1205, 1216 (9th Cir. 2005) (finding the affiant's omission of information in the warrant affidavit sufficient to meet the first prong of the *Franks* test).

A substantial preliminary showing does not require "[c]lear proof" of a deliberate or reckless false statement or omission at this stage. *Stanert*, 762 F.2d at 781. However, there must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. *Franks*, 438 U.S. at 171; *see also Craighead,* 539 F.3d at 1080 ("a defendant must make specific

6

allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof").

### a. *False or misleading statements made by Affiant in the Affidavit.*

The Affidavit at issue in this case, Exhibit A, falsely and/or misleadingly recounts statements made by Mr. Costanzo and/or Dr. Steinmetz to UCAs over the course of the two-year investigation. The referenced statements took place during meetings that were recorded by the UCAs. Transcriptions of these recordings as well as the recordings themselves establish that various statements referenced in the Affidavit are recounted in a manner that is false or otherwise misleading due to the omission of pertinent information. Each false and/or misleading statement is addressed in turn below:

i. <u>False/Misleading statements attributed to Dr. Steinmetz or Mr. Costanzo.</u>

<u>False/Misleading Statement #1</u>: "STEINMETZ also spoke about structuring cash deposits at banks by breaking the large deposits up into smaller amounts." Exhibit A at ¶ 31.

The Affiant's statement is misleading in that it falsely suggests that Dr. Steinmetz was involved in a discussion regarding how to structure deposits to avoid regulation when in fact he simply made a correct statement of fact, warning that such activity could lead to federal criminal charges. Exhibit D, Excerpted Transcript of March 21, 2015 Bitcoin Meetup, at lines 4-5. Specifically, the transcript makes clear that Dr. Steinmetz was responding to a comment made by an unidentified male indicating he might try to avoid reporting requirements by depositing less than the reporting threshold. *Id.* at lines 2-3. Dr. Steinmetz simply responded that "if you deliberately break up your deposits into less than $10,000, you are guilty of the federal crime of structuring your deposits." *Id.* at lines 4-5. Dr. Steinmetz went on to assert "…I just try to keep all my stuff legal." *Id.* at lines 17-18.

<u>False/Misleading Statement #2</u>: "COSTANZO advised that Bitcoin is pseudonymous and that there are ways to make it difficult to track." Exhibit A at ¶ 49.

7

The Affiant's statement is misleading in that it characterizes the exchange between the UCA and Mr. Costanzo as a primer on concealing money transactions through Bitcoin. *Id.* In fact, Mr. Costanzo was trying to respond to the UCA's question regarding government tracking by explaining *why* Bitcoin is hard to track rather than *how* to make it still harder to track. *See* Exhibit E, Excerpted Transcript, Bates 618-621; Bates 625-627. Specifically, the transcript makes clear that Mr. Costanzo was struggling to articulate that the Blockchain—essentially the recordkeeping component for bitcoin transactions—generates a new address for each transfer of bitcoin—and that this system, while trackable, is very difficult to track, thus making Bitcoin pseudonymous. *Id.* at 626, lines 1505-1512.

<u>False/Misleading Statement # 3</u>: "Your Affiant spoke to COSTANZO about his use of the Darknet and told COSTANZO that he was looking to purchase items on the Darknet and use Bitcoin as payment method because it is secure. COSTANZO advised that the issue with trusting sites on the Darknet is that websites can be taken down." Exhibit A at ¶ 50.

This statement is misleading because it suggests Mr. Costanzo was involved in the Darknet despite the fact that government disclosures—including the transcript of this exchange—do not support this conclusion. *See, e.g.,* Exhibit F, Excerpted Transcript, Bates 634-636. In response to the UCA's inquiry about using the Darknet, Mr. Costanzo immediately redirected the discussion to the virtues of peer-to-peer bitcoin transactions. *Id.* He did not discuss Darknet, and his exchange with the UCA in fact strongly suggests that he has no greater familiarity with that platform than the average individual who has been exposed to media reports of government takedowns of dark net domains over the years. *See, e.g.,* Exhibit G, Wired: November 7, 2014 Article RE: Takedown of Dark Net Domains.

