ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

MATTHEW BINFORD
Arizona State Bar No. 029019
Matthew.Binford@usdoj.gov
CAROLINA ESCALANTE
Arizona State Bar No. 026233
Fernanda.Escalante.Konti@usdoj.gov
GARY M. RESTAINO
Arizona State Bar No. 017450
Gary.Restaino@usdoj.gov
Assistant U.S. Attorneys
40 N. Central Ave., Suite 1200
Phoenix, Arizona  85004
Telephone:  602-514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-17-00585-PHX-GMS |
| Plaintiff, | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FROM THE APRIL 20, 2017 SEARCH OF COSTANZO'S RESIDENCE** |
| vs. | |
| Thomas Mario Costanzo, | |
| Defendant. | |

Now comes the United States of America, by and through its undersigned attorneys, and responds to Defendant's motion seeking to suppress all evidence from the search of Defendant's residence.  Defendant's first argument in support of a *Franks* hearing is without merit as Defendant fails to sufficiently demonstrate how any statements in the Affidavit are intentionally or recklessly misleading, and material to a finding of probable cause.  Defendant's second argument insinuating the Search Warrant is overbroad and invalid is completely undermined by the facts of the investigation, training and experience of the Affiant, and the totality of the circumstance summarized in the Affidavit.   Thus, the United States request the Court deny Defendant's motion, as supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     **Introduction**

    A. **Factual Background**

     In March 2015, agents from the Internal Revenue Service (IRS) in Phoenix, Arizona began investigating an open source website called localbitcoins.com that facilitates the purchase and sale of Bitcoin by allowing exchangers to market their services. (*See* Ex. A, Affidavit,¶ 27.) An individual named Morpheus Titania was listed as the top-rated Bitcoin exchanger in Phoenix at the time. (*Id.* at ¶ 28.) He created his online profile on March 12, 2013, where he advertised the sale of Bitcoin, provided his telephone number, and included statements such as "I will get you Bitcoins immediately and discretely!" and "All transactions are done complete anonymity. The only record of the transaction is the blockchain." (*Id.* at ¶¶ 27-28.) IRS agent learned that Morpheus Titania was an alias and the telephone number listed on his profile was subscribed to Thomas Costanzo, the Defendant. (Id. at ¶ 29.)

     On March 20, 2015 an IRS undercover agent (hereinafter "UCA1") met Defendant at a Starbucks after contacting him at the listed phone number on his profile. (See Ex. B, IRS Rpt. at 001.) This was the first undercover meeting with Defendant and it was audio recorded in its entirety. Some of the topics Defendant spoke about during the meeting included Bitcoin, his involvement with Bitcoin, and the anonymity associated with Bitcoin and Defendant's transaction. UCA1 portrayed himself as an importer/exporter who needed to transport large amounts of currency without detection from the government. Near the end of the meeting, Defendant helped UCA1 download mycelium, a digital application to exchange Bitcoin that increases the anonymity. UCA1 then provided Defendant with $2,000 of United States Currency (USC), including the transaction fee, in exchange for Bitcoin. Defendant also informed UCA1 about a Bitcoin meetup that was occurring the following day.

     On March 21, 2015, UCA1 attended the Bitcoin meetup and met Dr. Peter N. Steinmetz, a Bitcoin wholesaler who could do large transactions for a five percent fee. (*Id.*

at ¶ 31.)  UCA1 sat at a table with Dr. Steinmetz and a few other individuals who were also present for the Bitcoin meetup. (*Id.*)  Defendant also arrived to the Bitcoin meetup with a board to list the sale of Bitcoin by the organizations members to other members or attendees of the meetup. (*Id.*)  Defendant and Dr. Steinmetz spoke about at length about Bitcoin and discussed their relationship, informing they met on localbitcoins.com a couple of years prior.  (*Id.*)  UCA1 did not purchase any Bitcoin that day.  The meetup was also audio recorded in its entirety.

On May 20, 2015, UCA1 met with Defendant at a Starbucks and gave him $3,000 worth of USC for Bitcoin.  At this meeting, UCA1 informed Defendant that he needed the Bitcoin to pay his supplier for heroin.  (*Id.* at ¶ 32.)

