1 | JON M. SANDS
Federal Public Defender
2 | District of Arizona
850 W. Adams, Suite 201
3 | Phoenix, Arizona  85007
Telephone: 602-382-2700
4

5 | MARIA T. WEIDNER #027912
Asst. Federal Public Defender
maria_weidner@fd.org
6 | Attorney for Defendant

7

8 | IN THE UNITED STATES DISTRICT COURT

9 | DISTRICT OF ARIZONA

10 | United States of America,

11 | Plaintiff,

12 | vs.

13 | Thomas Mario Costanzo,

14 | Defendant.

No. CR-17-0585-001-PHX-GMS

**REPLY TO DKT. # 79, GOVERNMENT'S REPONSE TO DEFENSE MOTION TO DISMISS COUNTS 3-7 FOR OUTRAGEOUS GOVERNMENT CONDUCT**

**(Evidentiary Hearing Requested)**

15

16   Defendant Thomas Mario Costanzo, by and through undersigned counsel,

17 respectfully submits his Reply to the Government's Response to his Motion to Dismiss

18 Counts 3, 4, 5, 6, & 7 of the First Superseding Indictment for Outrageous Government

19 Conduct. Mr. Costanzo reasserts the law and argument set forth in his orginal Motion to

20 Dismiss, and adds the following information by way of Reply to supplement the

21 arguments already presented therin:

22   1. **There is no cognizable justification for the initiation of a money laundering sting operation in the absence of any evidence that the government's target is already engaged in money laundering in furtherance of some specified unlawful activity.**

23

24

25   The government suspected Mr. Costanzo of operating an unlicensed money

26 transmitting operation; the government pursued an investigation of this crime based and

27 then, inexplicably, decided to up the ante by throwing money laundering into the deal.

28 No informant, no associate, no tipster, absolutely no basis was provided to justify this

addition to things…it was just a fishing expedition.

A survey of federal "sting" money laundering cases suggests that this kind of approach is more the exception than the norm. *See, e.g., United States v. Barton*, 32 F.3d 61, 63 (4th Cir. 1994) (cooperating federal prisoner puts the IRS in contact with defendant Barton); *United States v. Gurolla*, 333 F.3d 944, 949 (9th Cir. 2003) (sting operated through confidential informant with connections to a low-level money launderer for a drug cartel); *United States v. Wydermyer*, 51 F.3d 319, 321–22 (2d Cir. 1995)(cooperating defendant lads federal investigators to his former associate, defendant Carter); *United States v. Castaneda-Cantu*, 20 F.3d 1325, 1328 (5th Cir. 1994)(sting the result of suspicious activity being investigated by USCBP, specifically, the transport of millions of dollars on a weekly basis to the uNited States form Mexico by the Casa de Cambio Colon); *United States v. Blackmon*, 557 F.3d 113, 116 (3d Cir. 2009)(co-conspirators arrested and agreed to cooperate against defendant Blackmon); *United States v. Payne*, 962 F.2d 1228, 1229 (6th Cir. 1992)(stin precipated by information received from a FBI informant.The government's approach in this case suggests that every citizen or resident of this country is involved in a kind of Russian Roulette game with the federal government. Any of us could be targeted, no justification or articulable suspicion required.

**2. A panel of nine Federal District Court Judges have convened at the Dirksen United States Courthouse in Chicago to consider the propriety of the "stash house" stings implemented by ATF.**

Courts have routinely questioned but nonetheless upheld the unsavory tactics exercised under the auspices of the Department of Justice in sting operations that disproportionately target people who are poor and desperate. So-called "stash house" sting cases have drawn particular attention of late for a simple reason: defense advocates have obtaned data and statistics suggesting that the the sting tactic, as implemented by the Bureau of Alcohol, Tobacco, and Firearms, disproportionately—and intentionally—impacts African Americans in violation of the Equal Protection Clause of the Fourteenth Amendment. *See* Exhibit A, Was Racial Profiling Behind ATF Stash House Stings?, Chicago Tribune, Dec. 13, 2017.

**3. Socioeconomic status, i.e., poverty, comprises a class that deserves greater protection under the Equal Protection Clause of the Fourteenth Amendment than the minimal scrutiny afforded by rational basis.**

A showing of intentional discrimination by the government on the basis of race triggers strict scrutiny, *see, e.g., Johnson v. California*, 543 U.S. 499 (2005). A showing of intentional discrimination based on socioeconomic status (i.e., poverty),

2

however, receives only rational basis scrutiny, which is almost another way to say "anything goes." *See, e.g., Kadrmas v. Dickinson Public Schools*, 847 U.S. 450 (1988). While the stash house stings may not survive as a result of their impact on people of color, it is also urged that reconsideration of poverty as a protected class is merited, given the increasing income gaps in this country and the disparate treatment that the poor—regardless of race—receive across the spectrum of the government's so-called "war on crime." *See* Exhibit B, Barnes & Chemerinsky, *The Disparate Treatment of Race and Class in Constitutional Jurisprudence*.

Respectfully submitted:  December 15, 2017.

JON M. SANDS
Federal Public Defender

*s/Maria T. Weidner*
MARIA T. WEIDNER
Asst. Federal Public Defender

Copy of the foregoing transmitted by ECF for filing December 15, 2017, to:

CLERK'S OFFICE
United States District Court
Sandra Day O'Connor Courthouse

MATTHEW BINFORD
CAROLINA ESCALANTE-KONTI
GARY RESTAINO
Assistant U.S. Attorneys
United States Attorney's Office

Copy mailed to:

THOMAS MARIO COSTANZO
Defendant

*s/yc*

3