ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

MATTHEW BINFORD
Arizona State Bar No. 029019
Matthew.Binford@usdoj.gov
CAROLINA ESCALANTE
Arizona State Bar No. 026233
Fernanda.Escalante.Konti@usdoj.gov
GARY M. RESTAINO
Arizona State Bar No. 017450
Gary.Restaino@usdoj.gov
Assistant U.S. Attorneys
40 N. Central Ave., Suite 1800
Phoenix, Arizona  85004
Telephone:  602-514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-17-00585-PHX-GMS |
| Plaintiff, | **UNITED STATES' MOTION IN LIMINE TO PRECLUDE AN ENTRAPMENT DEFENSE** |
| vs. | |
| Thomas Mario Costanzo, | |
| Defendant. | |

The United States respectfully moves this Court to preclude the defendant, Thomas Mario Costanzo, from raising an entrapment defense.  Costanzo cannot present evidence of a prima facie case of entrapment, and for that reason, any testimony regarding inducement and lack of predisposition should be excluded as irrelevant and misleading pursuant to Federal Rules of Evidence 402 and 403.  To the contrary, all of the evidence, including advertisements by Costanzo seeking clients with whom to exchange bitcoin, his text messages with three different undercover agents, and recorded conversations during bitcoin transactions with those undercover agents overwhelmingly demonstrate Costanzo's willingness to participate in the criminal activity.

1    A district court may require a criminal defendant to make a pretrial offer of proof to

2    demonstrate that the evidence in support of an affirmative defense is sufficient as a matter

3    of law to satisfy the elements of the defense. *See United States v. Moreno*, 102 F.3d 994,

4    997-99 (9th Cir. 1996) (holding that evidence related to an affirmative defense is not

5    admissible if the defendant fails to make a prima facie case of the defense); *United States*

6    *v. Brebner*, 951 F.2d 1017, 1023-24 (9th Cir. 1991).   If the defendant fails to present

7    sufficient evidence, the district court may preclude the defendant from presenting the

8    defense at trial, as well as any evidence supporting the defense. *See id*.

9    Costanzo is charged with five counts of money laundering arising from the sting

10   provision in Title 18, United States Code, Sections 1956(a)(3)(B) and (C).

11    Costanzo will have to proffer evidence that three separate undercover agents

12   entrapped him into making a financial transaction with money represented to be proceeds

13   of a specified unlawful activity, specifically, proceeds from the distribution of controlled

14   substances, something he cannot do based on the evidence of this case.

15   "[A] valid entrapment defense has two related elements: government inducement of

16   the crime, and a lack of predisposition on the part of the defendant to engage in criminal

17   conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988).   As further discussed below,

18   the government did not induce Costanzo, nor did he lack predisposition to commit money

19   laundering.

20   Government inducement under the law of entrapment requires more than just merely

21   providing the "opportunity to commit a crime," such as conducting a sting, *see Jacobson*

22   *v. United States*, 503 U.S. 540, 550 (1992), and requires improper conduct by the

23   government, such as the use of intimidation or threats, coercive tactics, dogged insistence

24   or pleas based on need, sympathy, or friendship, *see United States v, Davis*, 36 F.3d 1424,

25   1430 (9th Cir. 1994*); see also United States v. Poehlman*, 217 F.3d 692, 701 (9th Cir. 2000)

26   (inducement means "opportunity plus something else-typically, excessive pressure by the

27   government upon the defendant or the governments taking advantage of an alternative,

28   non-criminal type motive." (internal quotation marks omitted)). The government induces

1   a crime when it creates a special incentive for the defendant to commit the crime.

2   Inducement is "any government conduct creating a substantial risk that an otherwise law-

3   abiding citizen would commit an offense." *United States v. Sandoval-Mendoza*, 472 F.3d

4   645, 648 (9th Cir. 2006) (citations omitted).  However, "the fact that officers or employees

5   of the Government merely afford opportunity or facilities for the commission of the offense

6   does not defeat the prosecution.  Artifice and stratagem may be employed to catch those

7   engaged in criminal enterprises." *Sorrells v. United States*, 287 U.S. 435, 441 (1932).

