UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | 2:17-cr-0585-GMS-1 |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | March 13, 2018 |
| Thomas Mario Costanzo, | ) | 9:39 a.m. |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

BEFORE:  THE HONORABLE G. MURRAY SNOW, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

FINAL PRETRIAL CONFERENCE

Charlotte A. Powers, RMR, FCRR, CCR, CSR, CMRS
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 40
Phoenix, Arizona  85003-2151
(602) 322-7250

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
1                      A P P E A R A N C E S

2

3    For the Government:

4                U.S. Attorney's Office
                 By: GARY M. RESTAINO, ESQ. and
5                    MATTHEW H. BINFORD, ESQ. and
                     FERNANDA CAROLINA ESCALANTE KONTI, ESQ.
6                40 North Central Avenue, Suite 1200
                 Phoenix, AZ  85004
7

8
     For the Defendant Thomas Mario Costanzo:
9
                 Federal Public Defenders Office – Phoenix
10               By: MARIA TERESA WEIDNER, ESQ. and
                     ZACHARY D. CAIN, ESQ.
11               850 W. Adams Street, Suite 201
                 Phoenix, AZ  85007
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

```
1                      P R O C E E D I N G S
2              (Proceedings resume at 9:39 a.m.)
3          THE COURT:  Please be seated.
4          COURTROOM DEPUTY:  This is CR17-585, United States of
5  America versus Thomas Mario Costanzo, on for final pretrial
6  conference.
7              Counsel, please --
8          MR. RESTAINO:  Good morning, Your Honor.
9          COURTROOM DEPUTY:  -- announce your appearances.
10         MR. RESTAINO:  Good morning, Your Honor.
11             Gary Restaino, Matt Binford, and Carolina Escalante
12 Konti for the United States.  Seated with us at counsel table
13 is Task Force Officer Chad Morton.
14         THE COURT:  Good morning.
15         MS. WEIDNER:  Good morning, Your Honor.
16             Maria Weidner for Mr. Costanzo.  I'm joined at counsel
17 table with co-counsel, Mr. Zachary Cain.
18         THE COURT:  Good morning.
19             All right.  This is the final pretrial conference.
20 We've got some issues to work through.
21             Are we trying this case based on the first superseding
22 indictment, Mr. Restaino?
23         MR. RESTAINO:  We are, Your Honor.
24         THE COURT:  All right.  So which counts -- I know
25 Count 8 and several of the initial counts have been dismissed.
```

1    I want to know which counts they are.

2         MR. RESTAINO:  As written in the superseding

3    indictment, it's Counts 3, 4, 5, 6, and 7.

4         THE COURT:  As well as Count 8, I have dismissed.  So

5    we're trying Counts -- we are not trying Counts 1, 2, and 8.

6         MR. RESTAINO:  That is correct.

7         THE COURT:  If you want me to read the indictment to

8    the jury, have you got -- have you prepared a redacted version

9    and run it by the defendants to make sure that it's -- can be

10   read to the jury?

11        MR. RESTAINO:  Your Honor, we weren't planning on

12   having it read, and I think we're pretty close on the statement

13   of the case.

14        THE COURT:  All right.  So as well, just in case you

15   are, just so we're clear, the forfeiture allegations pertaining

16   to the ammunition have also been dismissed; correct?

17        MR. RESTAINO:  That is correct, Your Honor.  There is

18   a bill of particulars, and we have four items within the bill

19   of particulars that are -- that pertain to this defendant.

20        THE COURT:  Right.  And those are also in the

21   indictment?

22        MR. RESTAINO:  I suppose they are not granularly

23   listed in the indictment, Your Honor.  The parties filed -- or

24   the government filed a bill of particulars --

25        THE COURT:  All right.

1        MR. RESTAINO:  -- in this matter.

2        THE COURT:  And I don't have it front of me, but it

3   does relate to one of the motions in limine we're going to

4   discuss today, the bill of particulars?

5        MR. RESTAINO:  I don't think it does, but we'll --

6   we'll raise it as needed, Judge.

7        THE COURT:  All right.  Thank you.

8        Are you going to arrive at a joint statement of the

9   case, or not?

10       MR. RESTAINO:  Judge, I thought we were really pretty

11   close.  We -- we left a couple of spots for you to make a

12   decision on.

13       THE COURT:  All right.  So I will make the decision.

14   Here is what we're going to do.  The yellow part that says "and

15   to conceal and disguise the nature of the money" will be read

16   to the jury.  "Mr. Costanzo denies the charges" will not be

17   read to the jury.  I will allow, as I allowed the government to

18   flesh out a little bit its case, I will allow also the defense

19   to flesh out its case.  And I will read "Mr. Costanzo denies

20   that he intended to evade federal currency transaction

21   reporting requirements when he exchanged the Bitcoins for

22   money.  Mr. Costanzo asserts that he did not rely on

23   representations made by the undercover agents that the money

24   involved was drug trafficking proceeds."

25       Does either party want to be heard further on that?

1          MR. RESTAINO:  Nothing from the government on that,

2     Your Honor.

3          MS. WEIDNER:  Nothing from the defense, Your Honor.

4          THE COURT:  All right.

5          So on 3, you have provided me a list of joint proposed

6     voir dire questions.  You haven't sought to tailor them in any

7     way to my standard voir dire questions.  And as a result,

8     you've repeated a number of the questions and not repeated

9     others, some of which I feel obliged to give to the jury, I

10    feel like they need to be advised of the defendant's

11    Constitutional rights during the voir dire process, and we need

12    to inquire whether or not they're going to have any trouble

13    affording the defendant his Constitutional rights.  And none of

14    that was mentioned.

15         In addition, in your joint proposed voir dire

16    questions, you proposed to ask questions that I do not think

17    are helpful and I'm not going to entertain, unless you can tell

18    me why I should, and you're going to have an uphill battle on

19    that one.  I don't think that you're entitled to know what

20    people read by the way of magazines, newspapers, and

21    periodicals, and I -- I don't know that you're entitled to know

22    what blogs they read.  If you want to ask about specific blogs

23    that may relate to the facts of this case, I'll consider it.

24    But I'm not going to be inclined to do that otherwise.

25         You've repeated some questions that I already ask and

UNITED STATES DISTRICT COURT

1    will intend to ask in the same way that I ask it in -- in my

2    standard voir dire as I tailor it.

3         I don't know that investing in precious metals such as

4    gold or silver has anything to do with this action.  I can see

5    where you might believe that there is some sort of tie between

6    that and particular political beliefs, but I'm not sure that

7    that is disqualifying or sheds light in any way on who you

8    should get as a juror in this case.

9         Do either -- does either party want to be heard on

10   that?

11        MR. BINFORD:  Well, Your Honor, I believe silver and

12   gold were mentioned by Mr. Costanzo in some of the

13   conversations with the undercover agents.  We also thought that

14   they were a form of alternative value, a form of alternative

15   currency, much like the Bitcoin that's mentioned in this case.

16   We just wanted to know if there were jurors that seem to tend

17   more likely to invest in the non-standard -- something outside

18   of the U.S. dollar, and kind of get a sense of that.

19        THE COURT:  Ms. Weidner?

20        MS. WEIDNER:  Your Honor, I think that if we followed

21   that argument, we could also ask people if they invest in real

22   estate or if they invest in, really, any kind of store value.

23   The defense does not object to the removal of question 8.

24        THE COURT:  All right.

25        How about:  Have you, a family member, or close friend

UNITED STATES DISTRICT COURT

1    ever had any negative experiences with a bank?

2          This doesn't really involve negative experiences with

3    banks, does it?

4          MR. BINFORD:  Well, Your Honor, there is a lot of

5    anti-bank -- there are a lot of anti-bank statements made by

6    Mr. Costanzo throughout this, I think.  Part of that, the

7    government intends to show that he intended to avoid these

8    reporting requirements that financial institutions are required

9    to make, and we intend to use his statements about banks, his

10   negative views about banks, to support our theory and to prove

11   beyond a reasonable doubt that he was intending to avoid those

12   reporting requirements.

