ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
MATTHEW BINFORD
Arizona State Bar No. 029019
Matthew.Binford@usdoj.gov
CAROLINA ESCALANTE
Arizona State Bar No. 026233
Fernanda.Escalante.Konti@usdoj.gov
GARY M. RESTAINO
Arizona State Bar No. 017450
Gary.Restaino@usdoj.gov
Assistant U.S. Attorneys
40 N. Central Ave., Suite 1800
Phoenix, Arizona  85004
Telephone:  602-514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America,<br><br>            Plaintiff,<br><br>    v.<br><br>Thomas Mario Costanzo,<br><br>            Defendant. | CR-17-00585-PHX-GMS<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR JUDICIAL NOTICE (DKT. # 172)** |
|---|---|

In a clever filing that seeks relief of an inter-galactic breadth, the defense suggests that the Court should take judicial notice of two Inspector General reports critical of the national asset seizure protocols and practices of the Internal Revenue Service and the Drug Enforcement Administration.  It should not.  Nor should it permit any reference by the defense to those reports, and the government will contemporaneously file a motion in limine to preclude any such questioning of witnesses about the two Reports.

A.      The Factual Background

The defense predicates its request rather vaguely, in describing testimony of SA Klepper and TFO Martin that "arbitrary seizures of money and property by the government do not occur." (Mot. at 4 ¶ 15.)  Counsel for the parties have discussed the predication further over the weekend in an effort to crystalize the issues for the Court, and it appears

that two questions and responses are at issue:

- First, during the presentation of Ex. 103D (where defendant's voice complains on the audio recording that when the government wants your money it goes in your bank account and takes it) the government asked Agent Klepper if an agent could just go in a bank account and take money, and Agent Klepper responded that it would require a warrant signed by a judge.
- Second, at some point during the ongoing testimony by TFO Chad Martin, Martin averred that the government does not seize cash without probable cause.

B.  <u>The Mainstream Remedy</u>

It's not at all clear what the defense finds objectionable about those questions and responses. They are not at all inaccurate. And in any event, to the extent the defense seeks to impugn a response in our system of Anglo-American jurisprudence, the primary remedy is called cross-examination.

The defense still has its full opportunity available as to TFO Martin. Its opportunity has passed with respect to Agent Klepper, although the government observes that the defense engaged in a strategically short cross-examination of Agent Klepper that required no redirect. Such is the defense's right, and that can often be an appropriate legal strategy when some but not all issues in the case are in dispute. But the defense cannot engage in a strategically short cross-examination and then seek a second bite at the examination apple.

C.  <u>The Inter-Galactic Remedy</u>

In lieu of the standard remedy, the defense proposes to introduce two Inspector General reports criticizing, on a national level, the manner in which DEA and IRS seized certain assets. That would be rather far afield of the matters in front of the jury (and rather inconsistent with the reasonable and careful approach the Court has taken thus far to avoid introduction of extraneous matters) for the following reasons:

- There is a hearsay problem here. Not only is it doubtful that an Inspector General

report really is a statement of the government, but there are also layers of hearsay within any report or memorandum. *E.g.*, *United States v. Santisteban*, 501 F.3d 873, 878 (8th Cir. 2007) (sustaining an objection to defendant's introduction of the prosecution memorandum in trial). Nor does the desperate reach for the residual exception offer much hope here: a proponent must satisfy all four prongs, and prong three (more probative than any other evidence) and prong four (best interests of justice) seem out of reach.

- Moreover, an Inspector General report is almost always, at least in part, an opinion that the government failed to adhere to a policy or practice. But a violation of a policy is not generally admissible. *E.g.*, *United States v. Caceres*, 440 U.S. 741, 755 (1979) (holding that a defendant cannot enforce Departmental policies).

- There is a large F.R.E. 403 problem here, with an opportunity for confusion of the issues and the possibility it will mislead the jury. Given the constraints under which the government is operating in this case, it would also be prejudicial to reference the reports. We already have a circumstance where the jury does not fully understand the rationale behind an investigation of high rollers on localbitcoins.com given the Dark Net rulings. Nor does the jury understand that prior to commencing the first undercover meet, IRS-CI had identified defendant's adverse interactions with law enforcement. (*See generally* Trial Ex. 133 at 2.) Other constitutional rights of course preclude the introduction of the criminal history predication prior to the first undercover approach; but those limitations are relevant in the prejudice analysis and Rule 403 balancing.

- There is an analytical problem with the use of national reports here in Arizona. The IG Report on the DEA (dkt. # 172-3) focused on several field offices outside of Arizona (*see* Methodology at page 41) and also focused on federal "adoption" of state seizures, which, as the Report describes, really wasn't an issue in

jurisdictions (like Arizona) that already had robust asset forfeiture laws. The TIGTA Report on IRS (dkt. # 172-4) focused on several more active jurisdictions on seizures for structuring (*see* Figure 8 at 30) and did not even break out Arizona in several of the detail charts, lumping the Phoenix Field Office instead with three other offices. (*See* Figures 1-2 at 46-47.) Moreover, the Report focuses as well on several unidentified U.S. Attorney's Offices that "promoted the use of 'quick hit' seizure[s] . . . ." (*See* page 9.) Absent some further proof that this District engaged in quick hit seizure policies – we didn't – the TIGTA Report is even more tangential to an Arizona trial.

- There is a final, unintended consequence here to the defense efforts to introduce irrelevant and prejudicial evidence, to wit: it may well have the effect of inflaming the already-heightened passions of Mr. Costanzo's ardent supporters. This is a case in which two of his proponents wore "Google Jury Nullification" shirts in the courtroom, and where other "loud-talker" supporters commented on the evidence near the presence of jurors. Mr. Costanzo's supporters have a First Amendment platform to express their views on the case (subject to the limitations imposed by 18 U.S.C. § 1503) but when the defense dumps extraneous information into the record we risk additional adverse juror contact by angry supporters of the defendant. Consistent with the defense's collaborative efforts to date to ensure an objective jury determination of the facts at issue, less dissemination into the public record of irrelevant information going forward would be ideal.

D. <u>Conclusion</u>

For the foregoing reasons, the government opposes the request for judicial notice. The government will separately file a narrow motion in limine to preclude references to the Reports at issue.

Respectfully submitted this 26th day of March, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*s/ Gary Restaino*
MATTHEW BINFORD
CAROLINA ESCALANTE
GARY M. RESTAINO
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of March 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

*s/Cristina Abramo*
U.S. Attorney's Office