ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

MATTHEW BINFORD
Arizona State Bar No. 029019
Matthew.Binford@usdoj.gov
CAROLINA ESCALANTE
Arizona State Bar No. 026233
Fernanda.Escalante.Konti@usdoj.gov
GARY M. RESTAINO
Arizona State Bar No. 017450
Gary.Restaino@usdoj.gov
Assistant U.S. Attorneys
40 N. Central Ave., Suite 1800
Phoenix, Arizona  85004
Telephone:  602-514-7500

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-17-00585-PHX-GMS |
|---|---|
| Plaintiff, | **UNITED STATES' MEMORANDUM RE: SUFFICIENCY AS TO THE AVOIDANCE PRONG** |
| v. | |
| Thomas Mario Costanzo, | |
| Defendant. | |

The Court denied the Rule 29 motion this afternoon as to the concealment prong of the money laundering sting provision.  The government submits this memorandum in regard to the sufficiency of the evidence as to defendant's intent to avoid a transaction reporting requirement, as a second, disjunctive way to establish a violation of the money laundering sting.

A.    <u>The Nature of the Charge</u>

As supplemented by the Response to the Motion for a Bill of Particulars (dkt. # 117), the government's theory of this case is and has been that defendant intended to avoid a transaction reporting requirement "that any financial institution abiding by "know your customer" guidelines would have been obligated to undertake." *Id.* at 1.  The proof articulated in the Response included "defendant's efforts to use his bitcoin transmittal

platform to avoid reporting requirements" and further identified specific instances in which bitcoin exchanges kept transactions under wraps to avoid banks and bank reporting requirements. *Id.* at 2-11. This is consistent with the statutory language, to wit: the intent to avoid "a" transaction reporting requirement, not "the defendant's own" requirement.[1]

Whether this ongoing theory is viable is of course for the Court to decide. As a threshold matter, this is not an aiding and abetting theory; defendant is charged directly with engaging in a financial transaction with what he thought was dirty drug money, while intending to avoid reporting requirements. His intent is at issue, not his obligations. That defendant tried to guide the agents, or educate them, about the secrecy benefits of bitcoin does not convert this theory into aiding and abetting liability.

There simply are no cases yet involving peer-to-peer virtual currency exchanges on the reporting requirement prong of the sting provision. *United States v. Nelson*, 66 F.3d 1036, 1041 (9th Cir. 1995) gets us part of the way there. The court in *Nelson*, before reversing on other grounds, construed the avoidance prong broadly, by holding that the intent to avoid a reporting requirement may be established not just by taking in more than $10,000 and not reporting it, but also by breaking it up into smaller transactions.

Two out-of-circuit cases under 18 U.S.C. § 1956(a) support criminal liability for avoiding reporting requirements even when the defendant himself does not have such a requirement. *E.g., United States v. Bowman*, 235 F.3d 1113, 1117-18 (8th Cir. 2000) (holding, in a case under 18 U.S.C. § 1956(a)(1)(B)(ii), that a defendant intended to avoid bank reporting requirements when exchanging cashier's checks for vehicles). Ultimately the Court in *Bowman* held that the defendant lacked the knowledge of the requirements (which is not an issue here) but its analysis is informative:

---

[1] The *in limine* response on the Dark Net contains similar representations. (Dkt. # 139). "That means, in order to find Costanzo guilty at trial, the jury does not have to find a violation of a specific regulation – it simply has to find that Costanzo attempted to work around those regulatory concepts." *Id.* at 2.

- 2 -

> Mr. Bowman's argument in regard to these two counts is not altogether clear to us, but apparently consists of the assertion that it was either the seller of the vehicle, the bank that drew the cashier's checks, or possibly the friend, who had the obligation under federal law to report any relevant financial transactions—presumably, in this case, the exchange of $23,500 for the vehicle and the execution of the cashier's checks in amounts of $6,000 or less. This argument misses the point by a long shot. What the money laundering statute prohibits is not the failure to report a certain type of transaction, see, e.g., 26 U.S.C. § 6050I(a), 31 U.S.C. § 5311, § 5313(a), but the purposeful structuring of such a transaction so as to make it appear that no reporting requirement is applicable.

*Id.* at 1118.

*United States v. Florez*, 516 Fed. Appx. 777, 785 (11th Cir. 2013) also supports the government's position. In that sting case, undercover agents provided cash represented to be from drug proceeds to the defendant for a vehicle purchase. "Thus, whether or not EZ Pay Auto had to file a CTR was largely irrelevant. The evidence demonstrating Gabriel intended to structure the deposits of the drug proceeds in both transactions is sufficient to show he intended to avoid a transaction reporting requirement." *Id.* at 785. The focus here is on defendant's intent (while conducting a financial transaction with putative drug money) rather than on his own obligations.

