ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

MATTHEW BINFORD
Arizona State Bar No. 029019
Matthew.Binford@usdoj.gov
CAROLINA ESCALANTE
Arizona State Bar No. 026233
Fernanda.Escalante.Konti@usdoj.gov
GARY M. RESTAINO
Arizona State Bar No. 017450
Gary.Restaino@usdoj.gov
Assistant U.S. Attorneys
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, <br><br> Plaintiff, <br><br> v. <br><br> Thomas Mario Costanzo, <br><br> Defendant. | CR-17-00585-PHX-GMS <br><br> **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR MISCELLANEOUS RELIEF [Doc. 205]** |

In a procedural challenge to the "neutrality" of the offense conduct in the PSR following a guilty verdict in this matter, defendant cites to numerous cases, some of which are from this Circuit and none of which support his proposition. The government provided appropriate assistance to the Probation Officer, and the Probation Officer complied with his obligations in drafting the offense conduct.

A.  Procedural Background

On March 28, 2018, a jury convicted defendant on all five remaining counts of the Superseding Indictment, and the Court ordered the probation department to prepare a presentence investigation report. (Doc. 180.) On April 9, 2018, the Probation Officer

emailed the government asking for assistance, to include "a prosecution memo, or a summary of the conduct in this case[.]" On April 18, 2018, the government provided via email a proposed offense conduct for use by the Probation Officer, with citation to a number of supporting trial exhibits in addition to the two demonstrative videos. (Doc. 207-A.) The government's email further asked the Probation Officer to contact the prosecution if he had questions or wanted more information in order to complete the PSR. (Ex. 1.) Following an interview with the defendant and defense counsel (but not the prosecution) in which defendant admitted to "gross errors" (PSR ¶ 30), on May 3, 2018 the Probation Officer incorporated the government's proposed offense conduct into the draft PSR, and separately calculated a loss amount for the case. (PSR ¶ 26).[1]  Defense counsel subsequently sent a series of emails to the government and the Probation Officer, which was the start of a dialogue that included the government's response letter (doc. 207-B) and which ultimately culminated in the instant motion.

B.   The Discovery Package for Probation Generally

The government writes separately to illustrate the range of typical communications with a probation officer following a guilty plea or guilty verdict. Following the assignment of a presentence writer, the officer or assistant reaches out to the government for the "discovery" in the matter. In a reactive illegal reentry case, the government may well turn over the entirety of the discovery. In a more complex case, or one with voluminous discovery, the government usually filters the material to produce that which would be most helpful to the probation officer. The probation officer may also call the government for more information, or speak to a case agent or victim.[2] There may be electronic mail

---

[1] To be clear, to the extent the Court finds any errors in the offense conduct, the government is responsible for those errors rather than the Probation Officer.

[2] Reliance on conversations with the case agent or a victim to the exclusion of a colloquy with the prosecutor would seem to create more potential for objections, given that most case agents and victims are not attorneys and therefore might offer factual allegations

communications back and forth between the government and the probation officer. And if the probation officer asks for information or assistance on the offense conduct, the government provides it.[3]

C.  Argument

Defendant's argument, taken to its extreme, would preclude all communications by and between the Probation Officer and one party to the exclusion of the other. That cannot be right. The preparation of offense conduct by the prosecution for consideration by the Probation Officer does not convert the Probation Officer into an agent of the government.

1. The Government Appropriately Prepared Draft Offense Conduct With Supporting Trial Exhibits.

Defendant's cited cases stand for the general proposition that a defendant has neither Fifth Amendment nor Sixth Amendment rights during the interview with the probation officer. *E.g., United States v. Leonti*, 326 F.3d 1111, 1119 (9th Cir. 2003) (reversing on *Strickland* grounds for ineffectiveness during a proffer, and contrasting the lack of *Strickland* rights during the interview by a neutral information-gatherer). And even where the cases discuss neutrality, they generally do so in the context of defendant's "background and his prospects for rehabilitation" rather than the offense conduct. *United States v. Reese*, 775 F.2d 1066, 1076-77 (9th Cir. 1985) (as to the submission of 10-15 pounds of ex parte

---

that are not relevant to the disposition. For the same reasons, overreliance on a search warrant affidavit (or a speaking indictment) can also result in an unbalanced report, given that some of the probable-cause based evidence that supports a warrant may ultimately not support the conviction. (Nor did the government provide the warrant affidavit here.)

[3] The government also presumes that the defense may appropriately assist in the preparation of the PSR's "offender characteristics" section, whether through the interview process or by other means. Nothing in Rule 32 precludes this defense assistance, nor does anything in Rule 32 preclude the prosecution's provision of the summary offense conduct. To be sure, the Court could set parameters to guide the parties through a standing order in its own cases, just as the District Court as a whole could issue a General Order or a Local Rule establishing a procedural mechanism for the parties to communicate with Probation and for Probation to carry out its investigation. But barring any prejudice to any party, that seems like a solution in search of a problem.

evidence to the Court). Neither case law nor anything in Rule 32 prescribes specific, rigid methods by which the Probation Officer must conduct the investigation, nor proscribes seeking a summary of offense conduct from the prosecution.

