ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

MATTHEW BINFORD
Arizona State Bar No. 029019
Matthew.Binford@usdoj.gov
CAROLINA ESCALANTE
Arizona State Bar No. 026233
Fernanda.Escalante.Konti@usdoj.gov
GARY M. RESTAINO
Arizona State Bar No. 017450
Gary.Restaino@usdoj.gov
Assistant U.S. Attorneys
40 N. Central Ave., Suite 1800
Phoenix, Arizona  85004
Telephone:  602-514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-17-00585-PHX-GMS |
| Plaintiff, | **SENTENCING MEMORANDUM** |
| v. | |
| Thomas Mario Costanzo, | |
| Defendant. | |

The United States respectfully asks the Court to impose a sentence of 97 months in prison.  For more than 30 years, Thomas Mario Costanzo—a recidivist offender with some violent incidents in his past—has committed state and federal crimes, and has failed to adjust his behavior.  In this case, he laundered a substantial amount of money for people that he believed were international heroin and cocaine drug traffickers.  For the reasons set forth below, a sentence of 97 months in prison is reasonable and appropriate under Title 18, United States Code, Section 3553(a).

**I.     OFFENSE CONDUCT**

Over the course of approximately two years, Costanzo, also known as "Morpheus Titania," laundered money by converting drug proceeds into bitcoin, in order to conceal or disguise the nature, location, source, ownership, or control of the drug money.  Costanzo operated his bitcoin business in a manner that provided privacy and secrecy for his clients.  Costanzo's interactions with undercover law enforcement agents provide a snapshot into the means by which he conducted his business.

To be clear—Bitcoin is completely legal to own or purchase, but it is hard to trace.  Bitcoin has legitimate uses, but it also has features that make it attractive to money launderers and drug dealers.  Costanzo knew that and that was why he charged a 10 percent fee.  That was why he charged a fee that was five times higher than the commercial exchanges.  He knew that bitcoin transaction records on the blockchain did not include names, addresses, birth dates, or social security numbers.  That is why he assured the undercover agents that Bitcoin was perfect for what they were doing.  It was the perfect way to conceal and disguise the drug proceeds.

During those five charged transactions, and others, Costanzo bragged about the amount of money he made while engaging in this type of activity.  He bragged that he had built a multi-million dollar business.  He also bragged about his rules—don't get shot, don't get bit, and don't talk to the police.  He repeatedly cursed about the United States Government, and authority in general.  He made it clear that he has no respect for laws, regulations, or any authority.  When he promised not to say anything about the dirty money, he said, "that's why you're paying me" and "it's part of my business model."

Throughout the investigation, he suggested the use of emerging technology to support and enhance his criminal enterprise.  He suggested that the agents use encrypted communication applications to coordinate the timing, location, and amounts of deals.  He said things like "it makes it very, very difficult to triangulate your position," and suggested that agents use dedicated hardware, like a TREZOR device, to protect their drug proceeds.

He acknowledged that the system could be used to transport drug proceeds to far-flung locales, saying "where it really shines is doing international." There is no doubt that Costanzo knew he was involved in serious criminal activity and that he used his specialized knowledge to support that ongoing criminal activity.

## II.   HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Costanzo is a danger to the public who has no respect for the law and has not been deterred from criminal conduct. His history and characteristics show that he has violated various laws for the past 30 years and that prior sentences have not deterred him from criminal conduct.

Costanzo's criminal history is extensive and most of his prior convictions do not receive criminal history points. (PSR ¶ 57.) His prior convictions include Assault, Unlawful Flight from Law Enforcement Vehicle, Battery, Failure to Obey Police Officer, Driving on a Suspended License (six times), Possessing a False or Cancelled Driver License, Failure to Show Driver License (two times), Possession of Marijuana (three times), and Resisting Arrest. (PSR ¶¶ 45–56.) In addition to his convictions, he has multiple prior arrests that did not result in convictions, including Theft, Felony Fleeing, Fleeing Police, Driving on a Suspended License, Carrying a Concealed Weapon without a Permit, Disorderly Conduct, and Resisting Arrest. (PSR ¶¶ 60–63.)

Many of these offenses have disturbing facts. For instance, in 2006, when Costanzo attempted to enter Scottsdale Municipal Court with a loaded handgun. (PSR ¶ 62.) Or the time when Costanzo led police officers on a pursuit, fleeing at more than 100 miles per hour before he was arrested and officers found marijuana in his pants pocket. (PSR ¶ 61.) There is also the time when he struck a woman "with a shopping cart, pinning her and knocking her down against a picnic bench." (PSR ¶ 46.) Each of these instances demonstrates Costanzo's continued disregard for the law and his disregard for the safety and well-being of others.

Nor will this be the first time Costanzo has been sentenced to a term of imprisonment. The last time he was in prison, he racked up 16 disciplinary violations in a two-year period. (PSR ¶ 45.)

