JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

MARIA TERESA WEIDNER; #027912
Asst. Federal Public Defender
Attorney for Defendant
maria_weidner@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | No. CR-17-0585-01-PHX-GMS |
|---|---|
| Plaintiff, | **SENTENCING MEMORANDUM & REQUEST FOR DOWNWARD DEPARTURE OR VARIANCE** |
| vs. | |
| Thomas Mario Costanzo, | |
| Defendant | |

Undersigned counsel, on behalf of Thomas Mario Costanzo, respectfully requests this Court sustain his objections to the Presentence Investigation Report (PSR) and/or grant his request for downward departures and/or variances to arrive at a sentence of credit for time served (approximately 466 days, or 15 months, 11 days), to be followed by a 2-year term of supervised release. In support of this request, Mr. Costanzo presents this court with the following additional information.

**Avoiding unwarranted sentencing disparities, Part I:
Peer-to-peer bitcoin traders targeted in money laundering stings.**

In determining the appropriate sentence in a criminal case, the Court must be sure to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Cases involving facts similar to those in the instant case have been identified and are provided here for this Court's review. Specifically, the selected federal cases involve:

(1)   Defendants identified by federal agents as peer-to-peer bitcoin exchangers, who

(2)   Subsequently engaged in a bitcoin exchanges with undercover agents;

(3)   Notwithstanding representations made by those agents that the property presented for exchange was the proceeds of illegal drug trafficking.

Defendants in these cases were typically sentenced to terms less than the amount of time Mr. Costanzo will have already served as of the date set for sentencing in this case.

**A. Theresa Lynn Tetley, a/k/a Bitcoin Maven—former stockbroker and LocalBitcoins trader who DOJ says laundered $6M-$9.5M—sentenced on July 9, 2018 to <u>366 days BOP and 3 years' supervised release</u> in the Central District of California.**

There are significant similarities between the Tetley case and the case at bar:

**PEER-TO-PEER TRADER:** Tetley was identified by law enforcement through the website LocalBitcoins.com. *See* Exhibit A, *LocalBitcoins trader "Bitcoin Maven" Sentenced to Year in Prison*.

**GOVERNMENT STING:** The federal investigation involved a sting operation with UCAs posing as drug traffickers. *See* Exhibit B, *Woman who once brought $300,000 cash in paper bags sent to prison*.

**NEXUS TO AN ACTUAL DRUG TRAFFICKER:** One of her customers was identified and arrested for his alleged involvement in narcotics trafficking, though it appeared her knowledge of his illicit ventures was—like Mr. Costanzo's knowledge of the government informant's business—very limited. Exhibit B; *see also United States v. William James Farber*, CR17-188-LJO-SKO-1 (E.D. Cal.).

**FEDERAL CHARGES:** Tetley was charged with operating an unlicensed money transmitting business and money laundering. *See* Exhibit C, Tetley Information, CR17-738-R (C.D. Cal.).

The differences between these two cases are just as significant:

**RELATIVE EXPERIENCE IN FINANCE:** As a former stockbroker, Tetley had professional training and experience regarding the relevant statutes and regulations at issue in her case. Mr. Costanzo, a salesman and bitcoin enthusiast, had a comparatively informal and limited understanding of the world of finance in which he had immersed himself as a bitcoin trader. *See, e.g.,* Exhibit A.

**PROSECUTORIAL DISCRETION:** Despite the fact that the government estimated that Tetley had laundered between $6 million and $9.5 million between 2014 and 2017, *see* Exhibit D, *Woman Sentenced for Laundering $6M-$9.5M in Cash for Bitcoin*, and that she conducted a single $300,000 exchange with a federal agent during the course of the investigation, Exhibit B, the charging document alleged only a single money laundering count involving just under $70,000. Exhibit C. As compared to Mr. Costanzo, Tetley faced far less serious charges and much greater potential exposure based on at least $300K, and up to millions of dollars of in uncharged conduct. Exhibits A-E.

**AMOUNT LAUNDERED:** Notwithstanding the millions of dollars the government estimated Tetley laundered, the single $300,000 exchange she engaged in with federal agents exceeds all of Mr. Costanzo's trades with UCAs and the informant's estimate, combined.

