JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona  85007
Telephone: 602-382-2700

MARIA TERESA WEIDNER; #027912
Asst. Federal Public Defender
Attorney for Defendant
maria_weidner@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>     vs.<br><br>Thomas Mario Costanzo,<br><br>            Defendant | No. CR-17-585-PHX-GMS<br><br>**OBJECTION TO REQUESTED MODIFICATIONS TO CONDITIONS OF SUPERVISED RELEASE**<br><br>**Defendant Not In Custody** |

Thomas Mario Costanzo, through undersigned counsel, respectfully submits this objection to the requested modification of his supervised release conditions. Dkt. # 258.

**1. Aspects of proposed special condition #9 to which Mr. Costanzo <u>does not</u> object.**

Mr. Costanzo notes, as a preliminary matter, the various aspects of the proposed modification to which he <u>does not</u> object:

**First**, Mr. Costanzo does not object to abstaining from peer-to-peer trading while on supervision. **Second**, Mr. Costanzo does not object to limiting his activities in the trade/purchase/sale of cryptocurrencies to commercial exchanges, which automatically impose AML requirements as a prerequisite to membership (this requirement, though not expressed in the proposed condition, is implied). *See, e.g.,* Exhibit A, Bittrex, Inc., *Terms of Service,* at ¶ 8.6 (excerpted)[i]. **Third**, Mr. Costanzo does not object to disclosing his cryptocurrency transactions that meet a minimum threshold (e.g., purchases, sales, trades conducted on his commercial exchange account(s)) to the probation officer upon request.

**Fourth**, Mr. Costanzo does not object to "only using and possessing open public blockchain virtual currencies and…[abstaining from the use of] privacy-based blockchain virtual currencies, unless prior approval is obtained from the probation officer."

Mr. Costanzo further notes that he has complied with records requests made by probation to date in regards to his cryptocurrency activities, as documented in the petition now before this Court. Dkt. # 258. Additionally, Mr. Costanzo has worked hard to comply with the orders of this court since his release from custody. He is committed to succeeding on federal supervision.

### 2. Objections to proposed special condition #9.

As a general matter, "supervised release conditions are 'permissible only if they are reasonably related' to the goals of deterrence, public protection, and rehabilitation," and "'involve[] no greater deprivation of liberty than is reasonably necessary' to meet those purposes.'" *United States v. Weber*, 451 F.3d 552, 558 (9th Cir. 2006) (quoting *United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003), and 18 U.S.C. § 3583(d)(2)). Supervised release conditions must be supported by evidence in the record, and the government bears the burden of demonstrating that those conditions satisfy the statutory standards. *United States v. Napulou*, 593 F.3d 1041, 1045 (9th Cir. 2010); *Weber*, 451 F.3d at 558. In addition, supervised release conditions that implicate a particularly significant liberty interest are subject to heightened requirements and must be supported by specific findings. *United States v. Williams*, 356 F.3d 1045, 1053 (9th Cir. 2004).

One such liberty interest that comes into play given the breadth of proposed special condition #9 is Mr. Costanzo's interest in participating in legal economic interests/transactions (i.e., his investment in and trade of cryptocurrencies). The Supreme Court has noted that Fourteenth Amendment protections include "…not merely freedom from bodily restraint *but also the right of the individual to contract, to engage in any of the common occupations of life*, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience,

and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.'" *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). "The 'liberty interest' is the interest an individual has in being free to move about, live, and practice his profession without the burden of an unjustified label of infamy." *Board of Regents v. Roth*, 408 U.S. 564, 572 (1972). The liberty interest protected by the due process clause "encompasses an individual's freedom to work and earn a living." *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1100 (9th Cir.1981), cert. denied, 455 U.S. 948 (1982).

Here, Mr. Costanzo, in addition to his 9-5 job as a salesman of solar energy systems, has long espoused his support of and belief in cryptocurrencies and the blockchain technology on which they rely. He has seen both financial gains and losses through his steadfast faith in crypto as prices have risen (and, at times, fallen) meteorically. He has also learned by hard experience, to include more than three years of federal incarceration, the importance of abiding by the law…and the serious cost of failing to do so.

Mr. Costanzo is willing to accept conditions requiring disclosure of his cryptocurrency investment activities. He is also willing to refrain from certain aspects of the cryptocurrency trade that, though legal, are felt to be problematic by the government (i.e., peer-to-peer trading and use/possession of privacy-based cryptocurrencies). **What Mr. Costanzo objects to is requirements of supervision that create unwarranted risks to the security of his investments and/or are unwarranted and unduly onerous.**

The reality of the cryptocurrency investment environment is that security is paramount. These intangible assets are subject to security risks at every level. From human error (i.e., losing or forgetting one's private key) to malicious hackers and scammers (e.g., malware wallet attacks, denial of service attacks, cyber attacks, and fraudulent exchanges), the key to protecting one's investment is a combination of restricting outside access (password protection) and diversification of storage risk

(maintaining multiple hot and cold wallets and backups of the same). *See, e.g.,* Exhibit B, *What are the Security issues Surrounding Bitcoin?* The proposed modification's restrictions on wallets and requirement for disclosure of extended public keys are requirements that create a greater deprivation of liberty than is necessary. The goals of supervision can easily be attained in the absence of these unreasonable restrictions.