<u>False/Misleading Statement #4</u>: "COSTANZO explained to your Affiant that anytime someone withdrawals [sic] more than $3,000 at a time, the bank will complete a SAR for the government to document the transaction. These statements lead your Affiant to believe that Costanzo is aware of United States money laundering laws

8

and currency reporting regulations and is knowingly using Bitcoin to circumvent the law and launder proceeds from illegal activity. Exhibit A at ¶ 53.

This statement is misleading simply because it fails to note that Mr. Costanzo is incorrect, thus evincing his ignorance, as opposed to knowledge, of applicable laws and regulations. Specifically, the threshold trigger for a bank to file a SAR is twofold: 1) a transaction that involves at least $5,000, and 2) where the bank knows, has reason to know, or suspects that the funds and/or the transaction are illicit in source and/or purpose. *See* 31 CFR 1020.320(a)(2).

<u>False/Misleading Statement # 5</u>: "COSTANZO stated this is because the customer gets the cash from "his girls" because he is a "pimp." Exhibit A at ¶ 54.

This misleading statement suggests that Mr. Costanzo said that a particular client was in fact a pimp in a story he recounted to DEA UCA during an undercover meeting. The transcript of this exchange, however, reveals otherwise. *See* Exhibit H, Excerpted Transcript, Bates 745-746. This conversation makes clear that the Affiant assumed that the "girls" alluded to by Mr. Costanzo were prostitutes. However, based on this conversation it is also plausible—and in fact probable, given the multitude of $1 bills—that the "girls" were exotic dancers and not prostitutes. *See, e.g.*, Exhibit I, Havocscope, Prostitution Prices.

      ii. <u>False/Misleading information and conclusions in the Affidavit.</u>

<u>Misleading Statement #6</u>: Affiant's recitation of his extensive training and experience in narcotics investigations. *Id.* at ¶¶ 3-12.

The extensive cataloging of Affiant's training and experience in narcotics investigations amounts to an initial misdirection of the reader of the Affidavit from the true focus of the investigation—financial crimes—not narcotics. This is a theme that is consistent throughout both the Affidavit and the Search Warrant Application. The result: a false sense of urgency/exigency leading to approval of a warrant which granted authority for a search far broader than otherwise established by probable cause.

<u>False/Misleading Statement #7</u>: Affiant's characterization of "specific guidelines and regulations pertaining to persons who administer or exchange virtual currencies such as Bitcoin." *Id.* at ¶ 23.

This statement is misleading in that it suggests that rules have actually been promulgated and codified for the purpose of regulating bitcoin in the United States. This is simply incorrect. Bitcoin is not directly regulated by the federal government or any foreign government; it is not subject to domestic or international monetary policy. Congress has not addressed Bitcoin or other virtual internet-based commodities as of yet. The Department of Treasury's Financial Crimes Enforcement Network ("FinCEN") has issued only interpretative guidance as regards this topic. *See* Exhibit J, FIN-2013-6001, Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies, Mar. 18, 2013. Of note, interpretative guidance is exempt from notice and comment requirements of the Administrative Procedure Act ("APA"). *Id.*; *see also* Exhibit K, Internal Revenue Manual, Part 32.1.1.2.6 (noting that interpretative rules are exempt from the APA's notice and comment requirements). The Internal Revenue Manual explains that interpretative guidance does not require notice to or comment from the public as would otherwise be required by law for a substantive rulemaking because "the underlying statute implemented by the regulation contains the necessary legal authority for the action taken and any effect of the regulation flows directly from that statute." *Id.*

The interpretative guidance here is the Treasury Department's extra-legislative attempt to regulate virtual commodities in the absence of the appropriate direction and authorization from Congress. *See, e.g., F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 536-37 (2009) (citing *Mistretta v. United States*, 488 U.S. 361, 372-374 (1989) ("If agencies were permitted unbridled discretion, their actions might violate important constitutional principles of separation of powers and checks and balances. To that end the Constitution requires that Congress' delegation of lawmaking power to an agency must be 'specific and detailed…' Congress must 'clearly delineat[e] the general policy' an agency is to achieve and must specify the 'boundaries of [the] delegated

authority….' Congress must 'lay down by legislative act an intelligible principle,' and the agency must follow it.")(internal quotations omitted). The Affiant's incorrect statement of law misled and misdirected the magistrate.