On October 7, 2015, a second IRS undercover agent (hereinafter "UCA2") who portrayed himself as UCA1's business partner met with Defendant at a Starbucks to purchase Bitcoin related to the UC's business.  (*Id.* at ¶ 34.)  UCA2 had prearranged to exchange $10,000 worth of USC with Defendant, but increased the amount to $15,000 USC during the meeting.  (*Id.*)  Defendant only had enough Bitcoin to exchange $13,000 USC but agreed to meet UCA2 later that day to exchange the rest.  After the $13,000 transaction was complete, surveillance units followed Defendant to Dr. Steinmetz's residence, where Defendant remained for ten to fifteen minutes, and subsequently traveled to two public locations and conducted two Bitcoin transactions.  (*Id.*)

On November 21, 2015, UCA1 contacted Defendant to arrange another exchange.  (*Id.* at ¶ 37.)  Defendant invited UCA1 to another Bitcoin meetup. (*Id.*)  Dr. Steinmetz was present at the meetup.  (*Id.*)  UCA1 observed Dr. Steinmetz conduct a Bitcoin transaction with an unknown individual.  (*Id.*)  UCA1 also provided Dr. Steinmetz $2,000 USC in exchange for Bitcoin. (*Id.*)  Dr. Steinmetz transferred the Bitcoin and provided his business card to UCA1, informing him to call to discuss a larger transaction.  (*Id.*)  During that meeting, UCA1 also exchanged $13,000 worth of USC for Bitcoin with Defendant.  (*Id.*)

On February 29, 2016, UCA1 contacted Dr. Steinmetz on the phone number provided on his business card and arranged a meeting at Dr. Steinmetz's residence on

March 8, 2016, to conduct a $22,000 to $23,000 USC transaction.  (*Id.* at ¶ 40.)  On the day of the transaction, UCA1 told Dr. Steinmetz that currency was proceeds from the sale of drugs.  Dr. Steinmetz terminated the transaction and referred UCA1 to a Bitcoin meetup event occurring that evening where someone might be available to conduct the transaction.  (*Id.* at ¶ 41.)

In March 2016, Phoenix investigators from the Drug Enforcement Administration (DEA), United States Postal Inspectors Service (USPIS), the Department of Homeland Security (DHS), and the IRS, created a taskforce to investigate the money laundering and drug trafficking activities of individuals using the Darknet.  (*Id.* at ¶ 42.)  Because of what the task force was learning from their investigations, they expanded the scope of their investigations to include the money laundering and unlicensed money transmission business by Bitcoin exchangers, including Defendant and Dr. Steinmetz.  (*Id.* at 43.)  DEA TFO Chad Martin, the Affiant of the Search Warrant Affidavit, and IRS agents involved in the initial investigation of Defendant and Dr. Steinmetz were members of the task force.  (*Id.*)

From September 2016 to April 2017, TFO Martin, acting in an undercover capacity, interacted with Defendant over the phone and in person on multiple occasions.  Defendant conducted four Bitcoin transactions with TFO Martin, exchanging approximately $151,000 worth of USC, which included Defendant's exchange fee.  All of the in person meetings were audio recorded.   Text messages were also preserved.   Investigators contemporaneously conducted surveillance on Defendant.

On September 14, 2016, TFO Martin met with Defendant who spoke about Bitcoin and anonymity.  (*Id.* at ¶ 51.)  TFO Martin informed Defendant that he needed to transport money between Arizona and California without getting it seized if stopped by law enforcement.  (*Id.*)  They then conducted a $2,000 transaction.

On November 16, 2016, TFO Martin met with Defendant who exchanged $12,000 worth of USC for Bitcoin.  (*Id.* at ¶ 53.)

On February 2, 2017, TFO Martin met with Defendant who exchanged $30,000 worth of USC for Bitcoin. (*Id.* at ¶ 61.) TFO Martin stated was planning to do a $100,000 transaction in the future.   Defendant informed he had a "banker" who loans him large amounts of currency for larger transactions.   TFO Martin told Defendant the cash was proceeds from cocaine sales.   Defendant put his finger over his lips and said "shhh I don't want to know that," and then completed the transaction and still planned for the $100,000 deal. (*Id.*)   Defendant told TFO Martin to download a secure messaging application on his telephone called "Telegram" to communicate in the future. (Id.)