8   Even if evidence exists that a government agent induced a  defendant, which the

9   government does not concede in this matter, a defendant is not protected by the "narrow"

10   entrapment defense if the defendant was predisposed to commit the crime "at a time prior

11   to the Government acts intended to create predisposition." *United States v. Skarie*, 971

12   F.2d 317, 321 (9th Cir. 1992); *see Sandoval-Mendoza*, 472 F.3d at 649.  The Ninth Circuit

13   has identified five factors to consider when determining predisposition: 1) the defendant's

14   character or reputation; 2) whether the government first suggested the criminal activity; 3)

15   whether the defendant profited from the activity; 4) whether the defendant demonstrated

16   reluctance; and 5) the nature of the government's inducement. *United States v. Citro*, 842

17   F.2d 1149, 1152 (9th Cir. 1988).  "Although none of the factors is conclusive, the

18   defendant's reluctance is the most important." *United States v. Thickstun*, 110 F.3d 1394,

19   1396-97 (9th Cir.), *cert. denied*, 522 U.S. 917 (1997).  The Supreme Court has explained

20   that "the ready commission of the criminal act  amply demonstrates the defendant's

21   predisposition." *Jacobson*, 503 U.S. at 549-50.

22   The Court is already familiar with the facts of this case from the multitude of

23   motions filed. (*See* Docs. 63, 65, 79, 85, 99, and 100.)  In all the motions filed by Costanzo,

24   he fails to identify the "special incentive" or improper conduct by federal agents to induce

25   him into committing money laundering.  (See Docs. 63, 65, 99, and 100.)  The closest

26   Costanzo comes is by arguing that his financial situation made him vulnerable to a sting

27   operation, *see* Doc. 63 at pg. 13; *see also* Doc. 100, and his expressions to undercover

28   agents that he did not care to know their proceeds derived from drug transactions, *see* Doc.

1    99 at pg. 2, however, neither claim demonstrates or sustains inducement.   Costanzo

2    presents no evidence that he was in a desperate financial situation rendering him no option

3    but to launder drug money for bitcoin.  *See  United States v. Cortes,* 732 F.3d 1078, 1087

4    (9th Cir. 2013) ("It is not entrapment if a person is tempted into committing a crime *solely*

5    on the hope of obtaining ill-gotten gain; that is often the motive to commit a crime.

6    However, in deciding whether a law enforcement officer *induced* the defendant to commit

7    the crime, the jury may consider all of the factors that shed light on how the officers

8    supposedly persuaded or pressured the defendant to commit the crime.") (emphasis added

9    in original).

10        To the contrary, the evidence shows Costanzo was content with his financial

11   situation.  The profile viewed by federal agents on localbitcoins.com suggested Costanzo

12   dealt with large volumes of cash, therefore had access to a large amount of bitcoin, and that

13   he had multiple customers.  (*See*. Doc. 85-1, Ex. C at pg. 42.)   During the first meeting

14   with an undercover agent on March 20, 2015, Costanzo bragged about bitcoin allowing

15   him to quit his job selling windshields in February 2014 and that he has built a multi-

16   million dollar business" off of localbitcons.com.    (*See* Doc. 79-1, Ex. A at 40:00-48:59).

17   On May 20, 2015, Costanzo then conducted an exchange with that undercover agent with

18   proceeds represented to be from drug trafficking.  When the undercover agent informed

19   Costanzo that he was talking about drugs and heroin, Costanzo responded with statements

20   such as, "I know nothing, hahahahah," and "I like to keep things super confidential." (See

21   Doc. 63-1 at pg. 44.)   When the undercover agent said "Heroin," Costanzo responded,

22   "Don't say that word out loud, hahahaha," and "I can come up with as much as you want

23   to do, we just have to keep everything on the down low" and then completed a $3,000

24   exchange.  (*Id*.)  Nothing suggests the undercover agent provided a special incentive to

25   Costanzo to do the exchange or used intimidation, threats, coercive tactics, insistence or a

26   plea based on need, sympathy, or friendship.  Nothing suggest the undercover agents

27   pressured or persuaded Costanzo to complete an exchange with drug proceeds.  In fact, a

28   few months later, Costanzo conducted a $13,000 bitcoin transaction in exchange for

1    represented drug proceeds with a second undercover agent who was introduced to Costanzo

2    as a partner of the first undercover agent.  (*See* Doc. 85-1, Ex. A at pg. 13.)  Costanzo then

3    went on to conduct at least three more exchanges with represented drug proceeds up until

4    the day of his arrest.  Prior to the last two transactions, government agents interviewed a

5    defendant indicted for importation of drugs who proffered that he purchased $30,000-

6    $40,000 worth of bitcoin from Costanzo to purchase drugs on the dark net.  (Prehearing

7    Supp. Disc. at Bates 0000068-0000072.) There was definitely no inducement there to get

8    Costanzo to sell bitcoin to defendant who was buying drugs on the dark net.  That activity

9    occurred from approximately 2014 to 2016, and agents learned about it prior to the last two

10   money-laundering transactions committed by Costanzo.   (*Id*.)