13         THE COURT:  Ms. Weidner?

14         MS. WEIDNER:  Your Honor, we likewise would not object

15   to the removal of question 14.  I think that the possibility

16   that an individual may have had an unpleasant experience with a

17   bank, which I think probably all of us have had at one point in

18   time or another, and for example, the recently publicized Wells

19   Fargo issues would not detract from a juror's ability to

20   recognize that there are banking regulations that those banks

21   are required to follow.  And so I -- we would not object to the

22   removal of question 14, Your Honor.

23         THE COURT:  All right.  Well, I'll consider that

24   before I give you what I intend to be my final version.

25         I have reviewed all of the motions in limine.  I am

1    going to rule on them today.

2          You asked about accessing the Darknet.  The government

3    wants that instruction.  I will tell you what I'm likely to

4    rule on the motion in limine.  The government said that I

5    can't -- I should not tie their hands, and if the defense opens

6    the door to the Darknet, then they should be allowed to get

7    into it.  But I don't see any relation between any of the

8    allegations pertaining to what Mr. Costanzo is alleged to have

9    done and the Darknet itself.

10          Am I wrong about that, Mr. Binford?

11          MR. BINFORD:  I think if we're just talking about the

12   five transactions in isolation, it's never been on our position

13   that Mr. Costanzo engaged in any transaction over the Darknet

14   with the undercover acts.  But we believe that the Darknet is a

15   large reason that this investigations was started, and that's

16   well-documented throughout the reports, is that the reason the

17   government agents went after peer-to-peer exchangers, it

18   started investigating peer-to-peer exchangers, because they

19   were enabling people to conduct transactions on the Darknet.

20   And that's a large part of the history here.  I think if

21   Mr. Costanzo was allowed to raise an entrapment defense, the

22   government should be allowed to explain why this investigation

23   started, why he was identified, what the concerns are of the

24   federal agents.

25          THE COURT:  Sounds to me like that's rebuttal

UNITED STATES DISTRICT COURT

1   testimony; right?

2           MR. BINFORD:  I -- I think -- I think it tells the

3   whole story.  I think it's background on the investigation.  I

4   cited a few cases in our response that --

5           THE COURT:  Well, I will tell you that I'm not

6   inclined to allow you to get into the Darknet.  I would,

7   however, warn the defense that if you're going to raise an

8   entrapment theory, and I think that fairness demands on

9   rebuttal an examination of the Darknet, then -- or if you

10  otherwise open the door -- I may allow testimony on the

11  Darknet.  But I'm not going to allow you -- I'm not going to

12  allow you to introduce evidence about the Darknet.

13          I should tell the defendant that although I didn't

14  realize it, I did attend the district conference for Arizona on

15  Friday, last Friday.  Agent Ellsworth was a presenter at that

16  district conference, and I listened to his presentation.  I'm

17  not sure that that in any way prejudices me one way or another

18  with regard to this case, but I do want to disclose that I was

19  there and heard what Agent Ellsworth said, and he did present

20  both on the Darknet and on Bitcoin.

21          I do not see -- I do believe that to the extent that

22  the Darknet -- well, I don't think that the Darknet in and of

23  itself is relevant to the charges as they are brought.  To the

24  extent that it may be relevant to Agent Ellsworth's expertise,

25  I don't think it is sufficiently relevant to justify 403

1    concerns that I might have.

2            And so, while I will not preclude the prosecution from

3    seeking on the rebuttal case if they think they have a basis

4    for raising the Darknet to raise it -- and if you do, you will

5    check with me before you raise it -- I'm otherwise granting the

6    motion in limine as it pertains to the Darknet.

7            And as a result, I am not going to ask any questions

8    on voir dire pertaining to the Darknet.

9            MR. BINFORD:  And Judge, I just -- I want to clear

10   this with you first.  Our proposed plan of action, several of

11   the agents are members of a task force responsible for

12   investigating Darknet crimes.

13           In anticipation of possibly receiving this ruling, we

14   had talked to them about sanitizing their background, their

15   training and experience to Internet crime, drug trafficking on

16   the Internet, statements like that.

17           Is that something that you think is --

18           THE COURT:  I think that is permissible.

19           Do you want to be heard on that?

20           MS. WEIDNER:  Yes, Your Honor.

21           I think that as the Court has provided, this is a case

22   where the -- even the Grand Jury transcripts and the questions

23   posed by government counsel and the responses from SA Ellsworth

24   indicate the Darknet was not involved with Mr. Costanzo.

25           THE COURT:  Right.

1        MS. WEIDNER:  And so this sanitizes -- to say that

2  these agents have training in Internet crimes and things like

3  that, we don't have a problem with that.  The problem is is

4  that there's this, you know, "the Darknet."  It sounds -- it

5  sounds very nefarious, and I think that there is prejudice that

6  attaches to that.  And we appreciate the Court's ruling and

7  would like to be heard if the government thinks that there is a

8  basis to raise the Darknet, notwithstanding Agent Ellsworth's

9  testimony to the Grand Jury that defendants were not involved

10  in the Darknet, and that peer-to-peer transactions are, in

11  fact, the very opposite of going on the Internet.  It's about

12  meeting someone in person to conduct an in-person exchange.

13        Nothing further, Your Honor.

14        THE COURT:  Okay.

15        I take it -- a least --

16        COURTROOM DEPUTY:  Judge, what number motion in limine

17  was that?

18        THE COURT:  I will rule on that again --

19        COURTROOM DEPUTY:  Okay.

20        THE COURT:  -- and make it clear.

21        COURTROOM DEPUTY:  Thank you.

22        THE COURT:  But it is, I believe -- one moment,

23  Kathleen.  I'll get you that.

24        COURTROOM DEPUTY:  Thank you, Judge.

25            (Pause in proceedings.)

1          THE COURT:  That was doc 135, motion in limine to

2    preclude evidence or argument as to Darknets and/or the Onion

3    Router.

4          COURTROOM DEPUTY:  Thank you, Judge.

5          THE COURT:  The Onion Router also seems to me not to

6    have any relation to the facts of this case, as at least as it

7    pertains to the charges.

8          Am I wrong about that, Agent Binford?

9          MR. BINFORD:  Your Honor, the -- the only time we

10   would introduce that evidence -- and that -- and that's all

11   based on a later ruling that this Court has to make regarding

12   the electronic evidence -- but the Onion Rouser -- the Onion

13   Router was an application that was found on some of

14   Mr. Costanzo's electronic devices.  So as we mentioned in our

15   response document 140, we would only seek to introduce that in

16   terms of rebuttal evidence, either -- rebuttal or

17   impeachment -- either against Mr. Costanzo or some of the

18   defense witnesses that have been noticed.

19         THE COURT:  Well, is there any suggestion based on

20   what you've looked at that Mr. Costanzo used the Onion Router

21   in any way related to the transactions charged here?

22         MR. BINFORD:  No.

23         THE COURT:  Well, then, I'm going to grant the motion

24   in limine with respect to the Onion Router under the same

25   conditions that I did the Darknet, which is you won't raise it,

1  either in your case in chief or on rebuttal, without first

2  seeking the permission of the Court on a sidebar conference

3  based on specific testimony.

4          MR. BINFORD:  Yes, Your Honor.

5          THE COURT:  All right?

6          Now, Ms. Weidner, I have disclosed to you that I did

7  hear the class presentation by Agent Ellsworth.  Does that give

8  the defense any concern about the neutrality of the Court?

9          MS. WEIDNER:  Your Honor, I was not present at that

10 presentation.  I had colleagues who were.  The government also

11 disclosed to me Agent Ellsworth's PowerPoint presentation that

12 he provided.  Based on the nature of his testimony, which I

13 guess we'll get to later in this hearing, I -- that does not

14 raise concern for me, Your Honor.