Finally, even were the Court to preclude the government from arguing the second prong, all of the evidence of avoidance is directly relevant to the remaining concealing prong. *E.g., Florez,* 516 Fed. Appx. at 785 (evidence of concealment includes unusual secrecy surrounding the transaction; structuring the transaction to avoid attention; highly irregular features of the transaction); *United States v. Delgado*, 653 F.3d 729, 737-38 (8th Cir. 2011) (considering structured transactions as evidence of concealment); *United States v. Hosseini*, 679 F.3d 544, 559 (7th Cir. 2012) (including evidence of transaction reporting failures to establish concealment).

B.   The Specific Evidence Per Count

As the Court intuited but the government did not, not all of the charged counts contain directly predicating evidence of specific intent to avoid the reporting requirements. To the extent the Court deems that necessary, instead of taking into account the prior

communications as evidence of the specific intent on each count,[2] the government concedes on Counts 1 and 5.

As to Count 2, the government references Ex. 103F and 103J:

Ex. 103F

THOMAS COSTANZO: Well there's a way.

UCA TOM: And there's - and keep this in

mind. Like right now I can - I still do

traditional banking and that kind of thing.

THOMAS COSTANZO: Right.

UCA TOM: And I - I haven't moved away

from that so what - what needs to be on my

radar screen about...

THOMAS COSTANZO: As far as losing value?

UCA TOM: No.

THOMAS COSTANZO: Or...

UCA TOM: Either it getting stolen or -

and, or being discovered what - what we're

really - what I'm doing with it,

essentially.

THOMAS COSTANZO: Well, you know, I mean,

dealin' with me is one way.

UCA TOM: Yeah?

---

[2] Or at least the prior communications involving drug talk.  In other words, it would certainly seem reasonable that Count 2 bolsters Count 3 in the combined Klepper-Kushner transactions.  And that Count 4 bolsters Count 5 in the Martin transactions.  But this still would not save Count 1 if the initial, uncharged communications cannot be used to show specific intent.

1 THOMAS COSTANZO: 'Cause I don't say
2 anything to anybody.
3 Ex. 103J
4 THOMAS COSTANZO: And see, you know, like,
5 for - for people with medical marijuana
6 it's - it's a f***** great thing because
7 if you have a medical marijuana you can't
8 use the bank.
9 UCA TOM: Yeah, that's true - that's
10 true.
11 THOMAS COSTANZO: they don't want your
12 money.
13
14     As to Count 3, the government references 104F, which is placed in context by the
15 state reporting requirement identified in 104D:
16 Ex. 104F
17 UCA SERGEI: The virtual currency they give
18 you to test with.
19 THOMAS COSTANZO: Yeah.
20 UCA SERGEI: The bitcoin - so, they take
21 bitcoin… any currency? Or Bitcoins or…
22 THOMAS COSTANZO: Well, they take other
23 currency but the thing is, I recommend is
24 people, uh, do it with bitcoin. Then
25 there's no tracking or anything.
26
27
28

1. <u>Ex. 104D</u>
2. THOMAS COSTANZO: I'll let you know what I
3. can do and then I'll.
4. UCA SERGEI: You know, it's… did you see
5. that thing in New York you can't even uh.
6. THOMAS COSTANZO: I know, it's crazy.
7. UCA SERGEI: It's crazy, man. You need some
8. kind of a license now in New York to do…,
9. you know to sell bitcoins.
10. THOMAS COSTANZO: Yeah, f*** those f***ing
11. people. C******* mother***ers.
12. 
13.     As to Count 4, the government references the casino conversation in Ex. 107C:
14. TFO MARTIN: They just don't like you
15. leaving with money.
16. THOMAS COSTANZO: They don't want you --
17. giving you the money.
18. TFO MARTIN: Yeah.
19. THOMAS COSTANZO: So then it becomes this --
20. it becomes this federal case, you know.
21. Well, we got to know -- you know, we got to
22. get your ID. Oh, your ID is expired. We
23. need your social. Sorry, I don't know it.
24. And then he goes, well -- you know, they
25. call the manager. . . .
26. 
27. 
28.

Respectfully submitted this 27th day of March, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*s/ Gary Restaino*
MATTHEW BINFORD
CAROLINA ESCALANTE
GARY M. RESTAINO
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and generation of a Notice of Electronic Filing to all counsel of record.