Some guidance does exist, through an appendix to a Guidelines-era case out of the District of Oregon. *See United States v. Belgard*, 694 F. Supp. 1488, at App. C (D. Ore. 1988) (rejecting a constitutional challenge to the Guidelines). The district judge who authored the opinion and opined on the constitutional validity of the Guidelines included the Appendix to describe the pre- and post-Guidelines roles of the Probation Officer, as prescribed in a publication by the Administrative Office of the Courts ("AOC"). *Id.* at 1495-96. Appendix C describes the Guidelines-era role, to include the "independence" of the Probation Officer as an agent of the court, which includes restricting the ability of the parties to stipulate to the elimination of information. *Id.* at 1508. And it explicitly authorizes seeking information directly from the government. "Most of the essential offense data may be found in the U.S. attorney's file, including the nature of the charge, details of the offense, statements of arresting officers, statements of codefendants, complainants, witnesses, and victims, and a summary of the defendant's arrest record." *Id.* at 1509. Nothing precludes soliciting a statement of offense conduct from the prosecution.[4] The Probation Officer's actions and investigation here are consistent with AOC guidance.

---

[4] The earlier version, reproduced in Appendix B, did discuss the solicitation of a statement: "Information for the prosecution version of the offense may be obtained primarily from the office of the U.S. attorney. *It is the probation officer's responsibility to prepare all sections of the presentence report.* Lengthy statements submitted by the prosecutor or any other individual can be edited by the probation officer, but consultation with the party may be necessary to assure that the edited information is factual and accurate." *Id.* at 1504 (emphasis in original). In any event, here the Probation Officer did prepare the report after the interview of the defendant and after tallying the loss amount.

2. <u>The Defendant Is Not Prejudiced By the Preparation of Draft Offense Conduct</u>.

In a vague and unsupported supplemental Separation of Powers argument (doc. 205 at 6:5-14), Defendant claims prejudice. But this ignores his remedy, to wit: filing *factual* objections to the PSR, to the extent he has any. *E.g., United States v. Stoterau*, 524 F.3d 988, 1012 (9th Cir. 2008). In *Stoterau*, the Court interpreted Rule 32 to only require a ruling on a disputed portion of the PSR that is factual in nature:

> In his sentencing position memorandum, Stoterau challenged several paragraphs of his PSR on the ground that the information gathered from police reports contained multiple levels of unreliable hearsay. Stoterau did not deny that the police reports contained the information alleged in the PSR or that the information was factually inaccurate. Instead, he argued that law enforcement reports are not generally a reliable source of accurate information. This challenge is not a specific factual dispute about issues affecting the temporal term of sentence but rather a general evidentiary legal challenge to the inclusion of information in the PSR drawn from sources other than the plea agreement.

*Id.* The district court "was not obliged by Rule 32 of the Federal Rules of Criminal Procedure to rule on Stoterau's evidentiary challenge to the information contained in his PSR." *Id.* at 1014. To the extent defendant Costanzo believes anything in the offense conduct is inaccurate here, he should file a factual objection.

Instead of filing an objection to the facts, defendant claims that certain facts should not be included in the PSR. For example, defendant – without articulating any reason why -- opposes the relevance of including predisposition evidence in the offense conduct. (Doc. 205 at 2:19-20.) And he argues that certain apparently-undisputed facts "suggest" that engaging in peer-to-peer trading[5] or using technology such as Telegram[6] is criminal

---

[5] See, e.g., PSR ¶ 7. "Peer-to-peer exchangers typically do not collect customer identification information, require in-person cash transactions and charge between 5 and 15 percent transaction fees. Testimony at trial indicated peer-to-peer bitcoin transactions have characteristics that make them appealing to drug traffickers . . ." Nothing in paragraph 7 states or suggests that peer-to-peer transactions are always unlawful.

[6] See, e.g., PSR ¶ 13. "Costanzo responded by telling UCA2 to use Telegram, an encrypted messaging application. UCA2 and Costanzo then used Telegram to coordinate

conduct. (Doc. 205 at 2:14-16.) Defendant's unsupported efforts to read in animus and bias to the proposed offense conduct do not create prejudice to him.

Yet there would be prejudice were the offense conduct white-washed or left incomplete just because defendant disagrees with the jury's verdict. A PSR has important supervision functions beyond the imposition of the sentence. In the event defendant violates the terms of supervision following his release from custody, the revocation package will include the PSR, which provides the Court and the parties and the Probation Officer a reminder of the offense conduct and the nature of the case. *See* 18 U.S.C. §§ 3553(a)(1) and 3583(e). A terse reference to the money laundering sting statutes without the underlying facts would make the revocation assessment more difficult.

D.  Conclusion

For the foregoing reasons the government opposes the requested relief, and will address in a subsequent response the actual and factual objections to the PSR offered by the defendant in docket numbers 208, 211 and 213.

Respectfully submitted this 9th day of July, 2018.

>ELIZABETH A. STRANGE
>First Assistant U.S. Attorney
>District of Arizona
>
>*s/ Gary Restaino*
>MATTHEW BINFORD
>CAROLINA ESCALANTE
>GARY M. RESTAINO
>Assistant U.S. Attorneys

---

. . ." Nothing in paragraph 13 states or suggests that Telegram is illegal.

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 9th day of July 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Maria Teresa Weidner
Zachary Cain,
*Attorney for Defendant*


 *s/Cristina Abramo*
U.S. Attorney's Office