### III. NEED TO PROMOTE RESPECT FOR THE LAW AND AFFORD ADEQUATE DETERRENCE

A significant sentence is needed not only to deter Costanzo from engaging in future criminal behavior, but it is also needed to deter other individuals from using virtual currency to launder drug proceeds. In light of the growth of the dark web and the use of digital currency, criminal exchangers like Costanzo provide an avenue of laundering for those who use digital currency for illicit purposes. Illicit actors who obtain bitcoin from unlawful means (e.g., the sale of contraband) seek an outlet to exchange those funds for fiat cash (to reap the profits of their crime or to further layer transactions to avoid detection); criminals like Costanzo provide the perfect conduit. Peer-to-peer exchangers like Costanzo generally do not conduct customer due diligence, file transaction reports for cash transactions in excess of $10,000, or file suspicious reports with the government. All that matters for a bitcoin money launderer is the profit—the price that a customer is willing to pay for this anonymity. For an illicit actor, that price is simply a cost of doing criminal business.

In addition to providing an outlet for individuals to "cash out" or "cash in" to buy or sell contraband, exchangers like Costanzo enable traditional drug traffickers to fly under the radar. Established drug trafficking organizations can pay people like Costanzo a small fee to convert their bulk cash into something that can be held on an electronic device and transported across the country or across international borders without scrutiny from law enforcement. Exchangers involved in money laundering like Costanzo make it possible for these criminal organizations to avoid detection and bypass federal banking regulations that seek to prevent the type of activity that is made possible by criminal exchangers like Costanzo.

In prosecuting exchangers like Costanzo, the government is able to mitigate the opportunities for actors utilizing digital currency illicitly to convert those proceeds into fiat currency. A custodial sentence of 97 months in this case will signal that the use of cutting-edge technology to launder dirty money is a serious offense, and that those that provide ways to bypass that system will be held accountable for their actions and face appropriate consequences, as Congress and the Sentencing Commission intended. That is particularly the case here, where Costanzo used sophisticated means to facilitate laundering for real as to a civilian trial witness, and agreed to launder funds represented to be cocaine and heroin proceeds with several undercover agents.

## IV.   THE APPLICABILITY OF A VARIANCE

The PSR calculates a guideline sentence of 121-151 months, and also recommends the low end of that particular range. As more fully explained in its Response to the Objections to the PSR (doc. 219), the United States concurs with the guideline range as the starting point to the sentencing analysis, and further agrees that no downward departures apply.

To the extent the Court calculates the same guideline range as the United States and the Probation Officer, and in an effort to balance the equities in a sting case, the government recommends a two-level downward variance. In particular, although Costanzo's sentencing entrapment and manipulation arguments are not well-founded under Circuit precedent, a small variance would more accurately place his actions in the final sting in context with the overall nature and characteristics of the offense. *E.g., Gall v. United States*, 552 U.S. 38, 51 (2007) (upholding downward variance based on the section 3553 factors). The final $107,000 sting in April 2017 – following on the heels of a meetup with Costanzo and his banker earlier that month – established that third parties could provide him with a large amount of funds, which reflect a substantial increase over prior transactions, even on short notice. To be clear, Costanzo willingly upped his ante with law enforcement on the day of his arrest, but his actions were not the entire focus on the final

- 5 -

sting, and a two-level downward variance[1] would be consistent with his actions in the larger context.

To the extent the Court otherwise adjusts the guideline range downward by two or more levels, or departs downward by two or more levels, or does any combination of the above that lowers the total offense level by two or more levels, the United States does *not* recommend the two-level downward variance.

## V. CONCLUSION

Costanzo was engaged in serious criminal conduct and has a long history of violating the law. He, and others, need serious deterrence from this type of behavior. The government recommends that Costanzo be sentenced to 97 months in prison, to be followed by three years of supervised release. As detailed above, a 97-month sentence is sufficient but not greater than necessary to comply with the factors set forth under 18 U.S.C. § 3553(a).

Respectfully submitted this 20th day of July, 2018.

ELIZABETH A. STRANGE
First Assistant U.S. Attorney
District of Arizona

*s/ Matthew Binford*
MATTHEW BINFORD
CAROLINA ESCALANTE
GARY M. RESTAINO
Assistant U.S. Attorneys

---

[1] In other words, from a fairness perspective the Court in imposing its sentence could substitute $30,000 [the amount of the most recent prior transaction] for $107,000 in the final transaction. From a volume perspective under U.S.S.G. § 2B1.1, the variance would reflect an artificial, adjusted volume of laundered funds of $117,700 instead $194,700.

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of July 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Maria Teresa Weidner & Zachary Cain
Assistant Federal Public Defenders
*Attorneys for Defendant*

 *s/ Gary Restaino*
U.S. Attorney's Office