**WORSE BAD GUY:** The drug trafficker identified in the Tetley case is believed to have been behind a major darknet drug ring. Exhibit B; *see also United States v. William James Farber*, CR17-188-LJO-SKO-1 (E.D. Cal.). That is, Farber appears to be a bigger fish operating on a much larger scale than the cooperating informant identified by the government in the instant case. *Id.*

3

**DISPARATE PROFITS:** Tetley clearly was quite successful and had significant assets, as demonstrated by the more than $500K in currency and precious metals seized and forfeited from her by federal agents, Exhibits A, B, D, as well as her ability to retain private counsel in her federal criminal case. *Id.* By contrast, Mr. Costanzo's lifestyle was modest, the assets seized when his home was searched were nominal by comparison. He could not afford to retain counsel. His profits from exchanges were not impressive—he charged higher rates for lesser amounts (e.g., Mr. Costanzo mentioned to a UCA he charged 20% on a $200 exchange; which would result in a $40 profit to Costanzo; in the $30,000 exchange, he charged 7%, which he explained to the UCA accounted for the 5% charged by the individual who fronted him the bitcoin—Dr. Steinmetz—plus 2% for himself, resulting in a profit to Steinmetz of $1,500 and a profit to Costanzo of $600.).

Tetley pleaded guilty to money laundering and operation of an unlicensed money transmitting business; she was sentenced on July 9, 2018 to 12 months and 1 day in the Bureau of Prisons, to be followed by a 3-year term of supervised release. *See* Exhibit E, Tetley Judgment and Conviction. The sentence imposed by the district court was significantly below the 30-month sentence requested by the United States Attorney's Office. *See* Exhibits A, B, D.

> **B. Louis Ong—Canadian national charged with laundering nearly $300K—sentenced on May 11, 2018 to <u>20 days BOP and 3 years' supervised release</u> in the Western District of Washington.**

There are also significant similarities between the Ong case and the case at bar:

**PEER-TO-PEER TRADER:** Ong was identified by law enforcement as a peer-to-peer bitcoin trader through an online advertisement he had placed. *See* Exhibit F, *Unlicensed B.C. bitcoin trader jailed in U.S. after federal sting*.

4

**GOVERNMENT STING:** The federal investigation involved a sting operation with UCAs posing as drug traffickers; Ong traveled from Canada to Seattle, Washington to conduct the exchanges. *Id.*

**STATEMENTS TO UCAs:** Like Mr. Costanzo, Ong repeatedly stated he did not want to know his clients' business. *Id.* at page 2 (" 'I didn't hear that,' Ong explained to one agent. 'So there is one thing I tell people is I don't care what…they use bitcoin for…it's better that I don't actually know. 'Cause then I can have plausible deniability.'"). This and other statements by Ong are very similar to statements made by Mr. Costanzo to UCAs and played for the jury at his trial. *Id.* at page 3 (Ong explained in a recorded meeting with a UCA: "I am charging…higher than a lot of people, but because…I get the job done, people come to me.").

**COMMISSION CHARGED:** Ong reportedly charged a 9% -9.99% fee for conducting his peer-to-peer bitcoin exchanges. Exhibit F at page 3.

**FEDERAL CHARGES:** Ong was charged with a single count of operating an unlicensed money transmitting business and five counts of money laundering. *See* Exhibit G, Ong Indictment, CR17-191-RSL (W.D. Wash.).

The differences between these two cases are just as significant:

**AMOUNT LAUNDERED:** The Indictment charged Ong with laundering nearly $300,000 over a 5-month period. *Id.* By comparison, the charges of conviction in the instant case total a little more than half that amount, $164,700, over a 23-month period. The single $200,000 exchange charged in Count 5 of the Ong Indictment exceeds all of Mr. Costanzo's trades with UCAs, combined. *Id.*

**RELATIVE SUCCESS/DISPARATE PROFITS:** Ong was clearly quite successful and had significant assets, as demonstrated by his ability to retain private counsel in his federal criminal case and assets forfeited, valued at approximately $1.1 million. Exhibits F & G. By contrast, Mr. Costanzo's lifestyle was modest, the assets seized when his home was searched were nominal by comparison.

**SOPHISTICATION:** While both Ong and Costanzo favored meeting in restaurants and cafes to conduct exchanges, Ong came equipped with a money counter, an indication that Ong consistently dealt in larger amounts.

Ong pleaded guilty to operation of an unlicensed money transmitting business and was sentenced on May 11, 2018 to 20 days in the Bureau of Prisons, to be followed by a 3-year term of supervised release. See Exhibit H, Ong Judgment and Conviction.

### C. Jason Klein—Missouri resident targeted in IRS sting--sentenced on September 6, 2017to 5 years' probation in the Western District of Missouri.

There are basic similarities between the Klein case and the case at bar:

**PEER-TO-PEER TRADER:** Klein was identified by law enforcement through the website LocalBitcoins.com. *See* Exhibit I, *Inside an Undercover Bitcoin Sting*.