### A. Objection #1: The proposed requirement limiting Mr. Costanzo to one virtual currency wallet, to be used for all transactions, is unduly restrictive, unjustified on the record, and an unwarranted security risk.

The importance of diversifying storage risk is common knowledge in the world of cryptocurrency investment. *See, e.g.,* Exhibit C, *Why Storing Bitcoin in a Single Wallet is a Bad Idea;* Exhibit D, *Should You Use multiple Cryptocurrency Wallets?*; and Exhibit E, *Why to Have Multiple Bitcoin Wallets and How Many?* The reasons for this are many, but two key concerns are:

1) Avoiding the pitfall of human error/misfortune through the unintended loss or destruction of one's private key, which is unrecoverable; and

2) Not losing all of one's assets in the event that a virtual wallet and/or online exchange is compromised by malicious hackers. *Id.*

As written, the proposed modification requires Mr. Costanzo to maintain all of his cryptocurrency in a single virtual wallet and to use said wallet for all of his transactions. This flies in the face of the most basic security recommendations, which include maintaining multiple wallets, both online (for transactions) and offline (for storage), as well as maintaining backups or "clones" of one's wallets. *Id.* Given Mr. Costanzo's willingness to conduct his cryptocurrency transactions on public commercial exchanges and to provide records of said transactions at the request of probation, this degree of micromanagement, made worse by the security risks it entails, is unwarranted.

. . .

. . .

. . .

**B. Objection #2: The proposed requirement that Mr. Costanzo disclose the Extended Public Keys (XPUBs) for his cryptocurrency transactions to U.S. Probation is overbroad and creates an unwarranted security risk.**

It is not recommended to share one's extended public keys (XPUBs). *See* Exhibit F, *Deterministic Wallet Tools,* at p.2. While the risk is not as great as with private keys, this is precisely the type of data that needs to be encrypted and protected from cyberattacks. Moreover, XPUBs can also be used to track both past and future transactions, thus giving the probation officer a window into Mr. Costanzo's transactions before, during, and after supervision, which is surely beyond the scope of the 3-year term of supervised release imposed by this Court.

There is also no indication that U.S. Probation is equipped to maintain the security of the XPUBs it requests. Sadly, the United States government is an attractive target for hackers and identity thieves, as evidenced by the significant data breaches affecting millions of private citizens. *See, e.g.,* Exhibit G, *Top 10 Biggest Government Data Breaches of All Time in the U.S.* Again, Given Mr. Costanzo's willingness to conduct his cryptocurrency transactions on public commercial exchanges and to provide records of said transactions at the request of probation, this degree of micromanagement, made worse by the security risks it entails, is unwarranted.

**C. Objection #3: The proposed requirement that Mr. Costanzo report *all* cryptocurrency transaction is unnecessary and overbroad.**

Mr. Costanzo proposes that the reporting requirement for cryptocurrency transactions have some minimum threshold. As $500 is typically the threshold for standard conditions of supervision, the same is requested here.

Specifically, Mr. Costanzo, as an ardent believer in cryptocurrency, will pay for small daily services, like a cup of coffee or a haircut, with cryptocurrency. A reporting requirement that he report every single transaction, no matter how small, to the probation officer is unduly onerous and unnecessary.

. . .

. . .

5

**CONCLUSION**

Based on all of the above, Mr. Costanzo respectfully requests that, if this court is convinced that some iteration of proposed special condition #9 is warranted, that it impose the following modified version of the proposed condition:

*9. All virtual currency transactions in excess of $500 shall be disclosed to the probation officer upon request. You shall be limited to only using and possessing open public blockchain virtual currencies and be restricted from using privacy-based blockchain virtual currencies, unless prior approval is obtained from the probation officer.*

Excludable delay under 18 U.S.C. § 3161(h)(1)(H) may result from this motion or from an order based thereon.

Respectfully submitted:  June 16, 2021.

JON M. SANDS
Federal Public Defender

*s/Maria Teresa Weidner*
MARIA TERESA WEIDNER
Asst. Federal Public Defender

---

[i] Bittrex, Inc. is currently the only public exchange on which Mr. Costanzo conducts cryptocurrency trades. He requested permission from the Probation Officer in May 2021 to purchase bitcoin through an account with another custodial exchange, River Financial, Inc. from the probation officer, who reportedly declined to give his approval without explanation. *See* Exhibit H, Emails RE: River Financial, Inc.; Exhibit I, River Financial, Inc., *Terms of Service*(excerpted).

6