<u>False/Misleading Statement #8</u>: Affiant's conclusion that "peer-to-peer Bitcoin transactions conducted with non-registered exchangers [are] typically [undertaken] to avoid reporting requirements under State or Federal law." Exhibit A at ¶ 25.

This statement is misleading for the same reasons set forth regarding False/Misleading Statement # 7.

<u>False/Misleading Statement # 9</u>: Affiant's discussion of a Joint Task Force investigating money laundering and drug trafficking activities on the Darknet and implication that COSTANZO and STEINMETZ were so involved. Exhibit A at ¶ 42.

In this characterization the Affiant strongly implies that co-defendants in this case were identified via the Darknet. However, this assertion is in direct conflict with the affidavit's statement that the IRS investigation was not the result of scouring the Darknet, but rather of accessing the publicly available and accessible LocalBitcoins.com website. *Id.* at ¶¶ 26, 27. Further, government disclosures do not indicate that Mr. Costanzo had any involvement in the "Darknet." This portion of the Affidavit is also misleading for the reasons set forth as regards False/Misleading Statement # 3.

<u>False/Misleading State #10</u>: Affiant's conclusion that "COSTANZO and STEINMETZ…are knowingly operating an unlicensed money transmission business and laundering proceeds from illegal activities including drug trafficking by exchanging U.S. Currency/cash for Bitcoin." *Id.* at ¶ 81.

This statement is misleading and misdirects the magistrate because it improperly suggests that the government's investigation has actually identified the laundering of proceeds from illicit activities in the instant case. To the contrary, government disclosures do not indicate that any attempt was made to determine the identities of those who sought to obtain bitcoin from either co-defendant or whether such individuals were involved in a "specified unlawful activity" pursuant to 18 U.S.C. § 1956. The

government and its sting targeting co-defendants is the sole source of evidence as regards any "specified unlawful activity."

<u>False/Misleading Statement #11</u>: Affiant's discussion of The Onion Router (TOR) and the Darknet in addressing the need to analyze any electronic devices found in the course of the search. *Id.* at ¶ 83.

This statement is misleading for the same reasons set forth as regards False/Misleading Statements # 3 and # 9.

<u>Misleading Statement #12</u>: Affiant's assertion that there is "probable cause to believe there have been violations of federal law" as relates to operation of an unlicensed money transmitting business, conspiracy to do the same, and money laundering under the "sting" provisions of the statute.

This statement is misleading due to the fact that the accompanying Search Warrant Application sought—and received—authority to search for and seize evidence not only of those financial crimes referenced in the Affidavit's conclusion, it also included a new crime for which no probable cause was established: 21 U.S.C. § 846. *See* Exhibit B. The result was authorization of a much more expansive search than would have otherwise been authorized on a finding of probable cause for the financial crimes.

The above "specific allegations" of "deliberate falsehood or reckless disregard for the truth" in TFO Martin's Affidavit, taken together, are sufficient to make the substantial preliminary showing required to fulfill the first prong of the *Franks* test. *Craighead*, 539 F.3d at 1080. Given TFO Martin's lead role in the investigation and his specific knowledge of its methods and contents, this Court should conclude "that he knew or should have known the veracity of the challenged statements in the affidavit." *United States v. Gonzalez*, 412 F.3d 1102, 1111 (9th Cir. 2005); *see also United States v. Burns*, 816 F.2d 1354, 1357-58 (9th Cir. 1987) (finding that agent's false statement about the duration of the cars' visits to be "deliberate or reckless" because it was contradicted information in the investigation report); *Meling*, 47 F.3d at 1554 (holding

that the FBI's failure to disclose an informant's criminal history and mental illness was a deliberate omission where the FBI had specific knowledge).

### b. TFO Martin's false statements, misleading statements, & omissions were necessary and material to the finding of probable cause.