On April 10, 2017, TFO Martin met with Defendant and Dr. Steinmetz to discuss the details of the $100,000 Bitcoin purchase, arranged for April 20, 2017. (*Id.* at 70.)  Dr. Steinmetz introduced himself as "Amideo." (*Id.*)   During the meeting, they told TFO Martin they had been doing business together since 2013.  TFO Martin informed he needed to purchase large amounts of Bitcoin to transport across state line in order to avoid having to explain the origin of the money if stopped by the police.  (*Id.* at ¶ 72.)  Dr. Steinmetz advised he could conduct such a deal but wanted it to be legal.  (*Id.* at ¶ 73.)  Dr. Steinmetz stated that he does not file any paperwork, complete government documentation or disclose personal information about the transaction unless required by a court subpoena.  (*Id.*)

On April 19, 2017, United States Magistrate Judge David K. Duncan signed Search Warrant No. 17-6318 MB, authorizing the search of Defendant's residence and electronic devices located during the execution of the search warrant.

On April 20, 2017, TFO Martin met with Defendant and provided him $107,000 USC in exchange for Bitcoin.  Dr. Steinmetz did not appear to the meeting.  Dr. Steinmetz did not show up the transaction ten days later.  Defendant informed Dr. Steinmetz was out of town.  TFO Martin informed Defendant that the $107,000 he was exchanging was from drug dealers.  Defendant conducted the transaction and was arrested shortly thereafter.  Law enforcement officers then executed the Search Warrant at Defendant's residence.

## B. Search Warrant

Search Warrant No. 17-6318 MB, signed by United States Magistrate Judge David

K. Duncan, authorizing the search of Defendant's residence and electronic devices located therein, included the 37-page Affidavit of DEA TFO Chad Martin.  The Affidavit was common to the Applications for Search Warrants for Dr. Steinmetz's residence and vehicle.

In pages 1 through 5 of the Affidavit for the Search Warrant, TFO Martin lists his background.  In paragraphs 7, 8, 11, and 16, TFO Martin documents his experience investigating financial crimes.  In paragraphs 20 through 26, TFO Martin provides a detailed background on Bitcoin.  In pages 8 through 29, TFO Martin provided a detailed summary of the entire investigation from March 2015 to April 2017.  In pages 29 through 35, TFO Martin explained the necessity for analysis of electronic devices.

## II.    Law and Argument

Defendant now makes an application to the Court for suppression of all evidence seized during the execution of the search warrant claiming TFO Martin's Affidavit included recklessly misleading statements material to the finding of probably cause.  (*See* Doc. 65.)   Defendant also argues that the Search Warrant Application is impermissibly overbroad and this invalid.  (*Id*.)  Both claims are without merit.

The decision of the Magistrate Judge in authorizing the search warrant should be considered with great deference, and the relevant inquiry is whether the magistrate judge had sufficient basis for finding probable cause.  *See United States v. Meek*, 366 F.3d 705, 712 (9th Cir. 2004).  A magistrate judge's decision to authorize a search warrant is to be subjected to a narrow standard of review.  *United States v. Stanert*, 762 F.2d775 (1985).

### A. Defendant has failed to demonstrate that TFO Martin's statements are intentionally or recklessly misleading.

To challenge the veracity of an affidavit in support of a search warrant, a defendant must make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the allegedly false statement or omission is necessary to the finding of probable cause.  *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000), *citing Franks v. Delaware,* 438 U.S. 154 (1978).  If a defendant satisfies both prongs, he or she is entitled to an evidentiary hearing. *Franks,* 438

U.S. at 172.   On the other hand, a defendant's substantial preliminary showing of recklessness or deliberate falsity is of no consequence and requires no hearing "when material that is the subject of the alleged falsity or reckless disregard is set to one side [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Id*.

In making a determination, "there is a presumption of validity with respect to the affidavit supporting the search warrant." *Franks,* 438 U.S. at 164.  "The Warrant Clause of the Fourth Amendment takes [an] affiant's good faith as its premise."  . *Stanert*, 762 F.2d at 781.  It is assumed the facts listed in the affidavit are truthful. *Franks* 438 U.S. at 165 ("[A truthful showing] does not mean that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily.  But surely it is to be truthful in the sense that the information put forth is believed or appropriately accepted by the affiant as true.") (internal quotations omitted).  A defendant's "attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks,* 438 U.S. at 172, 98 S.Ct. at 2685.  "Allegations of negligence or innocent mistake are insufficient." *Id*.