11          It is clear there is no evidence of inducement by the government and that Costanzo

12   has not provided anything to the contrary.  Even if the undercover agents provided the

13   opportunity for Costanzo to commit the crimes, arguably by providing the funds to be

14   laundered since Costanzo provided the rest, that in and of itself is not entrapment.  *See*

15   *Sorrells v. United States*, 287 U.S. at 441; *United States v. Winslow*, 962 F.2d. 845 (9th

16   Cir. 1992) (undercover agent purchased beer and food for defendants, paid for a trip to

17   Seattle, and paid for bomb components purported to be used to detonate bomb at a gay bar

18   in Seattle.)[1]  Costanzo should not be permitted to suggest that there is anything improper

19

20   [1] The Ninth Circuit has repeatedly rejected claims of outrageous government conduct:

21   *United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir. 2003) (government informant

22   pretended to be an experienced money launderer, approached the defendant, proposed that
     they launder money, and then provided the money to be laundered); *United States v.*

23   *Haynes*, 216 F.3d 789, 797 (9th Cir. 2000) (government informant encouraged defendants

24   to engage in new criminal activity); *United States v. Franco*, 136 F.3d 622, 629 (9th Cir.

25   1998) (government informant supplied precursor chemicals used to manufacture illegal

26   drugs); *United States v. Garza-Juarez*, 992 F.2d 896, 904 (9th Cir.1993) (government agent
     initiated all contacts, raised subject of illegal firearms, and offered to supply materials);

27   *United States v. Hart*, 963 F.2d 1278, 1283-84 (9th Cir. 1992) (government used an

28   informant who befriended the defendant allegedly during a time of emotional turmoil and

1    about the government's actions, considering this Court has already denied Costanzo's

2    motion to dismiss his counts for outrageous government conduct. *See* Doc. 109.

3        Just as Costanzo cannot proffer evidence demonstrating government inducement,

4    he also cannot proffer evidence showing his lack of predisposition prior to his contact with

5    federal undercover agents. Analysis of the five factors previously mentioned demonstrates

6    Costanzo was predisposed to commit money laundering. First, prior to any undercover

7    agents exchanging alleged drug proceeds for bitcoin with Costanzo, federal agents were

8    already aware of Costanzo's character. They knew Costanzo used an alias, praised the

9    anonymity and lack of traceability of bitcoin, eased the first undercover agent's concerns

10   about government detectability, stating, "it's a good way to at least lower your visibility,"

11   and directed him to download mycelium, an application that enhanced anonymity. (*See*

12   Doc. 79-1, Ex. A at 54:38 and 1:15.) Second, while all three undercover agents informed

13   Costanzo that their proceeds derived from drug sales, not once did he cease interaction with

14   them. On the contrary, Costanzo seemed to joked with the undercover agents about their

15   representation of the proceeds, repeatedly completed transactions with them, and continued

16   to ease their concerns about detectability. Costanzo also always traveled to meet with the

17   undercover agents, despite his travel limitations or location, and this was well after he was

18

19   ───────────────

20   induced him to buy drugs); *United States v. Berrera-Moreno*,951 F.2d 1089, 1092 (9th Cir.
     1991) (government failed to be aware of and stop informant's use and distribution of
21   cocaine and falsely asserted that informant was tested for drug use); *United States v. Citro*,
22   842 F.2d 1149, 1152-53 (9th Cir. 1988) (undercover agent proposed and explained details
23   of credit card scheme and supplied defendant with counterfeit credit cards); *United States*
     *v. Stenberg*, 803 F.2d 422, 430 (9th Cir. 1986) (the commission of equally serious offenses
24   by an undercover agent as part of the investigation); *Shaw v. Winters*, 796 F.2d 1124, 1125
25   (9th Cir. 1986) (use of false identities by undercover agents); *United States v. Wiley*, 794
26   F.2d 514, 515 (9th Cir. 1986) (government introduced drugs into a prison to identify a
27   distribution network); *United States v. Williams*, 791 F.2d 1383, 1386 (9thCir. 1986) (the
     assistance and encouragement of escape attempts).
28

1   aware he was exchanging bitcoin for drug proceeds.  The agents never met Costanzo at his

2   house, nor did they arrange or pay for Costanzo's transportation.