15         THE COURT:  All right.  I will note that I believe,

16 unless I'm wrong, that the entirety of that presentation was

17 recorded, and you can listen to it.  I sat next to some of your

18 colleagues at a table, and so I don't believe -- I will say

19 that the -- I will avow that although the information was an

20 explanation of what "Bitcoin" is, what the "Darknet" is, and

21 how Bitcoin can be used on the Darknet, there was nothing that

22 was related to the facts of this case.

23         MS. WEIDNER:  Understand that to be the case, Your

24 Honor.  And I would also add that the -- I -- from reviewing

25 the PowerPoint presentation, I do plan to see Agent Ellsworth's

1    presentation that was recorded.  It sounds like the information

2    is akin to pretty much what you would find if you did a Google

3    search for the same sorts of things, just looking for

4    information.  It's -- it's not secret, it's easily accessible

5    to anyone.  And I think given how much press Bitcoin has gotten

6    in recent months, especially that this is -- this is quickly

7    moving from a specialized area to kind of common knowledge.

8            THE COURT:  All right.  Well, there was an amusing

9    explanation by -- it wasn't -- it was a late night -- it was

10   Conan O'Brien.  They had a nice Conan O'Brien explanation of

11   Bitcoin, which is worth your time.

12           127, motion in limine to preclude an entrapment

13   defense.

14           Do you want to be heard on that?  I've read it.

15           MS. ESCALANTE:  Your Honor, the government would stand

16   by its motion.  We believe at this point that the defense has

17   not shown anything towards entrapment, and that they should be

18   precluded from arguing.

19           THE COURT:  All right.

20           Ms. Weidner?

21           MS. WEIDNER:  Yes, Your Honor.

22           An entrapment defense requires two things:  One, to

23   show that there was a predisposition to commit the charged

24   crime prior to the government's engagement with the defendant,

25   which I don't think that the government has shown at all.  And

1    second, that the defendant was not induced.

2            I think at this point, Your Honor, based on the fact

3    that, you know, the issue has been pled, it is premature for

4    this Court to determine whether or not there is sufficient

5    evidence for an entrapment defense.  I will note that the law

6    is that only slight evidence is necessary.  The bar is not high

7    for us to clear in order to merit an entrapment defense.  But

8    the big concern for the defense, more than that -- because like

9    I said, I think it's premature -- is the government's request

10   that not only Mr. Costanzo be precluded from presenting an

11   entrapment defense, but that Mr. Costanzo be precluded from

12   presenting any evidence that would be suggestive of a lack of

13   pre-disposition or inducement.  And I think that the government

14   is -- is overreaching in that request.  I think that request is

15   overbroad.  I think it is unconstitutional.  It is attempting

16   to shut down the adversarial nature of this trial by basically

17   making it impossible for us to mount a defense at all.

18           THE COURT:  All right.  What I'm going to do, it does

19   seem to me that how I rule on this motion relates also to

20   whether or not I'm going to allow the government to admit some

21   of the 404(b) evidence that they indicate they're going to

22   offer because I do believe if you're allowed to introduce --

23   and I think you are -- allowed to introduce evidence that

24   Mr. Costanzo was not predisposed, then the government also may

25   be allowed to introduce some of the 404(b) evidence that

1    they've otherwise offered.

2         So I am going to deny this motion with prejudice.  I

3    am going to note, however, that it does affect how I may rule

4    on some of the government's 404(b) motions.

5         As it pertains to document 132, it strikes me that the

6    government's response -- and I don't know if I'm dealing

7    with -- who I'm dealing with on the government's case -- it

8    strikes me that the government has no problem with 132 except

9    to the extent that it wishes to introduce testimony -- in other

10   words -- I will tell you how I view this, view what you've

11   said, Mr. Restaino, which is that you're not going to try and

12   show that Mr. Costanzo is a constitutionalist or has any

13   particular beliefs of any generalized stripe that may be

14   prejudicial, but you do seek to introduce statements that are

15   included in recordings that relate to anti-bank regulation

16   sentiments.

17        Have I correctly characterizing your response?

18        MR. RESTAINO:  You have, Your Honor.  I would have one

19   point to add, and that's I think we've made great progress with

20   the defense, and I anticipate we're going to have, for anything

21   that winds up getting introduced, a relatively complete and

22   agreed-upon series of segments from those recordings that

23   should ameliorate any of the politics concerns.  And both sides

24   have worked hard to do that as to the recordings.

25        THE COURT:  All right.

1          Ms. Weidner, do you want to be heard on 132?

2          MS. WEIDNER:  Yes, Your Honor.  Just briefly.

3          I -- I want to confirm what Mr. Restaino said.  We

4    have been working with the government on the transcripts that

5    will be admitted in this case.  The government has been

6    agreeable to excluding information that is either political in

7    nature and unnecessary or inflammatory, both for the defense

8    case and potentially for the government's case.  It is, I

9    believe -- and I think Mr. Restaino is on board with this

10   too -- it is in the interest of both parties to avoid exciting

11   biases of the jury.  It is -- it would be misleading, it would

12   be confusing, and it would deter the jury from its focus, which

13   is the facts of this case.  Those biases could easily cut

14   against the government as much as they could against us.

15         Also I think it merits mention that Mr. Costanzo has a

16   constitutional right to espouse whatever political views he

17   wishes, and it would be unseemly and improper to urge the jury

18   to conclude that it should find Mr. Costanzo guilty based on

19   his beliefs rather than the charged acts that the government is

20   formed to prove at trial.

21         I think that we are on a good path in that regard at

22   this point.  Again, I think that if the views are limited to

23   the statements that Mr. Restaino suggested and -- and what the

24   parties have discussed as far as these undercover recordings

25   that are going to be a big part of the evidence, I think we're

1    on good ground.

2            THE COURT:  All right.  So I just want to make it

3    clear to the extent that the parties have not already agreed on

4    this, and perhaps they have, it does strike me that Mr. -- it's

5    going to be hard to demonstrate to me, I think, that

6    Mr. Costanzo's political views, even if they are radical and

7    anti-government, are going to in themselves be sufficiently

8    relevant to overcome the prejudice that might result.  However,

9    to the extent that in the recordings he does express anti-bank

10   regulation-type biases, I think they are sufficiently relevant

11   that they are admissible, despite 403, 401, or whatever.  And

12   so I don't know if that's any guide to you, but about anti-bank

13   regulation biases and statements made by the defendant in the

14   videotapes or otherwise, I will be inclined to admit.

15   Statements about him being a constitutionalist, an anarchist,

16   or whatever else, generally I don't think are sufficiently

17   probative to overcome the prejudice.

18           MR. RESTAINO:  And so, Judge, that's -- that's helpful

19   to get that guidance, and we had agreed with that previously as

20   well.

21           There's a little bit of work to be done, I can tell

22   you, on some exhibits.  We'll be fronting those to the -- to

23   the defense and have already started to do that.  But some of

24   the few exhibits that might need tailored redactions, to take

25   that into account as well.

1          THE COURT:  All right.

2          As I read the motions and the responses, document 133,

3    which is the defense's motion in limine to preclude expansion

4    of trial of regulatory bases asserted by the government in

5    document 117 is granted without governmental objection.

6          MR. BINFORD:  That's correct, Your Honor.

7          THE COURT:  All right.

8          So document 134, and this is the defense motion to

9    preclude digital evidence for late discovery, it seems to me

10   that by the response the government has limited what it may use

11   at all at trial to specific categories of information, which I

12   am now about to discuss.

13         Three letters that the government might use on

14   rebuttal, depending upon the -- whether or not any cases set

15   forth for entrapment by the defendant;

16         Three text message strings offered in the case --

17   three text message strings offered in the case of an entrapment

18   defense;

19         Three recordings with the witness in the case that

20   appeared on the witness' telephone;

21         The government will not introduce any hard drive

22   evidence that it has produced to the defendant;

23         And there is one text in the encrypted chat

24   communication that the government may reserve the right to

25   introduce.