**GOVERNMENT STING:** The federal investigation involved a sting operation with UCAs posing as drug traffickers. *Id.* at pages 3-5.

**AMOUNT LAUNDERED:** Klein was not a regular bitcoin trader and the amounts he was charged with having transmitted in violation of the law reflect that: $29,240 over a 17-month period. . *Id.*; *see also* Exhibit J, Klein Information, CR17-3056-MDH (W.D. Mo.). This is on par with exchanges conducted during the course of the IRS portion of the investigation of Mr. Costanzo, before the ratcheting up of exchange amounts during the DEA portion of the investigation in 2017.

**COMMISSION CHARGED:** Klein reportedly charged a 10% fee in his peer-to-peer bitcoin exchanges. Exhibit I at page 3.

The differences between these two cases are also significant:

**FEDERAL CHARGES/PROSECUTORIAL DISCRETION:** While Klein engaged in exchanges with UCAs posing as drug traffickers, he was ultimately charged only with operating an unlicensed money transmitting business. *Id.*; *see also*

Exhibit J. Like Tetley, he faced exposure for uncharged money laundering conduct that may well have influenced his decision to plead to the § 1960 charge.

Klein pleaded guilty to operation of an unlicensed money transmitting business; he was sentenced on September 6, 2017 to 5 years' probation. *See* Exhibit K, Klein Judgment and Conviction.

### D. Randall and Michael Lord—a Louisiana father and son bitcoin exchanging team targeted in a government sting that uncovered an *actual* drug conspiracy.

Among cases reviewed where available facts show defendants were the targets of a money laundering sting set into motion by the government, the Lord case is an outlier. This is because the federal investigation of the Lords uncovered an *actual* drug trafficking conspiracy.

The differences between the Lord case and the instant matter are particularly significant:

**SOPHISTICATION:** The Lord case, as charged, truly involved sophisticated measures taken to obscure or conceal the source and/or ownership of property beyond simply using bitcoin. *See* Exhibit L, Lord Indictment, CR15-240-SMH (W.D. La.). In particular, the Lords allegedly used numerous businesses and accounts to transfer funds and otherwise misrepresent their business activities in order to purchase bitcoin for exchange. *Id.* at Counts 9-14. This level of sophistication led to additional counts of wire fraud in the Indictment . *Id.*

**ACTUAL DRUG CONSPIRACY UNCOVERED:** Michael Lord, co-defendant and son of Randall Lord, was discovered to be involved in an ongoing drug trafficking conspiracy involving the listed substance Alprazolam, a/k/a Xanax. *Id* at Count 15. *See also* Exhibit M, Lord Memorandum Ruling, at pages 3, 4 (detailing discovery by federal agents of the ongoing drug conspiracy involving Michael Lord).

**AMOUNT LAUNDERED:** The Lords were both charged with six separate crimes arising from two bitcoin exchanges conducted with UCAs or CIs claiming to be drug

traffickers in February of 2015. Exhibit L at Counts 3-8. In just twenty days, the Lords exchanged $33,000 worth of alleged drug proceeds. *Id.* This amount exceeds that of exchanges conducted during the course of the IRS portion of the investigation of Mr. Costanzo, before the ratcheting up of exchange amounts during the DEA portion of the investigation in 2017.

Both Lords pleaded guilty to one count of operation of an unlicensed money transmitting business; Michael Lord also pleaded guilty to the drug conspiracy. *See* Exhibit N, Lord Sentencing Minutes. On May 24, 2017, father and son were sentenced: Randall Lord to 46 months BOP and 1 year of supervised release. Michael Lord to a total of 106 months BOP (46 months for the unlicensed money transmitting and 60 months for the drug conspiracy, consecutive) and a 3-year term of supervised release. *Id.*

There are also certain similarities between the Lord case and the case at bar: **PEER-TO-PEER TRADER:** The Lords were identified by law enforcement as peer-to-peer bitcoin traders through LocalBitcoins.com. *See* Exhibit M at page 2. **GOVERNMENT STING:** The federal investigation involved a sting operation with UCAs or CIs posing as drug traffickers. Exhibit L at Counts 3, 4, 6, & 7.

The aggravating circumstances at play in the Lord case—in particular the high level of sophistication and subterfuge involved in the money services business and the drug conspiracy discovered—explain the relative severity of the sentences imposed against both father and son as compares to other money laundering sting cases arising from federal investigations of peer-to-peer traders.