A false statement and/or omission in the warrant affidavit alone is insufficient to establish entitlement to a *Franks* hearing. To obtain a hearing, a defendant must also show that the false statement or omission is material, *Martinez-Garcia*, 397 F.3d at 1216; "that the affidavit purged of those falsities and supplemented by the omission would not be sufficient to support a finding of probable cause," *Stanert*, 762 F.2d at 782. A finding of probable cause requires the issuing judge to determine whether "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). To meet this standard, "there must be a fair probability both that a crime has been committed and that evidence of its commission will be found in the location to be searched." *United States v. Nguyen*, 673 F.3d 1259, 1265 (9th Cir. 2012); *see also United States v. Rubio*, 727 F.2d 786, 793 (9th Cir. 1983) (explaining that under the Fourth Amendment seizure of evidence is only permitted "upon a showing of probable cause to believe it was somehow connected to criminal activity").

Here the court is faced with a somewhat unusual situation in that the Affidavit is operating on two levels. While discussing an investigation into suspected financial crimes, the reader is misled and misdirected by superfluous information suggestive of involvement in drug trafficking, an area not otherwise pursued by the government's investigation beyond the UCAs' ruse. The above-discussed misleading surplusage, to include TFO Martin's catalog of his experience in drug trafficking investigations, multiple references to the DarkNet, misstatements of law, and mischaracterizations of defendant statements, *see supra* Part II(A)(a), fatally undermine the validity of the resulting warrant.

### B. The Search Warrant is facially invalid as a result of its impermissible overbreadth.

The Fourth Amendment requires that search warrants describe items to be seized and the premises or persons to be searched with sufficient particularity. This requirement ensures that search warrants do not take on the character of a wide-ranging exploratory "general warrant," forbidden by the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 584 n. 21 (1980) (retracing the roots of the particularity requirement to the colonialists' objections to the writs of assistance). The particularity requirement also bars overbroad search warrants: "'Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.'" *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006) (quoting *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993)). That is, "does the proposed warrant limit the government's search to the specific places that must be inspected to confirm or dispel the suspicion that gave rise to probable cause?" *In the Matter of the Search of Google Email Accounts Identified in Attachment A*, 92 F.Supp.3d 944, 950 (D. Alaska, 2015) (citing *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) ("By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.")); *see also United States v. Cardwell*, 680 F.3d 75, 78 (9th Cir. 1982).

In the instant case, the effect of improperly incorporating 21 U.S.C. § 846 into the Search Warrant Application is an impermissible broadening of the scope of the available search based on whatever probable cause was in fact established for the financial crimes. Searching for drugs, for paraphernalia, for evidence of packaging and distribution, requires going through a residence with a fine tooth comb. Such is not the case when searching for evidence that is primarily digital or locked in a safe or safe deposit box. The wide-ranging nature of the search sought by the government and granted by the magistrate was the result of misdirection with the consequence of

invalidating the present warrant as an exploratory "general warrant" in violation of the dictates of the Fourth Amendment.

### III.     Conclusion

Accordingly, the Mr. Costanzo asserts that he is entitled to an evidentiary hearing on this matter. A hearing is appropriate for two reasons: 1) Mr. Costanzo has made the requisite substantial preliminary showing under *Franks* of both material and intentionally, knowingly, or recklessly false statements or omissions in the warrant affidavit; 2) Mr. Costanzo has shown that the warrant is facially invalid for overbreadth and thus violates the Fourth Amendment's prohibition on general warrants. In either and both cases, a suppression hearing is warranted and all physical evidence discovered, including the box of ammunition, arising from the April 20, 2017 search of Mr. Costanzo's residence, must be suppressed.

Respectfully submitted:  November 6, 2017.

JON M. SANDS
Federal Public Defender

*s/Maria T. Weidner*
MARIA T. WEIDNER
Asst. Federal Public Defender

Copy of the foregoing transmitted by ECF for filing November 6, 2017, to:

CLERK'S OFFICE
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington
Phoenix, Arizona 85003

MATTHEW BINFORD & FERNANDA CAROLINA ESCALANTE KONTI
Assistant U.S. Attorneys

LEE STEIN & MICHAEL MORRISSEY
Counsel for Co-Defendant STEINMETZ

Copy mailed to:

THOMAS MARIO COSTANZO
Defendant
   *s/yc*