Here, Defendant lists twelve statements he claims are intentionally false or recklessly misleading statements that are necessary for a finding of probable cause, and material to a finding of probable cause.  Defendant's attacks are all conclusory.  Defendant simply states they are false or misleading without demonstrating what is false or misleading about them.  Contrary to Defendant's claims, the twelve statements by TFO Martin are founded upon reliable hearsay, information learned from TFO Martin's training, experience and personal involvement in this investigation, and are statements appropriately accepted by TFO Martin as true.

The Affidavit contained one inadvertent error, whereby the localbitcoins.com profile listed for the initial IRS investigation was the listed profile when TFO Martin contacted Defendant in 2016 instead of the one accessed by the IRS agents earlier in 2015

towards the beginning of the investigation.  The incorrect use of Defendant's updated profile was a *de minimis* error of no significance to the question of the sufficiency of the application for the warrant, as they both contained very similar information: same name, same phone number, same feedback score and website.  (*See* Ex. C, 2014 Profile, pgs. 1-3.)  It is impossible to articulate any way in which the use of a more current profile affected the application. The Affidavit did not contain intentionally false or misleading statements, nor did it contain statements made with a reckless disregard for the truth.

**Challenged Statement #1:**  In paragraph 31, TFO Martin states, "STEINMETZ also spoke about structuring cash deposits at banks by breaking the large deposits up into smaller amounts."  Defendant erroneously argues this statement is misleading because it falsely suggests Dr. Steinmetz was discussing how to structure deposits to avoid a regulation.  (*See* Doc. 65 at pg. 7.)  Defendant takes TFO Martin's statement out of context and fails to provide background for Dr. Steinmetz's statement about structuring.

On March 21, 2015, Dr. Steinmetz was present at a Bitcoin meetup where he discussed Bitcoin with many individuals, including UCA1.  Paragraph 31 is TFO Martin's chronological summary of Dr. Steinmetz's conversation during the meetup.  Paragraph 31 contains fifteen sentences; the challenged statement is number nine.  The statements preceding the challenged statement, inform that Dr. Steinmetz spoke about getting involved with Bitcoin for political reasons, his attractions to lack of government manipulation, Suspicious Activity Reports (SARs), and Dr. Steinmetz's belief that large transactions have generated SARs on him.  Next followed the challenged statements, followed by other Bitcoin related topics and mention of his business with Defendant.  TFO Martin provided no direct quotes by Dr. Steinmetz.  There are also no statements stating TFO Martin believed Dr. Steinmetz was instructing individuals on how to structure.  Structuring is not one of the violations listed in the Affidavit.  Thus, this is not a recklessly misleading statement.

**Challenged Statement #2:**  In paragraph 49, TFO Martin states, "COSTANZO advised that Bitcoin is pseudonymous and that there are ways to make it difficult to track."

- 8 -

Defendant argues that this statement is misleading because it characterizes Defendant "as a primer on concealing money transactions through Bitcoin." (Doc. 65 at pg. 8.) Defendant fails to point out how the next statement in paragraph 49 by TFO Martin, which states, "COSTANZO also advised that localbitcoins.com is a good way to conceal money transactions." (Ex. A at pg. 17, ¶ 49.) Additionally, in Defendant's Exhibit E, an excerpt of the transcript from the September 14, 2016 meeting between TFO Martin and Defendant, Defendant is captured discussing multiple applications aimed at providing higher anonymity and explains them to TFO Martin in simple terms. It is not disputed that Defendant was well versed in Bitcoin, and willing to teach and talk about it. (*See* Ex. A at ¶ 27.) Defendant's own statements and advertisements negate his claim that TFO Martin's statement is misleading.