3        Third, Costanzo profited from conducting the transactions, by charging an exchange

4   rate of his choosing, which was higher than the rates charged by the non peer-to-peer

5   exchanges; however, it was already known to agents that Costanzo would charge a fee for

6   business regardless of the what the proceeds were characterized as.   Fourth, Costanzo

7   never demonstrated reluctance.  In fact, he went above and beyond to please the undercover

8   agents.  For instance, in just one of many examples, during the October 7, 2015 transaction,

9   the undercover agent asked to increase the exchange amount from $10,000 to $15,000 of

10  represented drug proceeds.  (*See* Doc. 85-1, Ex. A pg. 13.)  Costanzo informed him he only

11  had $13,000, completed the exchange for that $13,000 amount, and offered to meet him

12  later that day to exchange the rest.  (*Id.*)  Customer satisfaction, indicative of predisposition,

13  was important to Costanzo because amongst other things, he wanted to have positive

14  feedback on localbitcoins.com.  (*See* Doc. 79-1, Ex. A at 44:49.)  He traveled to the agents

15  and often communicated with them post-transactions to maintain their business.  Fifth,

16  there was no inducement by the government, quite the opposite, Costanzo induced the

17  government with his advertisement on localbitcoins.com, and his emphasis on anonymity

18  and ability to avoid government detection, similar to how he induced the proffering

19  defendant who was purchasing drugs on the dark net and importing them into the United

20  States from the Netherlands.  However, even if the Court finds that the government induced

21  Costanzo to launder drug proceeds, the government offered no "special incentive" nor used

22  pressure or an alternative motive to get Costanzo to commit money laundering.  In hours

23  of recorded conversations between Costanzo and the undercover agents, in addition to the

24  preserved text messages between Costanzo and those agents, it is clear through Costanzo's

25  own words and actions that he was a more than willing and eager participant in the criminal

26  activity.  Costanzo cannot demonstrate that he had an absence of predisposition prior to

27  May 20, 2015, the earliest date of money laundering.

28

1      As demonstrated, Costanzo has not proffered any evidence that would support a

2  defense of entrapment.  The United States respectfully requests that the Court bar Costanzo

3  from presenting an entrapment defense if he cannot proffer particular evidence of a prima

4  facie case of entrapment prior to trial.  Additionally, the United States requests that

5  Costanzo be barred from suggesting, commenting on, or asking questions regarding issues

6  relating to inducement or predisposition.

7      The preclusion of an entrapment defense does not affect a defendant's constitutional

8  right to testify.  "The constitutional right to testify is not absolute."  *United States v. Moreno*,

9  102 F.3d 994, 998 (9th Cir. 1996) (citing *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)).  As

10  the *Moreno* Court wrote, "In *Rock*, the Supreme Court referred to this guarantee as 'the

11  right to present *relevant* testimony.'"  *Id.*  (emphasis in original).  Further, "the *Rock* Court

12  noted that '[t]he right may, in appropriate cases, bow to accommodate other legitimate

13  interests in the criminal trial process.'"  *Id.*  (internal quotation marks and citations omitted).

14  It is undisputed that the United States has a legitimate interest in excluding evidence that

15  is not relevant or is confusing under Rule $402^2$ and Rule $403^3$ of the Federal Rules of

16  Evidence.[4]  As noted above, evidence of entrapment is not relevant if Costanzo fails to

17  present evidence of a prima facie case of that defense.  *See Moreno*, 102 F.3 17 at 998.

18

19

20  [2] Rule 402 provides that "Evidence which is not relevant is not admissible."

21  [3] Rule 403 permits the exclusion of relevant evidence "if probative value is substantially outweighed by the danger of…confusion or the issues, or misleading the jury."

22  [4] Counsel for the government and the defense have engaged in discussions about the admissibility of some of the predisposition evidence that the government intends to offer,

23  and the timeliness of the disclosures of very limited predisposition evidence contained

24  specifically within computer peripherals.  In the likely event that the defense raises those issues in a motion in limine or other pretrial motion, the government will timely respond

25  so that issues related to the scope of evidence are fully aired in advance of the final pretrial

26  conference.  In the absence of a determinative ruling by the Court on entrapment, the government anticipates that its exhibit list will contain some evidence related to

27  predisposition to enable it to counter any entrapment arguments presented to the jury.  But

28  the less entrapment becomes an issue, the less the government needs to introduce predisposition evidence.

1    For the reasons set forth above, the United States respectfully requests that the Court

2   grant its motion.

3           Respectfully submitted this 1st day of March, 2018.

4                                              ELIZABETH A. STRANGE
                                               First Assistant United States Attorney
5                                              District of Arizona

6                                              *s/ Carolina Escalante*
                                               MATTHEW BINFORD
7                                              CAROLINA ESCALANTE
                                               GARY M. RESTAINO
8                                              Assistant U.S. Attorneys

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of March, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and a copy to the following CM/ECF registrant:

Maria Weidner
*Attorney for Thomas Mario Costanzo*


  *s/Yvonne Garcia*
U.S. Attorney's Office