1    Have you specified -- is that a correct understanding?

2    MR. RESTAINO:  That's correct, Your Honor.

3    THE COURT:  Have you indicated what those specific

4    documents and recordings are to the defendant?

5    MR. RESTAINO:  We have indicated the text message

6    string.  I don't think we've yet indicated the letters, Judge.

7    We will do that shortly.

8    THE COURT:  All right.  Just so you're clear,

9    Mr. Restaino, it's my intent to grant the motion in limine,

10   with the exception of the items that you've set forth in the

11   response, and I would require that those items be specifically

12   identified to the defense so they have adequate time to take

13   them into account and to advise Mr. Costanzo concerning those

14   documents to the extent they haven't already done so.

15   MR. RESTAINO:  To the extent anything hasn't been

16   specifically identified, we will do so by the end of the day,

17   Your Honor.

18   THE COURT:  Ms. Weidner?

19   MS. WEIDNER:  Your Honor, that, at this point -- and

20   I'll just be completely frank -- because of the timing of these

21   disclosures, I have to say that as far as my eyes on them,

22   hasn't happened at all.  This was right before the deadline for

23   the motions in limine, then we had responses, preparing for all

24   of -- well, preparing for this proceeding, and also just

25   preparing for trial.  So if you would give me just a moment to

1    consult with our paralegal, she unfortunately was in trial the

2    week that we got these disclosures, but she has been looking at

3    these and communicating with the government to try to -- to

4    figure out where we are.

5             May I have just a moment?

6             THE COURT:  You may.

7                  (Pause in proceedings.)

8             MS. WEIDNER:  So, Your Honor, looking at the items

9    that the government has highlighted, the defense does not

10   object to the Court permitting the government to use the

11   fliers.  We do object to the text message strings on the

12   Samsung fund identified in Exhibit 1.  Those are on other

13   bases.

14            Regarding any communications with Mr. Steinmetz, who

15   is no longer a defendant in this case, and the admission of --

16   of those kinds of communications, we have objection to that

17   on -- on other bases.

18            THE COURT:  What are the other bases?

19            MS. WEIDNER:  Well, that it is -- well, it's 403, and

20   it's -- it's hearsay.  You know --

21            THE COURT:  Well, it's not hearsay if they're

22   statements by the defendant; correct?

23            MS. WEIDNER:  Yes, but statements by another person

24   who -- because it's not just Mr. Costanzo's statements.  It is

25   an exchange purportedly between Mr. Costanzo and an individual

1    who's not even a witness in this case.

2         THE COURT:  Well, I'll tell you what.  Because

3    Mr. Costanzo's statements are not hearsay, I'm not going to

4    preclude you from seeking to file a motion in limine to the

5    extent that you were only recently aware that the government

6    sought to introduce these as evidence, even though it would be

7    outside the scope of the scheduling order.  But I am going to

8    ask you to look -- you've got a week -- if you've got another

9    basis to seek to, see if you can work it out with the

10   government team.  If you can't work it out and you want me to

11   make evidentiary rulings on the admissibility of evidence that

12   will not wait until trial, I will allow you to file a

13   supplemental motion in limine.  But I'm going to ask you to

14   have it on file on Monday morning so that I'll have time to

15   look at it and address it with you on Tuesday.

16        MS. WEIDNER:  So you would like that filed by Monday

17   morning, Your Honor?

18        THE COURT:  I would.  And that will give the

19   government a chance to reply.  And please be brief about it.

20        MS. WEIDNER:  Yes, Your Honor.  I will.

21        THE COURT:  Okay.

22        So as it pertains to document 134, I am going to grant

23   the motion, except to the extent that the government has

24   identified documents in its response that it seems to me both

25   sufficiently limit the -- what would otherwise be an

UNITED STATES DISTRICT COURT

1    overwhelming scope of disclosure to those documents for which

2    the defendant can adequately prepare for trial, and that is

3    without prejudice to the defense filing a supplemental motion

4    in limine based on other grounds for which they believe that

5    the documents are inadmissible.  I am going to ask that any

6    supplemental motion in limine be filed by Monday morning, and

7    then any response the government has by Tuesday morning so I

8    can look at it before we begin seating the jury in this case,

9    to the extent that we can get a jury seated and begin testimony

10   on that day.

11           Any question by either party?

12           MR. RESTAINO:  No questions, Your Honor.

13           If I could just state for the record, we will be

14   identifying a letter of 5-9-17 and a letter of 5-12-17 later

15   today with specifics to the defense.

16           THE COURT:  All right.  Thank you.

17           As it pertains to document 135, I've already indicated

18   my ruling on that.  I've pretty much granted it.  That is, it

19   isn't that the defense can't open the door, they might open the

20   door, but in the government's case in chief, we're not going to

21   have any testimony about the Darknet or the Onion Router,

22   unless in cross-examination the defense opens the door, in

23   which case the parties will check with me at sidebar before

24   seeking to introduce such evidence.

25           Document 141, which has to do with the other-act

1  evidence, I was not too sure about the -- even though you've

2  set forth the chronology in what I'm sure you feel is fairly

3  clear fashion, I was still not too clear about it, so I have a

4  question or two before ruling.

5       So we apparently have testimony that Mr. Costanzo

6  conducted Bitcoin exchanges in the spring of 2015 with an

7  individual, and there isn't any testimony that Mr. Costanzo

8  knew at that point that the individual was involved in drug

9  transactions; that thereafter, the individual indicated to

10 Mr. Costanzo 10 months after May 2015 something about 10,000

11 bars of Xanax being seized, and that there -- that thereafter

12 Mr. Costanzo purchased a miniscule amount of DMT from that

13 individual.

14      Were Bitcoin exchanges ongoing throughout this time?

15      MS. ESCALANTE:  Yes, Your Honor.

16      THE COURT:  All right.  And so to the extent that

17 you're going to argue predisposition or reserve the right to

18 argue predisposition why shouldn't I let this in as 404(b)

19 opportunity evidence?

20      MS. WEIDNER:  Your Honor, I think that as far as -- it

21 is -- I think that this is solely 404(b), and then it is the

22 Court's province to determine if it's more prejudicial than

23 probative of any relevant fact.

24      I think as far as predisposition evidence, it fails

25 because the government claims that Mr. Costanzo was on notice.

1    And by that time, the IRS aspect of the investigation was well

2    underway.  There is no --

3              THE COURT:  Well, had an arrest been made?  When was

4    the arrest made in this action?

5              MS. WEIDNER:  The arrest was made on April 20th, 2017.

6              THE COURT:  And when did Mr. Costanzo purchase the

7    amount of DMT?

8              MS. WEIDNER:  Your Honor, I believe that -- and I

9    believe that if we look at the timeline -- the government

10   initiated the IRS aspect of the investigation in March of 2015.

11             THE COURT:  But that wasn't my question.

12             MS. WEIDNER:  Yes.

13             But I believe that a purchase, based on the chronology

14   that the government provided, based in the -- in their report

15   of information of -- of Mr. Sperling's retox, that this

16   purchase would have happened eight to 10 months at least after

17   Mr. -- after -- after these Bitcoin exchanges began.  So it

18   would have been closer to the beginning of the DEA portion of

19   the investigation, and the closure of the IRS portion.

20             THE COURT:  All right.  So --

21             MS. ESCALANTE:  And, Your Honor -- I'm sorry, if I

22   may.

23             Just bringing the Court's attention to the entrapment

24   jury destruct -- instruction, it is stated in the footnotes

25   that evidence gained after government conduct with the

1    defendant can still be used to show that the defendant was

2    predisposed prior to the government conduct.  And the

3    government would also argue then any contact within this

4    regarding the Bitcoin exchanges and the DMT purchase and all

5    that stuff shall come in.