**Avoiding unwarranted sentencing disparities, Part II:**
**Bitcoin traders prosecuted for actual money laundering.**

Defendants Charlie Shrem and Robert Faiella were prosecuted for their involvement in the infamous Silk Road darknet web market. *See United States v.*

8

*Faiella, et* al, CR145-243-JSR (S.D.N.Y.)Their case did not involve a government sting but rather actual money laundering charges in connection with actual narcotics purchases through the Silk Road site that had to be fulfilled via bitcoin. *See* Exhibit O, Faiella, et al Complaint. Both men ultimately pleaded guilty to § 1960 charges; Shrem, who pleaded to aiding and abetting Faiella, was sentenced to 2 years BOP and 3 years supervised release. *See* Exhibit P, Shrem Judgment and Commitment. Faiella received 4 years BOP and 3 years supervised release. *See* Exhibit Q, Faiella Judgment and Conviction.

Shrem and Faiella admitted to having actually been involved in a vast illegal enterprise—the Silk Road—through which all manner of contraband could be bought or sold. Their role as providers of bitcoin to those endeavoring to be consumers and/or retailers on the Silk Road, that mother-of-all-dark-nets, sealed their culpability, and yet each received a sentence significantly less severe than the 97 months the government asks this court to impose against Mr. Costanzo.

**Avoiding unwarranted sentencing disparities, Part III:
Bitcoin traders prosecuted for unlicensed money transmitting.**

Undersigned counsel identified three additional cases where federal agents investigated and charged peer-to-peer bitcoin traders with operating unlicensed money transmitting businesses. The available records and news articles reviewed by counsel do not indicate whether or not these cases, like the Klein matter, were ones where the defendant was targeted in a money laundering scheme but charges were not brought. These three cases are briefly included below to more fully apprise the court of the treatment accorded bitcoin traders by sentencing courts.

- *United States v. Eldon Ross*, **CR17-160-NIQA (E.D. Pa.).** Pleaded guilty to operation of an unlicensed money transmitting business. Ross was sentenced on March 1, 2018 to 366 days BOP and 3 years' supervised release. Of particular

9

note, Ross admitted to committing the offense of conviction while still incarcerated in connection with his 2014 state conviction for heroin trafficking. *See* Exhibit R, *Bitcoin crime nets prison time for Pa. heroin trafficker.* Ross reportedly "illegally sold $1.5 million in bitcoin to undercover federal agents and others." *Id.*

- ***United States v. Sal Mansy*, CR15-198-CZS (D. Me.).** Pleaded guilty to operation of an unlicensed money transmitting business. Mansy was sentenced on December 4, 2017 to 366 days BOP and 3 years' supervised release.
- ***United States v. Richard Petix*, CR15-227-A (W.D.N.Y.).** Pleaded guilty to false statement and operation of an unlicensed money transmitting business. Petix was sentenced on November 1, 2017 to credit for time served on both counts, concurrent, and 3 years' supervised release.

### Acceptance of responsibility / remorse / rehabilitation.

The defense reserves and does not waive possible appellate issues regarding the applicability of the statute of conviction to Mr. Costanzo's conduct (i.e., whether it is indeed possible to act with intent "to conceal or disguise the nature, location, source, ownership or control of property" when one is simply using a preexisting system—the blockchain accounting system on which bitcoin relies).

Mr. Costanzo has made it known to this Court that he recognizes and regrets the moral wrongfulness of his actions—specifically that he proceeded in bitcoin exchanges with UCAs despite the UCAs' claims of involvement in anti-social endeavors (i.e., drug trafficking). *See* Sentencing Letter of Thomas Costanzo, submitted under separate cover ("…I didn't realize how angry I was at the system…[a]t the same time I was so enthusiastic about bitcoin. As a result I made major judgment errors in transacting with Government agents who claimed the source of the funds was illegal…I have no one to blame but myself. Needless to say

I won't be making that mistake again…I realize now there is a reason for these laws and because I disagree with these laws I am part of society and I need to obey those laws.").

The fact that Mr. Costanzo's realizations about the values of our federal justice system and the reality of the mistakes he made came about in the context of exercising his constitutional right to a jury trial does not obviate his clear contrition and acceptance of responsibility. As recently as this very month—July 2018—the Ninth Circuit, again reiterated this principle:

> Enhancing a sentence solely because a defendant chooses to go to trial risks chilling future criminal defendants from exercising their constitutional rights. And imposing a penalty for asserting a constitutional right heightens the risk that future defendants will plead guilty not to accept responsibility, but to escape the sentencing court's wrath.
>
> Although most federal criminal cases result in guilty pleas, the Sixth Amendment right to trial remains an important safeguard to defendants who insist on their innocence. Permitting courts to impose harsher sentences on those few defendants who do go to trial could in practice restrict the exercise of the right to those with unusual risk tolerance—or uncommon courage.