**Challenged Statement #3:**  In paragraph 50, TFO Martin states, "Your Affiant spoke to COSTANZO about his use of the Darknet and told COSTANZO that he was looking to purchase items on the Darknet and use Bitcoin as payment method because it is secure. COSTANZO advised that the issue with trusting sites on the Darknet is that websites can be taken down." Defendant argues this statement is misleading because it suggests Defendant was involved in the Darknet. As noted in Defendant's Exhibit E at Bates 634, when TFO Martin asked Defendant if he knew much about the Darknet, Defendant responded, "Um, I haven't really experimented too much." The government submits that actually indicated Defendant has at least some experience. Defendant then goes on to offer that the problem with Darknet websites is that they can be taken down. Regardless of how he may have learned of the information, Defendant made the statement, and TFO Martin included it in the Affidavit in efforts to provide a comprehensive account. Additionally, Defendant fails to demonstrate how the statement is reckless. As Defendant suggests he obtained knowledge of the Darknet from open source media articles, on that same token, Defendant could similarly learn that the Darknet, although not common, could

be used lawfully.  As such, this statement is not recklessly misleading.[1]

**Challenged Statement #4:**  In paragraph 53, TFO Martin stated, "COSTANZO explained to your Affiant that anytime someone withdrawals [sic] more than $3,000 at a time, the bank will complete a SAR for the government to document the transaction.  These statements lead your Affiant to believe that Costanzo is aware of United States money laundering laws and currency reporting regulations and is knowingly using Bitcoin to circumvent the law and launder the proceeds from illegal activity."  Defendant argues these statements are misleading because they fail to note Defendant's ignorance.  Defendant only provided one of the statements in paragraph 53 upon which TFO Martin derived his beliefs.  Defendant failed to include the preceding statement "COSTANZO stated that the guy had to go around to several different banks and withdraw a few thousand dollars at a time to avoid getting a suspicious activity report (SAR) generated on him."  (Ex. A at pg. 19, ¶ 49.)  TFO Martin's belief statement is based on the totality of all Defendant's statements,. *See Franks*, 438 U.S. at 171 (it is the Affiant's statements that are subject to review, not a defendants).   As such, Defendant fails at demonstrating how the challenged statement is recklessly misleading.

**Challenged Statement #5:**  In paragraph 54, TFO Martin states, "COSTANZO stated this is because the customer gets cash from "his girls" because he is a "pimp."  Defendant argues this statement is misleading because it states that Defendant's client was a pimp and it suggests that TFO Martin assumed the girls were prostitutes.  Although neither the transcript nor the audible segments of the audio clearly reflect Costanzo's statement that he was exchanging money for "a pimp," TFO Martin would testify that he heard Costanzo state ". . . he gets em from his girls pimpin' or whatever" during an inaudible portion of the audio.  Moreover, the description is not misleading.  TFO Martin

---

[1]      As further proof that the government did not intend to create any false impressions about the Dark Net in this case, the Court may consider the superseding testimony in the grand jury, in which the testifying agent confirmed that there were no allegations in the instant case that Costanzo or Steinmetz sold anything on the dark net. (6/20/17 Test. of IRS agent, at 22, attached as Exhibit 2 to the Motion to Seal.)

never provided any indication or conclusion in the Affidavit insinuating the "girls" were prostitutes despite Defendant informing TFO Martin, "you can do whatever you want, you can do something illegal, I don't want to know about it." Even if TFO Martin misheard the pimp reference, substantial probable cause exists in the absence of paragraph 54.

**Challenged Statement #6:** Defendant claims that TFO Martin's recitation of his extensive training and narcotics investigations is misleading because it misdirects the magistrate judge from the focus of this investigation, leading the magistrate to believe it was a narcotics investigations, creating a false sense of urgency for the approval of the warrant.[2] An affiant's training, experience, and background is commonplace in an affidavit in support for a search warrant. *See United States v. Gil,* 58 F.3d 1414, 1418 (9th Cir.1995). TFO Martin was not reckless. He included his experience with finical investigations, Bitcoins, and also informed that the initial investigation was conducted by the IRS.

**Challenged Statement #7:** In paragraph 23, TFO Martin discusses "specific guidelines and regulations pertaining to persons who administer or exchange virtual currencies such as Bitcoin." Defendant fails to demonstrate how this is recklessly misleading, and he fails to support his conclusion that interpretive guidance from the Financial Crimes Enforcement Network of the Treasury Department ("FinCEN") lacks persuasive authority in a criminal prosecution. TFO Martin was just providing additional background and context for the investigation.