6            THE COURT:  It strikes me that the information offered

7    by the government is relevant to predisposition, and it is

8    relevant in such a way that it overcomes not only any 404(b)

9    hurdle, but any 403 hurdle.  And so I am going to allow the

10   government to admit the evidence.

11           I think that takes care of all the outstanding

12   motions, are there any motions -- other than motions to seal,

13   which are granted -- is there any outstanding motion?

14           MR. RESTAINO:  There was document 145, which sought --

15   it was a defense motion seeking to exclude or prevent any

16   reference to the Darknet or tour by Special Agent Ellsworth.  I

17   think your ruling covers that.  But then there was a supplement

18   to that that says -- that sought to prevent the government from

19   introducing any testimony regarding the Bank's Secrecy Act or

20   associated regulations.

21           THE COURT:  Well, I am not going to allow Agent

22   Ellsworth to testify about what the law means.  I will allow

23   him to testify what kind of crimes he investigates.  And --

24   does that provide any clarification?

25           MR. BINFORD:  I -- I kind of set it out in document

1    151, his anticipated testimony regarding the Bank Secrecy Act

2    is --

3              THE COURT:  I apparently didn't read 151.  I tried to

4    read everything, but I don't remember anything about his

5    anticipated testimony.  So why don't you just repeat it for me

6    here.

7              MR. BINFORD:  Okay, Your Honor.

8              So in there we set out that Mr. Costanzo was charged

9    here with two ways of money laundering:  One is concealing

10   money that he knows is drug money; and then the other way is

11   intentionally avoiding a transaction recording requirement when

12   he accepted that drug money.

13             To explain to the jury -- in order for the jury to

14   determine whether or not he intentionally engaged in a

15   transaction seeking to avoid a transaction reporting

16   requirement, they're going to have to know what those

17   transaction reporting requirements are.  And so we anticipated

18   having Special Agent Ellsworth testify that, you know, a --

19   what a currency transaction report is, what a suspicious

20   activity report is, what Know Your Customer requirements are,

21   and just explain those things.

22             THE COURT:  Well, why don't you just have him testify.

23   He can testify to all of that, but what he needs to testify to

24   is what the government's understanding of those requirements

25   are.  And then if I need to clarify it by explaining what the

UNITED STATES DISTRICT COURT

1    requirements are in jury instructions, I will do it.

2         MR. BINFORD:  Okay.  And he's certainly not going to

3    give any legal opinion or anything like that.

4         THE COURT:  All right.

5         Ms. Weidner?

6         MS. WEIDNER:  Your Honor, the concern that the defense

7    has in regard to Agent Ellsworth's testimony -- proposed

8    testimony on the Bank Secrecy Act -- is partially at least --

9    the government has noticed him as an expert.  And the

10   government has assured me that Agent Ellsworth will not testify

11   as to legal conclusions.

12        THE COURT:  I think I'm going to allow him to testify

13   as to legal conclusions, but how am I supposed to allow the

14   government to put on its case if I don't allow the government

15   to explain what it investigates, whether they're -- rightly or

16   wrongly?

17        MS. WEIDNER:  I think, Your Honor, that couching that

18   in what Agent Ellsworth does in his line of work as opposed

19   to -- and having -- well, and having the government provide any

20   further instruction to the jury by way of a jury instruction

21   that this Court would provide regarding the --

22        THE COURT:  Well, there is an instruction that you may

23   have seen, Ms. Weidner, which specifies how you deal with an

24   expert who is both a percipient fact witness and an expert

25   testifier.  If you want to suggest to the government

| 1 | bifurcating Agent Ellsworth's testimony into fact testimony and |
| 2 | expert testimony, and clearly delineating what is expert |
| 3 | testimony and what is fact testimony, I am not opposed to doing |
| 4 | that in order to avoid any prejudice that you might perceive. |
| 5 | MS. WEIDNER:  May I have just a moment, Your Honor? |
| 6 | THE COURT:  Sure. |
| 7 | (Pause in proceedings.) |
| 8 | MS. WEIDNER:  Your Honor, that sounds -- that sounds |
| 9 | as though it would be appropriate.  I can understand how |
| 10 | information about Bitcoin and Blockchain might be something |
| 11 | that is seen as expert, whereas the fact of a law is a fact of |
| 12 | a law.  We don't need an expert opinion on the law. |
| 13 | THE COURT:  Okay.  Well, it's actually not going to be |
| 14 | the fact of the law, it's going to be the fact of what the |
| 15 | government investigates as violations of the law.  And then if |
| 16 | the parties feel like they need me to instruct on what the |
| 17 | regulations require in the jury instructions, I'll do it.  That |
| 18 | way, you can make it clear. |
| 19 | Now, do we have any outstanding motions that need to |
| 20 | be ruled on? |
| 21 | MS. WEIDNER:  Your Honor, the government noticed a |
| 22 | desire to use as impeachment a 1985 felony conviction.  That |
| 23 | would be document -- |
| 24 | THE COURT:  Why don't we wait until Mr. Costanzo tries |
| 25 | to -- decides to testify or not testify, and then determine |

1    whether it's necessary for me to rule on that.

2            MS. WEIDNER:  Well, Your Honor, I think that the thing

3    that is a little discomforting in the government's notice is

4    that they wish to try to impeach him with this 1985 conviction,

5    should he exercise his right to testify at trial, which the

6    Court raised.  Also, if he presents character witnesses in his

7    defense, which -- understandable, and/or succeeds in producing

8    his own statements through another witness.  Given that this is

9    a case that is heavily going to rely on statements,

10   particularly Mr. Costanzo's statements, I'm concerned that that

11   is a bit broad, that third category.

12           THE COURT:  Well, because the 1985 conviction is quite

13   stale, I'm going to ask the government, if you feel like,

14   during the course of the testimony, you have a basis for

15   raising that, you raise it with me first at sidebar.  It is

16   quite stale.  You're going to have -- you're going to have a

17   burden to -- I'm not going to say at this point it is an

18   unreachable burden, so I'm not going to rule as a matter of

19   motion in limine depending on what the testimony might be.  But

20   a 1985 marijuana conviction, you're going to have a pretty

21   specific reason why I'm going to allow that in as impeachment.

22           Mr. Restaino?

23           MR. RESTAINO:  I don't want to necessarily make that

24   in evidence.  It's not a marijuana conviction.  It's assault

25   and flight from a law enforcement officer conviction.

1      THE COURT:  That's right.  But doesn't the evidentiary

2  rule require that it relate, to the extent you're talking about

3  character, to the character for honesty, for truthity or --

4  truth or falsity?

5      MR. RESTAINO:  Sure.  And I -- I will have an

6  argument, if we need to, why flight from law enforcement does

7  go towards that.  We can certainly push this off to another

8  day, Your Honor.

9      I will say, Ms. Weidner makes a fair point that we're

10  asking for this to be able to be used potentially by statements

11  that are introduced through other witnesses.  We never intended

12  that in this case to mean his statements that are going to be

13  played in the recording.  So I do think our intent is a bit

14  narrower than it was framed there.  But I understand the

15  Court's ruling, and we will -- we will approach the Court prior

16  to introducing anything on that.

17      THE COURT:  All right.

18      MS. WEIDNER:  And, Your Honor, the only other thing

19  I'd like to add to this is if for some reason any conviction

20  were to come in, we would ask that it be sanitized because it

21  is -- we're talking about something that's wildly dissimilar;

22  that if it were to come in, it would be referenced as a "felony

23  conviction" without any further facts.

24      THE COURT:  I think that depend a little bit.  Was

25  there a conviction for a MBT sale to Mr. Costanzo?

1          MS. WEIDNER:  No, Your Honor.

2          THE COURT:  All right.  So the only convictions we're

3    talking about are the fleeing from a police officer, the

4    assault; and there was a marijuana conviction, or am I just

5    confusing myself?

6          MR. RESTAINO:  There was.  It turns out to be a felony

7    under state law, but not under federal law.  But there was a

8    conviction that stands.