*United States v. Hernandez*, No. 13-10428, 2018 WL 3352608, at *6 (9th Cir. July 10, 2018)(remanding for resentencing where district court appeared to have increased defendant's sentence or withheld reduction for acceptance of responsibility based on defendant's assertion of protected trial rights under Sixth Amendment.).

## C O N C L U S I O N

The appropriate sentence in the instant case is a term of credit for time served (approximately 466 days) to be followed by a 2-year term of supervised release. The government's harsh and unreasoned recommendation of 97 months is out of step with sentences that have been handed down across the country in similar cases and should be rejected. In summary:

**First,** Mr. Costanzo's conduct mirrored that of Tetley and Ong, and was quite similar in scale to that of Klein. In particular, Ong's incriminating statements to UCAs were nearly identical to incriminating statements made by Mr. Costanzo to UCAs. A key difference—Tetley and Ong were clearly better equipped to engage in "wholesale trading" and did so: engaging in more and larger trades than Mr. Costanzo ever did. There is thus no rational explanation for why Mr. Costanzo deserves a sentence so much harsher than sentences received by defendants Tetley, Ong, and Klein, all of whom engaged in similar conduct.

**Second,** with respect to the instant case generally, the government seems to have lost the plot. Compare this case to the nationwide undercover operation recently publicized by the Department of Justice. *See* Exhibit S, DOJ Targets Darknet Vendors, June 26, 2018. In that operation, undercover agents posing as money launderers were able to identify darknet vendors of illicit goods. *Id.* In just 12 months, the operation netted 35 individuals selling contraband on the darknet and seized more than more than $23.6 million and over 100 firearms and destructive devices. *Id.*

In the instant case, the government spent twice the time sending multiple UCAs posing as drug traffickers to catch a single bitcoin trader…who had no darknet connections. Most stunningly, the government opted to catch and release without penalty the only true drug trafficker associated with the investigation: its cooperating informant/witness. Mr. Farber, whose case is still pending in the Eastern District of California, does not appear to have been offered a similar opportunity.

**Third,** the government fails to justify the harsh penalty it advocates for by referring to Mr. Costanzo's criminal history. His most serious conviction—from the 1980s—is remote, stale, and altogether unlike the case at bar. Moreover, his more recent law enforcement contacts pale in comparison to the aforementioned recent

12

and serious heroin trafficking conviction of Mr. Ross, who was nonetheless afforded lenient treatment in his federal case.

**Fourth,** Mr. Costanzo's political views—in particular his distrust of the government—were often alluded to in the course of the federal investigation against him. However, one's political views—protected by the First Amendment—cannot be used to impose a greater punishment.

**Finally,** the government's recommendation exponentially exceeds not just the sentences of those who engaged in similar conduct to Mr. Costanzo (i.e., Tetley, Ong, and Klein), and even those defendants who were *actually* involved in non-sting money laundering (i.e., Shrem and Faiella). The sentences imposed for all the financial crime convictions presented here reflect an important circumstance: bitcoin traders are not principals; they are just middlemen. They may be exploited by, or complicit with, underworld figures who present themselves as clients, but these exchangers are ultimately low-level. Cases prosecuted in federal jurisdictions across this country reflect this fact—so should the sentence in this case. Mr. Costanzo has learned his lesson. His requested sentence of credit for time served is sufficient but not greater than necessary to effect the purposes of sentencing.

Excludable delay under 18 U.S.C. § 3161(h)(1)(D) may result from this motion or from an order based thereon.

Respectfully submitted:  July 20, 2018.

                JON M. SANDS
                Federal Public Defender

                *s/Maria Teresa Weidner*
                MARIA TERESA WEIDNER
                Asst. Federal Public Defender

Copy of the foregoing transmitted by ECF for filing July 20, 2018, to:

CLERK'S OFFICE
United States District Court

MATTHEW H. BINFORD
FERNANDA CAROLINA ESCALANTE KONTI
GARY RESTAINO
Assistant U.S. Attorneys
United States Attorney's Office
Phoenix, Arizona 85004-4408

DANIEL JOHNSON
United States Probation Officer
Phoenix, Arizona

Copy mailed to:

THOMAS MARIO COSTANZO
Defendant

  *s/yc*