**Challenged Statement #8:** In paragraph 25, TFO Martin states that "peer-to-peer Bitcoin transactions conducted with non-registered exchangers [are] typically undertaken to avoid reporting requirements under State or Federal law." Again, Defendant fails to demonstrate how this is recklessly misleading. TFO Martin arrived at this conclusion from his own involvement in the investigation in an undercover capacity. He carefully qualifies

---

[2]    Substantial contextual evidence also strongly suggests that the Magistrate Judge was not in fact confused or misdirected, in the form of the interdelineations the Magistrate Judge made to Attachment B while carefully reviewing the warrant package. (*See* dkt. # 65-1 at 43-46.)

1    his conclusion to avoid misleading that all such transactions are to avoid reporting
2    requirements.

3        **Challenged Statement #9:** In paragraph 42, TFO Martin states that a Joint Task
4    Force was investigating money laundering and drug trafficking activities on the Darknet.
5    Defendant claims the statement is misleading because it implies that COSTANZO and
6    STEINMETZ were so involved.  Defendant fails to include how TFO Martin then stated
7    that the Task Force expanded their investigations to include money laundering and
8    unlicensed money transmission businesses by Bitcoin exchangers, like Costanzo and
9    Steinmetz.  As such, Defendant fails to demonstrate how TFO's statement is misleading
10   considering the subsequent statements alleviated of any confusion.

11       **Challenged Statement #10:** Defendant argues that TFO Martin's conclusion that
12   "COSTANZO and STEINMETZ…are knowingly operating an unlicensed money
13   transmission business and laundering proceeds from the illegal activities including drug
14   trafficking by exchanging U.S. Currency/cash for Bitcoin" is recklessly misleading.  TFO
15   Martin reached this conclusion after two years of an investigation, which he was directly
16   involved in over a year, had personal interaction with Defendant and Dr. Steinmetz, and
17   became educated on everything that occurred prior to his involvement.

18       **Challenged Statement #11:** Defendant argues that TFO Martin's discussion in
19   paragraph 83 of The Onion Router (TOR) and the Darknet in addressing the need to analyze
20   any electronic devices in the course of the search is misleading.  Defendant fails to inform
21   the Court how during the March 21, 2015 Bitcoin meeting recorded by UCA1, Dr.
22   Steinmetz informed in response to an inquiry about enhancing anonymity with Bitcoin that
23   the Darknet was an option.   Additionally, Defendant seemed to have some minimal
24   experience with the Darknet, whose attractive feature is anonymity.  (See dkt. # 65-1, Ex.
25   F at 643.)   Anonymity is a feature strongly emphasized by Defendant in regards to Bitcoin
26   exchanges; as demonstrated above, Defendant informs about multiple ways to enhance
27   anonymity.  And lastly, TFO Martin is aware from his training and experience that TOR
28   and Darknet are anonymous and deal with Bitcoin.  Thus, TFO Martin's statements are not

recklessly misleading.

**Challenged Statement #12:**  Defendant claims TFO Martin's assertion that there is "probable cause to believe there have been violations of federal law" as related to operation of an unlicensed money transmitting business, conspiracy to do the same, and money laundering under the "sting" provision is misleading because the Search Warrant Application included a violation of 21 U.S.C. 846, conspiracy to distribute controlled substances.  The underlying specified unlawful activity for the money laundering charges are narcotics offenses.[3]  As noted in the Affidavit, undercover agents informed Defendant on multiple separate occasions that the cash they were exchanging for Bitcoin derived from the sale of drug proceeds.  Defendant understood and after learning of those facts, not only completed the transaction at hand with the particular UC, but also continued to do business with each UC in the future.  TFO Martin was one those UC, and his assertion is based on his personal involvement in the investigation in addition to his training and experience.  Defendant fails to sufficiently demonstration hos TFO Martin's statement is recklessly misleading.

Thus, the government submits that Defendant has not made the threshold showing to warrant a *Franks* evidentiary hearing because even if the above statements are omitted from the affidavit, would not have negated a substantial basis for concluding that there was probable cause to believe that evidence money laundering, unlicensed money transmitting and conspiracy to distribute narcotics would be found on the premises to be searched.  Given this conclusion, there are also no grounds to support an inference that the statements

---

[3]      Defendant's argument seems a bit intentionally vague.  There is no reference to a substantive controlled substance violation in either the warrant face sheet or the application cover page.  Rather, the only reference to Title 21 is in the Attachment B identifying items to be seized.  Given that the sting's SUA was drugs, the Magistrate Judge's conclusion that the warrant scope includes drugs seems inherently reasonable.  Moreover, the conjecture that but for the search for drugs the agents would never have looked in other places that they looked is specious.  Documents and thumb drives and other slips of paper on which wallet information may be identified can be found in the same places one hides drugs or other contraband.