9          THE COURT:  Okay.  The emergency conviction, because

10   it's not a federal felony under federal law, you're

11   acknowledging you're not attempting to use that, as I recall.

12         MR. RESTAINO:  We're acknowledging without binding us

13   in the future on that particular argument.  But in this case,

14   we absolutely acknowledge we're not trying to use that.

15         THE COURT:  All right.  So what we're really talking

16   about is the fleeing from a police officer and the assault.

17         MR. RESTAINO:  Sure.  That's all that's left.  We

18   acknowledge it's stale, Judge.

19         THE COURT:  All right.  Anything else that the parties

20   want to address by way of pending motions?

21         The two motions to seal, I'm going to grant them both

22   because they don't seem to be contested.

23         Anything else that's outstanding as a pending motion

24   before we move to other matters that we need to handle?

25         MR. RESTAINO:  Nothing from my list, Judge.

1          MS. WEIDNER:  Your Honor, I did present to the

2    government just before this hearing based on some of the items

3    that they were saying they intended to try to present at trial,

4    some additional voir dire questions.  And I think that the

5    first question that --

6          THE COURT:  Well, Ms. Weidner, I don't intend to deal

7    with voir dire questions that haven't been submitted to me.

8          MS. WEIDNER:  Okay.

9          THE COURT:  So if you want to submit voir dire

10   questions to me, you better do it before noon today.

11         MS. WEIDNER:  Okay, Your Honor.

12         THE COURT:  And that includes the government too.

13         I will submit what I intend to ask from the questions

14   you've already submitted, and then if you feel like I've made a

15   mistake and you really, really, really have to have a question

16   submitted and dealt with, I'll hear you Tuesday morning.  Okay?

17         As it pertains to those who may wish to attend this

18   trial, and let me be clear that as members of the public, you

19   are fully entitled to be here and hear this trial.  But there

20   are rules that accompany the Court operations, and they may be

21   rules that you don't particularly agree with, and I understand

22   that.  I do not wish to make a rules so ungainly so as to

23   prevent your attendance.  But there are rules about recording

24   proceedings, there are rules about rather mundane things, and

25   the marshals do enforce those rules.

1    So I think that -- I understood that there was a

2    gentleman who wanted to be able to wear his hat today.  There

3    are generally Court rules against that.  It doesn't offend me

4    if you wear a hat, if you want to wear a hat, but if you do

5    that, we do -- the marshals may feel that it's indicated -- and

6    if they ask me to, I'm going to allow them to check just to

7    make sure that there aren't recording or other devices used in

8    clothing that is otherwise not permitted by Court rule.

9         My apologies for that.  I don't want to make it

10   impossible for you to be here or even inconvenient for you to

11   be here.  But we are going to ask you to abide by the rules,

12   and if we make exceptions to them, we may ask you to submit to

13   some other procedures.

14        Let's see.

15        Mr. Binford, have you tried a case in front of me

16   before?  I think you have.

17        MR. BINFORD:  I have not tried a case in this

18   courtroom, Your Honor.  And I have read your rules.

19        THE COURT:  What?

20        MR. BINFORD:  I have read your rules and procedures.

21        THE COURT:  All right.  I don't -- Ms. Escalante, have

22   you?

23        MS. ESCALANTE:  Your Honor, I had that bench trial

24   before you about --

25        THE COURT:  No jury trials?

1        MS. ESCALANTE:  -- two or three weeks ago.  No.

2        THE COURT:  I don't recall ever having you before me,

3    Mr. Restaino.

4        MR. RESTAINO:  No, Your Honor.  This is my first in

5    front of you as well.

6        THE COURT:  I know Ms. Weidner has tried a case.  I

7    believe Mr. Cain, you've tried a case, haven't you?

8        No?

9        MR. CAIN:  No, Judge.

10       THE COURT:  Well, then let's review for everybody how

11   we do this.

12       We have trial set for the 20th, the 21st, and the

13   22nd, the 27th, the 28th, the 29th, for April 3rd, 4th, and

14   5th.  Is the government going to need that long?  I don't want

15   to request jurors stay longer than they need to.

16       MR. RESTAINO:  Judge, it's -- I think we will be done

17   with our case in chief sometime on the fourth or fifth trial

18   day.  I'm just not sure how quite long it's going to take with

19   the audio and the challenges that sometimes come along with

20   that.  That -- that's the best guess that I've got.

21       THE COURT:  And then is the defense going to have a

22   lengthy defense case, Ms. Weidner?

23       MS. WEIDNER:  I do not believe so, Your Honor.

24       THE COURT:  So we're really not looking at nine trial

25   dates.

1    MR. RESTAINO:  No, Judge.  It could be as few as six.

2    That's the -- that's the rub.

3    THE COURT:  Ms. Weidner, if the government has six

4    days, how many days do you estimate that you're going to have?

5    MS. WEIDNER:  Your Honor, we would estimate being

6    one-and-a-half.

7    THE COURT:  All right.  So we're still looking at

8    bridging three weekends and going into April, to be on the safe

9    side; correct?  I'm looking at April 3rd or 4th.

10   MR. RESTAINO:  I think that's right, at least at the

11   outset, Your Honor.

12   THE COURT:  All right.  So generally I take an extra

13   alternate for every weekend we bridge.  So we're looking at

14   seating 14 or 15 jurors.

15   Do the parties have -- wish to be heard on how many

16   alternates they want?

17   MR. RESTAINO:  Judge, we've -- we've had some issues

18   in other cases recently with alternates.  I guess as a matter

19   of course I would ask for the 15.

20   THE COURT:  Any objection?

21   MS. WEIDNER:  No, Your Honor.

22   THE COURT:  All right.  So we will seat 15 jurors,

23   with three of them to be designated as alternates.

24   I do think that affects the number of peremptory

25   strikes by statute.  It goes up from, I think, seven and 11 is

| | |
|---|---|
| 1 | if you seat 15.  I think it goes up -- no, at 14.  I think it |
| 2 | goes up if you seat 15.  I'll check the statute.  I'll advise |
| 3 | the parties to check the statute.  But under 14, the seven -- |
| 4 | the government gets seven peremptories and the defense gets 11. |
| 5 | If it's 15, I think the peremptory number goes up for both. |
| 6 | Kathleen, we'll need to check that before we request |
| 7 | the number of jurors.  So if you'll let me check that after |
| 8 | this -- after this final pretrial conference. |
| 9 | Are we going to talk then 55 jurors to pick from; is |
| 10 | that going to be enough? |
| 11 | MR. RESTAINO:  Judge, a few more than normal perhaps. |
| 12 | It all depends on the voir dire questions you want to ask. |
| 13 | THE COURT:  Fifty-five is a few more than normal. |
| 14 | MR. RESTAINO:  Is 55 a few more? |
| 15 | THE COURT:  Yeah, we usually do 45. |
| 16 | MR. RESTAINO:  Okay.  I -- I would think that the 55 |
| 17 | is a good number then from the government's perspective. |
| 18 | MS. WEIDNER:  Your Honor, given the number of |
| 19 | peremptories, I would prefer a few more. |
| 20 | THE COURT:  Well, we may go up to 60, if there are |
| 21 | additional peremptories; okay? |
| 22 | MS. WEIDNER:  Thank you, Your Honor. |
| 23 | THE COURT:  Now, what we do is the first 16 are seated |
| 24 | in the jury box, and the remaining 34 will be seated behind you |
| 25 | in the audience section in numerical order. |

1          I ask, as I believe you know, all the voir dire

2     questions that are directed to the panel.  If you have

3     questions you want directed to the entire panel, you better get

4     them to me, if you don't already have them to me, because I do

5     not allow you, either of you, to ask questions of the entire

6     panel.  I will ask the questions, I will ask the follow-up

7     questions.

8          I will allow you to ask individual questions of

9     individual jurors that my questions reveal an interest in you

10    following up.  But I don't invite you to try to pre-try your

11    case.  And if you get into that, I will cut you off and not

12    allow you to do it.  And I ask you not to make me do that.  But

13    if you're going to make me do it, I will.  I will cut you off.