- 13 -

were intentional or made with reckless disregard for the truth.

### A. There was a "fair probability" evidence of conspiracy to distribute a controlled substance would be found in Defendant's residence.

Probable cause means a "fair probability" that contraband or evidence is located in a particular place. *Illinois v. Gates* 462 U.S. 213, 246 (1983). The determination of fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a "commonsense, practical question." *United States v. Gourde,* 440 F.3d 1065, 1069 (9th Cir. 2006) (citing and quoting *Gates,* 462 U.S. at 230). "Neither certainty nor a preponderance of the evidence is required." *Id.* (citing *Gates,* 462 U.S. at 246). Under the totality of the circumstances test, otherwise innocent behavior may be indicative of criminality when viewed in context. *See United States v. Ocampo,* 937 F.2d 485, 490 (9th Cir.1991). Additionally, magistrate judges may rely on the training and experience of affiant police officers. *Gil,* 58 F.3d at1418 (9th Cir.1995).

Defendant erroneously argues the Search Warrant is overbroad because there was not probable cause to support either a violation of 21 U.S.C. § 846, conspiracy to distribute a controlled substance, or the existence of drug evidence at the warrant site, as identified in Attachment B. The Affidavit demonstrates that throughout the entire investigation, from March 2015 to April 2017, multiple undercover agents informed Defendant that their need for Bitcoin was to facilitate the transfer of drug proceeds. (*See* Ex. A ¶¶ 32, 33, 34, 51, 63.) The drugs mentioned by investigators included heroin and cocaine. (*Id.*) This information never deterred Defendant from engaging in transactions with the undercover agents. To the contrary, Defendant continued to engage in exchanges. In February 2, 2017, during a $30,000 exchange represented to be from the sale of cocaine, TFO Martin informed Defendant the he would need to do a $100,000 exchange in the near future, if he sold additional kilograms of cocaine. (*Id.* at ¶64.) Rather than refuse, Defendant agreed and additionally instructed TFO Martin to download, "Telegram," a cellular device application that provided secure messaging because it "keeps the numbers off a server." (Id.) TFO Martin followed Defendant's instructions, and via Telegram, arranged from the

- 14 -

$107,000 transaction, which occurred on April 20, 2017.  It is important to note that TFO Martin's statements to Defendant were conditioned on the future sale of cocaine. Defendant arguably aided to the success of that sale but providing the encrypted messaging system and obtaining the digital currency to further such activity.  Based on this, coupled with TFO Martin's training and experience of drug trafficking, which includes drug trafficking on the internet, it is "fairly probable" Defendant was conspiring to distribute drugs.  However, even if the Court agrees with Defendant, the result is the same based on the probable cause Defendant was involved in money laundering and operating an unlicensed money transmission business.

### III.    Conclusion

Consistent with the standards expressed in *Franks v. Delaware*, 98 S.Ct. 2674 (1978), the information contained in the Affidavit was acquired and believed and accepted as true and accurate by TFO Martin.  All the challenged assertions made in the Affidavit were based upon sufficient particular facts and circumstances which were set forth in the Affidavit.  The facts as outlined above completely rebut defendant's assertion that the Affidavit contains false statements or reflects a reckless disregard for the truth of those statements.   Even if the Court disagrees, Defendant's request for an evidentiary should nonetheless be denied because there is still sufficient content to make a probable cause determination that the Defendant was involved in criminal activity, which included conspiracy to distribute drugs.

\\\

\\\

\\\

Therefore, the United States respectfully requests that Defendant's instant motion be denied in all respects.

Respectfully submitted this 4th day of December, 2017.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*s/ Carolina Escalante*
MATTHEW BINFORD
CAROLINA ESCALANTE
GARY M. RESTAINO
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on 4th day of December, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Maria Weidner

*s/A. Clifton*
U.S. Attorney's Office

- 16 -