14    So do not try and pre-try your case in voir dire.

15          You are entitled, both of you, to a fair and impartial

16    juror -- jury, and I will allow questions that get to that, but

17    not -- not an attempt to pre-try or pre-argue your case.

18          Usually I can get through the questions -- maybe a

19    little longer in this case -- but usually I can get through

20    them by lunch.  I suspect we'll take a little longer than that

21    here, which complicates matters a little bit.

22          I do not excuse -- I do not excuse jury panel members

23    during voir dire, even if they answer a question in a way that

24    seems obvious they will be disqualified.  I don't do it until I

25    consult with you during a break.  And if you both agree that

1    jurors have indicated that they would be disqualified, I will

2    excuse them during breaks, but I don't otherwise excuse them.

3           Sometimes we are able to select jurors during the

4    lunch break.  We may or may not be able to do that here.

5           When we are in the process of selecting final jurors,

6    I excuse the jurors.  I then decide removals for cause or for

7    hardship.  I then leave you to your peremptory strikes and to

8    their exercise.  Those are exercised simultaneously and

9    secretly pursuant to local federal rule.

10           Any problem with that?

11           MR. RESTAINO:  No, Your Honor.

12           MS. WEIDNER:  No, Your Honor.

13           THE COURT:  All right.

14           Then after you have simultaneously and secretly

15    exercised your peremptory strikes, you get to see each other's

16    peremptory strikes and determine whether or not there will be

17    any Batson challenges.  If there are Batson challenges, I will

18    rule on them.  Then I will ask to you to pass the panel.

19           We will seat the first 15 jurors in numerical order,

20    and the remainder of the jurors will be dismissed.

21           It is my general habit, despite the rule that

22    specifies to the contrary, that we pick the alternates at the

23    end of the case.  I do that because I don't think it's helpful

24    to have three jurors know they are alternates at the start of

25    the case.  They tend not to pay as much attention, or at least

1      that has been my belief, and so we don't designate alternates

2      here until after they have heard closing instructions and

3      closing arguments?

4              Any objection to that?

5              MR. RESTAINO:  No objection, Your Honor.

6              MS. WEIDNER:  No objection from defense, Your Honor.

7              THE COURT:  I do not allow the jury to ask questions

8      during the trial.  They will only be able to hear the questions

9      that you ask of your counsel -- or of the witnesses.  But I do

10     allow them to take notes.  I do not allow them to discuss the

11     merits of the case until after they've heard all of the

12     evidence, both from the plaintiff and from the defense.

13             It is my general habit to instruct the jury, give the

14     jury the final jury instructions before your closing arguments,

15     and in that way if you wish to use my instructions in closing

16     arguments, you may do so.

17             I have already reviewed with you what I anticipate the

18     trial schedule will be.  It looks like we will go to the 3rd or

19     4th of April, even if trial doesn't run as long as you think,

20     which would be nice if we can keep it -- if we can officially

21     use the jury's time.

22             Are we going to invoke the rule, Ms. Weidner?

23             MS. WEIDNER:  Yes, Your Honor.

24             THE COURT:  All right.

25             So you'll pre-instruct your witnesses, Mr. Restaino?

1      MR. RESTAINO:  We will, Your Honor.

2      I had one pending question to the defense, to the

3  extent they were going to permit agents who might testify to

4  see the opening statements.  That's obviously up to them.

5  We'll discuss that with them.  If they were okay with it, is

6  the Court okay with that?

7      THE COURT:  Yeah.

8      MS. WEIDNER:  Your Honor, we have no problem with

9  that.

10      Also, I just wanted to let the Court know, we

11  discussed with the government yesterday that with respect to

12  invocation of the rule, that neither party will object to their

13  expert being present while the other party's expert is

14  testifying, at counsel table.

15      THE COURT:  You agree with that, Mr. Restaino?

16      MR. RESTAINO:  I do, Your Honor.

17      THE COURT:  So your expert is Agent Ellsworth; yours

18  is -- I've forgotten -- somebody --

19      MS. WEIDNER:  Todd Kandaris.

20      THE COURT:  All right.  Fine.

21      Does the defendant waive his presence at sidebar?

22           (Pause in proceedings.)

23      MS. WEIDNER:  Your Honor, he waives his presence at

24  the sidebar.

25      THE COURT:  All right.

1   Have we discussed and exhausted any possibility of

2   settlement in this case?

3   MR. RESTAINO:  We have, Your Honor.  I'd like to make

4   a Frye-Lafler colloquy at some point.

5   THE COURT:  Do you want to do it now?

6   MR. RESTAINO:  I will do so now, if that's okay.

7   THE COURT:  Any objection to having it done now,

8   Ms. Weidner?

9   MS. WEIDNER:  No, Your Honor.

10   THE COURT:  All right.  Go ahead, Mr. Restaino.

11   MR. RESTAINO:  Your Honor, on January 18th, 2018, the

12   government did convey a plea offer in letter form to defense

13   counsel, which would have been for a plea to Count 3, 4, 5, or

14   6 of the superseding indictment, not the higher amount in Count

15   7; would have involved a stipulation for guideline laundering

16   amount of more than 40,000 but less than $95,000.  It would

17   have involved a stipulation that the four-level enhancement for

18   being in the business of laundering funds does not apply.

19   There would have been two recommendation:  One, that the

20   two-level enhancement for sophisticated means does not apply

21   here; and the other, a recommendation to a sentence of the low

22   and mid point of the guideline range, and it would have called

23   for the forfeiture of the four items in the bill of particulars

24   that pertain to Mr. Costanzo.  It was rejected by the defense

25   on February 2nd, 2018.

1          THE COURT:  All right.  Thank you.

2          And no other offers are going to be extended?

3          MR. RESTAINO:  That is correct, Your Honor.

4          THE COURT:  All right.  So you heard that offer,

5     Mr. Costanzo?

6          THE DEFENDANT:  Yeah.  Yes, I did.

7          THE COURT:  And did you reject it?

8          THE DEFENDANT:  Absolutely.

9          THE COURT:  All right.

10          I have a handout on the Intranet of trial conduct and

11     decorum.  I would ask the parties to review that.

12          Do we anticipate any special problems with the

13     evidence in this case?

14          MR. RESTAINO:  I don't think so, Your Honor.  I can

15     tell you that we'll try and work with your courtroom deputy to

16     arrange some time to come in to -- to ensure that the audio

17     works and syncs up correctly.  That's our biggest challenge,

18     from a logistics perspective.

19          THE COURT:  Well, she will give you -- she has the

20     cards from Brian Lalley, the courtroom specialist.  Let me ask

21     you do exactly as you suggested.  Ms. Weidner, I'd suggest that

22     the defense team do the same.  You may want to do it at the

23     same time.  I hate having a jury here while you phumpher around

24     with equipment that you could have matched beforehand.  And

25     Mr. Lalley will be available.  There are some dates the

```
 1    remainder of this week that this courtroom will be open, and so
 2    that you can do that.
 3              MR. RESTAINO:  Judge, I do have one more issue on
 4    evidence, and this, again, may be a question for -- for
 5    Ms. Zoratti.
 6              We've got some gold and silver to be forfeited that at
 7    some point will get introduced.  I'm anticipating that our
 8    agent will maintain the custody of that evidence during the
 9    trial, but just wanted to see if there was anything you wanted
10    special on that.
11              THE COURT:  Yeah.  I don't necessarily want any gold
12    or silver hanging around in the courtroom.
13              MR. RESTAINO:  Okay.
14              THE COURT:  But you need to have all of your other
15    exhibits marked, and you need to have the gold and silver
16    marked with whatever it is you're going to introduce it, and
17    need to have them available for Ms. Zoratti.
18              By when do we need them, Kathleen?
19              COURTROOM DEPUTY:  Friday would be fantastic.
20              THE COURT:  Can you do it by Friday?
21              MR. RESTAINO:  We can.  Is there a specific time on
22    Friday?
23              COURTROOM DEPUTY:  Whenever is convenient.
24              MR. RESTAINO:  Friday close of business?  We'll make
25    sure we have them there, and we'll arrange the time.
```

1    COURTROOM DEPUTY:  We just need to make a time -- set

2  a time with me so I can be in the courtroom and meet you.

3    MR. RESTAINO:  We will do that.  Thank you.

4    And Judge, you will -- we'll get a binder for you, I

5  take it, of the exhibits.  We'll have audio files on CDs.  I

6  would take it the Court doesn't need separate copies for the

7  bench file --

8    THE COURT:  I do not.

9    MR. RESTAINO:  -- in CDs.

10    THE COURT:  I do not.  Are we going to have

11  transcripts on those files?

12    MR. RESTAINO:  So what we're going to have, Judge, is

13  synced-up audio that will be presented to the jury in Sanction.

14  The transcripts, of course, won't go back to the jury when they

15  deliberate.  They'll just have the audio that goes back --

16    THE COURT:  With a synced-up on transcript on some

17  sort of video presentation while they're listening, or just

18  audio synced-up to a non-transcripted video?  That's what I'm

19  asking.

20    MR. RESTAINO:  Okay.  For the presentation in the

21  courtroom, the -- the -- we will have a Sanction program that

22  syncs the audio four or five lines at a time to the transcript.

23    THE COURT:  Okay.  And that's acceptable to the

24  defense?

25    MS. WEIDNER:  Yes, Your Honor.

UNITED STATES DISTRICT COURT

1          THE COURT:  All right.

2          As it pertains to openings, are we both going to make

3     opening statements?

4          MS. WEIDNER:  Yes, Your Honor.

5          MS. ESCALANTE:  Yes, Your Honor.

6          THE COURT:  Are you going to be using any sort of a

7     PowerPoint representation in your openings, or otherwise

8     attempt to use evidence that you believe will be admitted

9     before the jury, but has not yet been admitted?

10          MS. ESCALANTE:  Your Honor, I am debating that right

11    now.  I am probably leaning towards using a brief PowerPoint.

12          THE COURT:  All right.  I do not allow PowerPoints to

13    be used that refer to or incorporate -- I guess "incorporate"

14    would be more correct -- exhibits, unless there is a

15    stipulation to admit those exhibits or the other side does not

16    object.  If you're going to just say what you believe the

17    evidence will show, that may be a different story.  But if

18    you're going to actually have a copy of the exhibit in

19    PowerPoint and whatever else, you need to have a stipulation

20    from the other side.

21          MS. ESCALANTE:  Okay, Your Honor.

22          THE COURT:  Are you going to be doing the opening,

23    Mr. Cain?

24          MS. WEIDNER:  Yes, Judge.

25          THE COURT:  So you understand what I'm saying?

1          MS. WEIDNER:  Yes, Your Honor.

2          THE COURT:  All right.  Do you intend to do a

3  PowerPoint?

4          MR. CAIN:  No.

5          THE COURT:  All right.  Anything else we need to

6  discuss?

7          MR. CAIN:  No.

8          MR. RESTAINO:  I had a couple of issues, Judge.

9          There are four items that to be forfeited at the end

10  of the case.  We've spoken with the defense and understand that

11  the defendant would prefer to have the jury make the nexus

12  determination.  And so we will have our -- ask one of our asset

13  forfeiture lawyers prepare the standard instructions for use in

14  the event of a guilty verdict.

15          THE COURT:  All right.  Then you will need to give

16  that to me.

17          Do we -- let's see.  Shall we wait until we get a jury

18  verdict and determine whether or not we need to submit special

19  interrogatories or do argument on that point separately?

20          MR. RESTAINO:  I can tell you, Judge, we think we'll

21  be able to just do argument.  I don't think we're going to need

22  to introduce any additional evidence because I think evidence

23  will be admissible in -- in both phases.

24          THE COURT:  All right.  So you just do a separate

25  argument on the forfeiture after, if there is a guilty verdict

1    rendered.

2         MR. RESTAINO:  That's correct.  Would be our proposal.

3         THE COURT:  How does that strike you, Ms. Weidner?

4         MS. WEIDNER:  We agree with that, Your Honor.

5         THE COURT:  All right.

6         MR. RESTAINO:  Judge, sidebars with multiple lawyers,

7    there's three on our side and two on the defense.  Are you

8    comfortable with all the lawyers, or do you prefer if just the

9    lawyer with the witness --

10        THE COURT:  Well, I don't mind if all the lawyers want

11   to come.  But there are two things that pertain to sidebars

12   that can be very aggravating:  Number one, there is a

13   microphone at sidebar.  It is a flat surface microphone, but it

14   isn't terrific.  And it can't identify you.  Nor will

15   Ms. Powers be able to identify you necessarily because she will

16   be over where she can't see who is speaking.

17        So if you come to sidebar, first off, approach the

18   microphone if you're going to be the one who is going to be

19   doing the speaking, and who that will be will be if, for

20   example, you're taking direct, Ms. Weidner offers an objection,

21   then you, Mr. Restaino, will be speaking at sidebar and you,

22   Ms. Weidner, will be speaking.  While I don't have any problem

23   if the other attorneys come, I'm not going to allow everybody

24   to speak.  It's not a free-for-all.  You need to identify

25   yourself before you begin speaking, and you need to -- both of

1    you will need to approach the microphone.  You'll see.  I'll be

2    sitting right on top of it.  But I will try and push it your

3    way and remind you to identify yourself.  And to be clear,

4    although not loud, in making your -- whatever statement you

5    make there.  White noise comes on in the courtroom, as you'll

6    recall, Mr. Restaino, and that's precisely so the jury can't

7    necessarily hear everything we say.

8              MR. RESTAINO:  Great.

9              And then just one more question, Judge.  I may have

10   missed this in the Court's standing order, but I was trying to

11   get a sense of the court day that the Court uses for the

12   witness.

13             THE COURT:  Well, normally -- this is a Phoenix jury

14   panel?  Sometimes when we have a Phoenix jury panel, if the

15   jury can show up at 8:30 and wants to, I allow them to.  But a

16   normal court day begins at nine o'clock, not 8:30; goes to noon

17   with one break in the morning.  Usually sometime between 10:15

18   and 10:30.  I try to have you be aware of that.  And if it's

19   between 10:15 and 10:30, and you can tell me at a good place to

20   take a break, I appreciate that; otherwise, I will ask you.

21             The afternoon goes from noon to 1:00 for a lunch

22   break, sometimes we take 1:15, and we might do that with a

23   15-person jury.  We then -- but if we're going to need time, we

24   go from noon to 1:00, and then, again, one 15-minute break in

25   the afternoon, and then I usually run right up until 5:00.

1          MR. RESTAINO:  Great.  Thank you, Judge.

2          THE COURT:  Anything from the defense?

3          MS. WEIDNER:  No, Your Honor.

4          THE COURT:  All right.  I will see you then Tuesday

5     morning.

6          Thank you.

7          MR. RESTAINO:  Thank you, Your Honor.

8             (Proceedings in recess at 10:47 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1
2

C E R T I F I C A T E

3          I, CHARLOTTE A. POWERS, do hereby certify that I am

4     duly appointed and qualified to act as Official Court Reporter

5     for the United States District Court for the District of

6     Arizona.

7          I FURTHER CERTIFY that the foregoing pages constitute

8     a full, true, and accurate transcript of all of that portion of

9     the proceedings contained herein, had in the above-entitled

10    cause on the date specified therein, and that said transcript

11    was prepared under my direction and control.

12          DATED at Phoenix, Arizona, this 19th day of March,

13    2018.

14

15                              s/Charlotte A. Powers
                             Charlotte A. Powers, RMR, FCRR
16

17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT